**UNITED SECURITIES LEGAL GROUP APC**
**Jiang 'Sean' Jing** (*Attorney Pro Bono, California License # 339158)*
1968 South Coast Hwy #2854
Laguna Beach, CA 92651
Telephone: 917.985.7989
E-mail: Chairman@USLegal.Group

**Attorney for Plaintiff,**
**ZEN GOZIKER**

Case: 1:24-cv-00619 JURY DEMAND
Assigned To : Unassigned
Assign. Date : 3/5/2024
Description: Personal Injury (B-DECK)

**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

| | |
|---|---|
| ZEN GOZIKER,<br>Plaintiff,<br>v.<br>U.S. DEPARTMENT OF JUSTICE, U.S. DEPARTMENT OF HOMELAND SECURITY, OFFICE OF DIRECTOR OF NATIONAL INTELLIGENCE, MERRICK B. GARLAND, an individual, ALEJANDRO MAYORKAS, an individual, AVRIL HAINES, an individual, and DOES 1-20 inclusive,<br>Defendant(s). | Civil Action No. ________________<br>Honorable Judge: ________________<br><br>**COMPLAINT**<br><br>[1] Violation of 28 U.S.C.§ 2671-2680<br>[2] Violation of Executive Order 14034<br>[3] Violation of 18 U.S.C.§ 241<br>[4] Violation of 5 U.S.C § 552.a(b)<br>[5] Violation of 50 U.S.C §1881a-1885 ("FISA Section 702")<br><br>**DEMAND FOR JURY TRIAL** |

## JURISDICTION

1. Federal Question Jurisdiction: the Defendants, U.S. Department of Justice, U.S. Department of Homeland Security, and Office of the Director of National Intelligence, are headquartered in Washington, District of Columbia, who in syndicate nominally led by the U.S. Department of Commerce, sabotaged and failed execution of public policy and federal law issued by the President of the



RECEIVED
MAR - 5 2024
Clerk, U.S. District & Bankruptcy Courts for the District of Columbia

United States of America, *JOSEPH R. BIDEN JR.*, on June 9, 2021, and which was published by the White House on June 11, 2021, under the title *Executive Order 14034 "Protecting Americans' Sensitive Data From Foreign Adversaries"* (hereinafter «EO 14034»).

**2.** The individual Defendants - Merrick B. Garland, Alejandro Mayorkas and Avril Haines, all together:

a. Were active federal employees at the time of their committing of criminal negligence at work and wrongful acts while acting in scope of their federal employment when they first omitted (whether intentionally or due to honest mistake it shall be decided by the Court) and then *quite evidently intentionally and purposefully maliciously* tried to conceal the gaps in US national security risk-reporting required by the «EO 14034».

b. Are up to date *acting* as heads of the above-mentioned federal departments and directorates where within the scope of their federal employment they personally caused damages to Plaintiff.

c. The individual Defendants are currently admitted to and *influence* the President Joe Biden's formal advisory group called '*The Cabinet*'.

**3.** The causes of action in this legal action pursuant to the Federal Torts Claim Act ("FTCA") arise from violations of the US public policies and federal laws by the active federal employees, specifically the gross violations of «EO 14034» that caused major damages to Plaintiff. The actions committed by

Defendants have significant effects in the District of Columbia, Defendants are stationed in the District of Columbia, Defendants violated the federal laws in the District of Columbia, and therefore pursuant to *28 U.S.C. § 1331*, the Federal Question Jurisdiction is duly satisfied.

**4.** Diversity Jurisdiction: Plaintiff is a law-abiding citizen in good standing and is a permanent resident of the State of California since November 2011, with his previous permanent residence between 2001 and 2011 being in the State of Illinois. Plaintiff's real name that his family calls him is *Zhenya*, but due to pronunciation difficulties, Plaintiff was eager to shorten it and 'Americanize'. At the time of filing this lawsuit, the damages that Plaintiff is seeking to recover from the Defendant(s) who committed wrongful acts in the District of Columbia, are accrued at a value of $21,100,000 USD (*twenty-one million one hundred thousand American dollars*), which is more than the threshold of $75,000 established by the *28 U.S.C. § 1332*.
Hence, the Diversity Jurisdiction is also applicable.

## VENUE

**5.** Pursuant to *28 U.S.C. § 1391*, the United States District Court in the District of Columbia is a proper venue for this lawsuit because all Defendants are based and committed violations of the federal laws in Washington D.C.

## PARTIES

**6.** Plaintiff has permanently and legally resided in the United States of America from January 15, 2001. Plaintiff is a naturalized American citizen who has been dutifully filing annual federal taxes with the IRS as '*Gene Goziker*'. Plaintiff also possesses birthright to reside in Ukraine and Israel, where his

name is interchangingly spelled as '*Yevĝen*', '*Zen*' or '*Eugene*'. Plaintiff has no criminal background or convictions anywhere in the world. Plaintiff had never worked for any foreign government and never engaged with any entity that is opposing the U.S. government or endangering the wellbeing of the United States of America, its citizens, and residents. In 2004, Plaintiff had a life-changing experience during the internship with the U.S. Senate and kept his GSA card for many years as a valuable reminder and evidence of success.




7. The Department of Justice is an agent of the United States federal government, and the individual Defendant Merrick B. Garland is its Attorney General, with such dedicated agencies as the Federal Bureau of Investigations (FBI) reporting to him directly and the mandated work that they are supposed to do being in his immediate scope of responsibility.

The FBI, in turn, is currently maintaining field offices in every US state and territory nationwide, as well as keeping an established presence in multiple foreign jurisdictions with stations abroad being openly self-declared and/or clandestinely operated based on bilateral agreements with host-nations.

**8.** The Department of Homeland Security is an agent of the United States federal government, and the individual Defendant Alejandro Mayorkas is its acting Secretary who was impeached by the House of Representatives on February 13, 2024, and is now awaiting an impeachment trial in the U.S. Senate.

**9.** The Office of the Director of National Intelligence is overseeing and directing the implementation of the National Intelligence Program and acting as the principal advisor to the President, the National Security Council, and the Homeland Security Council for intelligence matters related to national security, with the individual Defendant Avril Haines being is its current Director appointed by the President with the advice and consent of the U. S. Senate.

## STATEMENT OF FACTS

**10.** On June 9, 2021, JOSEPH R. BIDEN JR., the President of the United States of America, issued an Executive Order 14034 *"Protecting Americans' Sensitive Data From Foreign Adversaries"* (**Exhibit A**) that specifically addressed US government's concerns about Chinese corporation ByteDance (Douyin) and its TikTok product operating in the USA during the ongoing national emergency that was declared on May 15, 2019, by the Executive Order 13783 *"Securing the Information and Communications Technology and Services Supply Chain"* (hereinafter «EO 13783»).

**11.** On or before August 9, 2021, pursuant to Section 2(b) of the «EO 14034», the Director of National Intelligence, Ms Avril Haines, had to provide her threat assessments and the Secretary of Homeland Security was to provide his vulnerability assessments of TikTok operations in the USA in a statement to

the Secretary of Commerce (hereinafter *'60-days report'*), who in turn was instructed by President Biden to support the development of the subsequent reporting to the Assistant to the President and National Security Advisor, Mr Jake Sullivan, with the preliminary recommendations due by October 7, 2021 (hereinafter *'120-days report'*).

> (b) Not later than 120 days after the date of this order, the Secretary of Commerce, in consultation with the Secretary of State, the Secretary of Defense, the Attorney General, the Secretary of Health and Human Services, the Secretary of Homeland Security, the Director of National Intelligence, and the heads of other agencies as the Secretary of Commerce deems appropriate, shall provide a report to the Assistant to the President and National Security Advisor with recommendations to protect against harm from the unrestricted sale of, transfer of, or access to United States persons' sensitive data, including personally identifiable information, personal health information, and genetic information, and harm from access to large data repositories by persons owned or controlled by, or subject to the jurisdiction or direction of, a foreign adversary. Not later than 60 days after the date of this order, the Director of National Intelligence shall provide threat assessments, and the Secretary of Homeland Security shall provide vulnerability assessments, to the Secretary of Commerce to support development of the report required by this subsection.

**12.** On August 30, 2021, Plaintiff began working as Risk Manager for ByteDance (parent of TikTok Inc.), which is a private corporation subject to the supervision within public policy issued by President Biden through the «EO 14034» and within scope of directives from «EO 13873».

**13.** Plaintiff is a career Risk Manager with more than 15 years of accumulated subject matter expertise in corporate governance and compliance, starting as Risk Analyst in 2007 with the Citibank and by year 2020 working as the Senior Vice President and the Head of Enterprise Risk Management for the Americas' operations of the National Bank of Pakistan reporting directly to the Executive Vice President and the country CEO of the bank, which was the

preceding executive position that Plaintiff held immediately before his joining ByteDance to oversee TikTok operations in USA and globally.

Plaintiff also worked as a consultant through subcontractors for major non-banking entities, such as Microsoft in 2016 (Data Protection Risk Manager) and Experian in 2017 (Third-Party Risk Manager), and overall has an extensive background and knowledge of establishing the *controlled* risk management frameworks that balance appetite with tolerance.

**14.** At all times starting from Day 1 of his work as Risk Manager at ByteDance to oversee TikTok operations and especially after his wrongful termination that was wickedly instigated by agencies responsible for continuous reporting on the status of «EO 14034», Plaintiff thoroughly cooperated in good faith, guided and provided true information with candor to all branches of the US Government, including the non-elected bureaucrats such as Department of Justice, Department of Homeland Security (hereinafter collectively '*law enforcement colleagues*'), Department of State, and also to bipartisan groups in the US House of Representatives, as well as offices of US Senators Warner, Hawley, Grassley and Durbin, and other elected delegates in power to act on behalf of the United States of America, its citizens and legal residents.

**15.** Plaintiff is an aspiring advocate and supporter of the National Security Study Memorandum (NSSM-1) that was issued by President Biden on June 3, 2021, just one week before the «EO 14034», and which was eventually formally published by the White House in December of 2021 under the title: "*Establishing the Fight Against Corruption as a Core United States National Security Interest.*"

PURSUANT TO THE NATIONAL SECURITY STUDY MEMORANDUM ON ESTABLISHING THE FIGHT AGAINST CORRUPTION AS A CORE UNITED STATES NATIONAL SECURITY INTEREST

DECEMBER 2021

THE WHITE HOUSE
WASHINGTON

# UNITED STATES STRATEGY ON COUNTERING CORRUPTION

**Pursuant to the National Security Study Memorandum on Establishing the Fight Against Corruption as a Core United States National Security Interest**

## INTRODUCTION

When government officials abuse public power for private gain, they do more than simply appropriate illicit wealth. Corruption robs citizens of equal access to vital services, denying the right to quality healthcare, public safety, and education. It degrades the business environment, subverts economic opportunity, and exacerbates inequality. It often contributes to human rights violations and abuses, and can drive migration. As a fundamental threat to the rule of law, corruption hollows out institutions, corrodes public trust, and fuels popular cynicism toward effective, accountable governance.

Moreover, the impacts of corruption frequently reverberate far beyond the immediate environment in which the acts take place. In today's globalized world, corrupt actors bribe across borders, harness the international financial system to stash illicit wealth abroad, and abuse democratic institutions to advance anti-democratic aims. Emerging research and major journalistic exposés have documented the extent to which legal and regulatory deficiencies in the developed world offer corrupt actors the means to offshore and launder illicit wealth. This dynamic in turn strengthens the hand of those autocratic leaders whose rule is predicated on the ability to co-opt and reward elites.

On June 3, 2021, President Biden established the fight against corruption as a core national security interest of the United States. As he wrote in National Security Study Memorandum-1 (NSSM-1), "corruption threatens United States national security, economic equity, global anti-poverty and development efforts, and democracy itself….[B]y effectively preventing and countering corruption and demonstrating the advantages of transparent and accountable governance, we can secure a critical advantage for the United States and other democracies."

**16.** Between August 2021 and February 2022, Plaintiff was overseeing his employer's risk management for the so-called '*Project Texas*' that ByteDance designed and marketed to the American government and its CFIUS (US Department of Treasury Committee on Foreign Investment in the United States) as a technical solution in response to the «EO 14034» and as an assurance for compliance with the «EO 13873».

**17.** Up to the date of this filing, the CFIUS has not yet issued any formal decisions pertaining to its 'on-and-off investigation' of ByteDance which is being procrastinated for the last 5 years since the year 2019 after it was initially prompted by the President Donald Trump and supported by two (2) of his own executive orders pertaining to TikTok's operations in the USA, namely the Executive Order 13942 from August 6, 2020, and the Executive Order 13971 from January 5, 2021.

**NOTE**: Both executive orders of President Trump that were pertaining to ByteDance and its TikTok operations in the USA were immediately revoked by President Biden after his election and, substituted with the «EO 14034».

> **Section 1.** *Revocation of Presidential Actions.* The following orders are revoked: Executive Order 13942 of August 6, 2020 (Addressing the Threat Posed by TikTok, and Taking Additional Steps To Address the National Emergency With Respect to the Information and Communications Technology and Services Supply Chain); Executive Order 13943 of August 6, 2020 (Addressing the Threat Posed by WeChat, and Taking Additional Steps To Address the National Emergency With Respect to the Information and Communications Technology and Services Supply Chain); and Executive Order 13971 of January 5, 2021 (Addressing the Threat Posed by Applications and Other Software Developed or Controlled by Chinese Companies).

**18.** On the fourth day of his employment as Risk Manager at ByteDance, Plaintiff received a report from his subordinate, Hayden Lee ("Hayden"), who was introduced to Plaintiff as a *former* US Army Intelligence Officer (**Exhibit B**), when during their first one-on-one meeting Hayden identified and alerted Plaintiff about several material risk issues with '*Project Texas*' that were supposed to be in-scope for risk identification and vulnerability assessments of the *'60-days report*', but were for some reason omitted by ODNI and DHS.

***19.*** The security report from Hayden alerted Plaintiff because it may have meant a potential violation of the *Public Law 116–222, ''Holding Foreign Companies Accountable Act''*, which is an amendment to the *Section 104 of the Sarbanes-Oxley Act of 2002 (15 U.S.C. 7214)* because even though ByteDance and TikTok are not yet publicly traded companies, however their stocks are already widely listed with SEC in portfolios of major American funds, trusts, and insurance annuity' holdings such as: *T. Rowe Price*, *Black Rock*, *Fidelity*.

AUTHENTICATED U.S. GOVERNMENT INFORMATION GPO

PUBLIC LAW 116–222—DEC. 18, 2020 134 STAT. 1063

Public Law 116–222
116th Congress

An Act

To amend the Sarbanes-Oxley Act of 2002 to require certain issuers to disclose to the Securities and Exchange Commission information regarding foreign jurisdictions that prevent the Public Company Accounting Oversight Board from performing inspections under that Act, and for other purposes.

Dec. 18, 2020
[S. 945]

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,*

Holding Foreign Companies Accountable Act.
15 USC 7201 note.

**SECTION 1. SHORT TITLE.**

This Act may be cited as the "Holding Foreign Companies Accountable Act".

## NPORT-P: Part A: General Information

**Item A.1. Information about the Registrant.**

| | |
|---|---|
| a. Name of Registrant | T. ROWE PRICE GLOBAL TECHNOLOGY FUND, INC. |
| b. Investment Company Act file number for Registrant: (e.g., 811-______) | 811-09995 |
| c. CIK number of Registrant | 0001116626 |
| d. LEI of Registrant | 549300104XKH7W3RZW73 |

**Item C.1. Identification of investment.**

| | |
|---|---|
| a. Name of issuer (if any). | Bytedance Ltd |
| b. LEI (if any) of issuer. In the case of a holding in a fund that is a series of a series trust, report the LEI of the series. | 300300NIFA1100061063 |
| c. Title of the issue or description of the investment. | BYTEDANCE LTD CVT PFD SR E PP |

## NPORT-P: Part A: General Information

**Item A.1. Information about the Registrant.**

| | |
|---|---|
| a. Name of Registrant | BlackRock Capital Appreciation Fund, Inc. |
| b. Investment Company Act file number for Registrant: (e.g., 811-______) | 811-06669 |
| c. CIK number of Registrant | 0000887509 |

**Item C.1. Identification of investment.**

| | |
|---|---|
| a. Name of issuer (if any). | Bytedance Ltd Series E-1 |
| b. LEI (if any) of issuer. In the case of a holding in a fund that is a series of a series trust, report the LEI of the series. | N/A |
| c. Title of the issue or description of the investment. | Bytedance Ltd Series E-1 |
| d. CUSIP (if any). | 000000000 |

At least one of the following other identifiers:

| | |
|---|---|
| Identifier. | Other unique identifier (if ticker |
| Other unique identifier (if ticker and ISIN are not available). Indicate the type of identifier used | BRWAGG5N5 |

# NPORT-P: Part A: General Information

**Item A.1. Information about the Registrant.**

| | |
|---|---|
| a. Name of Registrant | Fidelity Investment Trust |
| b. Investment Company Act file number for Registrant: (e.g., 811-______) | 811-04008 |
| c. CIK number of Registrant | 0000744822 |
| d. LEI of Registrant | MXNTE4GH7BW81YELH558 |

# NPORT-P: Part C: Schedule of Portfolio Investments

For each investment held by the Fund and its consolidated subsidiaries, disclose the informatior securities in an aggregate amount not exceeding five percent of its total assets as miscellaneou in Part C, provided that the securities so listed are not restricted, have been held for not more th covered by this report, and have not been previously reported by name to the shareholders of the statement, application, or report to shareholders or otherwise made available to the public.

**Item C.1. Identification of investment.**

| | |
|---|---|
| a. Name of issuer (if any). | BYTEDANCE LTD |
| b. LEI (if any) of issuer. In the case of a holding in a fund that is a series of a series trust, report the LEI of the series. | N/A |
| c. Title of the issue or description of the investment. | BYTEDANCE LTD SER E-1 PC PP |
| d. CUSIP (if any). | N/A |
| At least one of the following other identifiers: | |
| Identifier. | Other unique identifier (if ticker and ISIN are not avail |
| Other unique identifier (if ticker and ISIN are not available). Indicate the type of identifier used | GIC936000 |
| Balance | 172113.00000000 |
| Units | Number of shares |
| Description of other units. | |
| Currency. Indicate the currency in which the investment is denominated. | United States Dollar |
| Value. Report values in U.S. dollars. If currency of investment is not denominated in U.S. dollars, provide the exchange rate used to calculate value. | 41264091.75000000 |

**20.** Plaintiff paid serious attention to the warning from his subordinate and acknowledged that this intelligence merited to be examined for a potential material risk identification and assessment in-scope of the upcoming '*120-days report*', and therefore Plaintiff shared this new important alert with the dedicated ***active*** FBI personnel by phone on or around September 10, 2021.

**21.** By the end of that same month and while working remotely from a little kite-surfing village called *La Ventana in Baja Sur California of Mexico* (remote work was enforced by TikTok Inc. as a response to COVID restrictions, but also in part to implement internal fraud with '*Project Texas*'), Plaintiff realized that he is under 24-hours digital and physical surveillance that was established by both TikTok and dedicated groups of ***active*** FBI officers.

**22.** Between August 2021 and February 2022, Plaintiff responsibly executed his job responsibilities as Risk Manager at ByteDance and worked hand-in-hand with *former* officers from FBI, DHS, NSA, Secret Service that were now on-payroll with ByteDance and whose only mission in theory was ***also*** to oversee TikTok's executive management to implement the «EO 14034», but in reality they both were indiscriminately day-by-day pressuring and grooming Plaintiff to sign-off on '*Project Texas*' as-is, without verification, with the first demand setting the target date for November 10, 2021, which would be right before the deadline for '*180-days report*' for «EO 14034».

> (c) Not later than 180 days after the date of this order, the Secretary of Commerce, in consultation with the Secretary of State, the Secretary of Defense, the Attorney General, the Secretary of Homeland Security, the Director of the Office of Management and Budget, and the heads of other agencies as the Secretary of Commerce deems appropriate, shall provide a report to the Assistant to the President and National Security Advisor recommending additional executive and legislative actions to address the risk associated with connected software applications that are designed, developed, manufactured, or supplied by persons owned or controlled by, or subject to the jurisdiction or direction of, a foreign adversary.

**23.** Plaintiff refused to violate the laws of the United States of America and continued his escalations with the FBI both internally at ByteDance and externally through calling the FBI-hotline, and also informed in writing a private attorney in Los Angeles, Mr. Tyler Clark (*California Bar License #258309*), about the conflicting situation where Plaintiff was being coerced into criminal corruption by his employer while his risk management was also sabotaged, and he personally was pressured by the '*law enforcement colleagues*' and surveilled all over the world and domestically in USA.

**24.** Between August of 2021 and February of 2022, Plaintiff identified numerous evidence that matched the warnings from Hayden Lee and stimulated Plaintiff to consider that some of the ByteDance executives, who were responsible for promoting TikTok in USA, may have been potentially conspiring and colluding with the external corporate third parties such as *Booz Allen Hamilton and Oracle* to misrepresent the true extent of material facts and risks at TikTok to the government of the USA while at the same time gaining improper market share and manipulating CFIUS into signing a new contract with ByteDance to lobby the approval for TikTok *own* IPO in the USA.

**25.** Also, there was no formal response to Plaintiff's escalations from any of the U.S. law enforcement agencies that were monitoring TikTok operations in USA both from within and outside of the company, but surveillance enhanced.

**26.** Plaintiff started suspecting that '*law enforcement colleagues'* were also quite intentionally sabotaging Plaintiff's risk management to downplay and conceal the inconvenient truthful risk identification and assessment that did not match their *'60-120-180 days reporting'* which they rushed to submit to the

Assistant to the President and National Security Advisor who was responsible to update President Biden on next steps for «EO 14034» no later than by December 4, 2021.

Plaintiff grew concerned that potential **sabotage of US national security by the agents of the federal government that is committed during the state of national emergency,** which was duly codified by President Trump in «EO 13783» and acknowledged by President Biden in «EO 14034», **is a high crime against the people of the United States of America and an act of treason,** constructed on individual complicity by *ODNI* leaders acting with *DHS* secretariat, and covered-up by the *FBI* and U.S. Attorney General who realized a potential to gain undue political influence over *The Cabinet*, all driven by vices of simple greed, power and/or fear, while collectively encouraged by support from various "*D.C.*" lobbyists that orchestrate exaggerated contracts with federal government's corporate favorites such as like *Booz Allen Hamilton* and *Oracle* seeking to gain control over the TikTok.

**27.**In December of 2021, Plaintiff formally escalated with ByteDance legal, security, counterintelligence, internal audit and compliance departments.

**28.** On January 25, 2022, through collaborative and willful joint effort with ByteDance engineers from mainland China, Plaintiff obtained a verified artifact with an extract of the software code showing the existing connectivity capability between the TikTok product in USA and the Toutiao artificial intelligence (AI) news generator platform in China (hereinafter '*Toutiao Code*'), which in turn evidenced the need to reassess '*Project Texas*' and effectively disqualified results of '*60-120-180 days reports*' for «EO 14034».

```
* subject: CN=*.tiktok-us.org
* start date: Oct 11 00:00:00 2021 GMT
* expire date: Nov 11 23:59:59 2022 GMT
* subjectAltName: host "sdplatform-ttp.tiktok-us.org" matched cert's "*.tiktok-us.org"
* issuer: C=US; O=DigiCert Inc; CN=GeoTrust TLS DV RSA Mixed SHA256 2020 CA-1
* SSL certificate verify ok.
> GET /v1/lookup/name?vdc=useast5&name=inf.sd.proxy&addr-family=dual-stack HTTP/1.1
> Host: sdplatform-ttp.tiktok-us.org
> User-Agent: curl/7.52.1
> Accept: */*
>
< HTTP/1.1 403 Forbidden
< Server: nginx
< Date: Tue, 25 Jan 2022 10:34:46 GMT
< Content-Type: text/plain; charset=utf-8
< Content-Length: 55
< Connection: keep-alive
< X-TT-System-Error: 3
< x-tt-trace-host: 01be0325c7d575015b36ae6ecc015a3701e95b1e622e043382bd2c0a59fa909798f03d3
< x-tt-trace-tag: id=00;cdn-cache=miss
<
* Curl_http_done: called premature == 0
* Connection #0 to host sdplatform-ttp.tiktok-us.org left intact
psm: toutiao.bytefaas.gateway not registered in ByteTim%
  boe
```

These new risk findings meant that possibly not only the *'60 days report'* and *'120 days report'* may have been inaccurate, but also that the final *'180-days report'* from the Secretary of Commerce to the Assistant to the President and National Security Advisor, which was to be provided on or around December 4, 2021, also may have missed material risks to US national security.

**29.** The *'180-days report'* from National Security Advisor could have mislead the President and misguided him to lag on further executive and legislative actions pertaining to TikTok operations in the USA and, in doing so, could

have endangered safety of millions of Americans as it was eventually very clearly evidenced in November of 2023 when the so-called 'Letter to America' from Osama bin Laden was propagated on TikTok uncontrollably.

**30.** TikTok Inc. is an artificial structure on the top of ByteDance corporation that cannot make any decisions, neither corporate nor infrastructural due to the nature of ByteDance information technology' architecture and is simply a 'translator' into English that collects billions of dollars in revenue from the U.S. market without any accountability or even capacity to control the product that they market as 'unique' and 'standalone'. This artificial corporate structure, TikTok Inc., has only created more issues and problems in communication between ByteDance corporation and U.S. government because of irresponsible and false statements that TikTok Inc. executives made in their testimonies to the American Congress and American users.

**31.**On January 30, 2022, Plaintiff initiated an introductory contact with Oracle by emailing from his ByteDance work account to Oracle's SVP of Communications, Deborah Hellinger, with a blind-carbon-copy ('bcc') being sent to the VP of Physical Networking and Oracle Cloud Infrastructure, Eddie Goziker.

**32.** On that same day and then on January 31, 2022, Plaintiff continued his escalations of risk management internally to the global CEO of ByteDance Mr. Rubo Liang (China), COO of TikTok Ms. Vanessa Pappas (USA), TikTok Compliance Officer Ms. Melissa Martin (USA), TikTok Head of Ethics Mr. Marc Arvanitis (USA), ByteDance Head of Global Security Organization Mr. Roland Cloutier (USA), and had several very detailed

discussions with the *former* FBI Task Force Officer Travis Dalton who now worked in TikTok's security group and was reporting to Roland Cloutier.

**33.** On February 1, 2022, TikTok's Head of Trust and Safety Mr. Eric Han (USA) and his protégé in a role of Sr. Director of Operations Mr. Mark Yeh (USA) – *both being the immediate suspects of instigating the internal fraud on behalf of TikTok's executives* - asked Plaintiff to stop his risk management escalations for '*Project Texas*' in USA and China.

**34.** Plaintiff refused to succumb to these corrupt and forceful suggestions because the suspects were asking Plaintiff to essentially stop doing his job and in doing so to violate the public policy of Executive Order 14034 and to violate the laws of the United States of America by hiding the risks to US national security.

**35.** As a result, on February 2, 2022, Mr. Mark Yeh announced that he has put Plaintiff on a 'paid leave of absence in good standing with the company' while he was investigating Plaintiff's risk management activities and contacts with Oracle and ByteDance executives.

**36.** On February 8, 2022, after Plaintiff's repeated efforts to initiate 'ethics procedure' internally with Mr. Marc Arvanitis, someone named Brian O'Connor tried to terminate Plaintiff's employment by purposefully omitting a standard US-based human resources and sending the termination paperwork from Singapore instead of Los Angeles.

///

///

**37.** Plaintiff's risk management findings contradicted earlier risk assessments of the system and data flows presented by *Booz Allen Hamilton* to the ODNI, DHS and other US federal agencies that were already officially submitted and documented in the *'60-120-180 days reporting'*, so the '*law enforcement colleagues'* decided to rid of Plaintiff and colluded with TikTok executives to fire him (**Violation of 18 U.S.C. § 241**).

**38.** Plaintiff's risk management findings diminished the mantra about Oracle's exaggerated involvement in '*Project Texas'* and contradicted TikTok's public announcements and statements made under oath in the US Congress about the independence of its systems and controlled data flows.

**39.** In the second half of April in 2022, Plaintiff managed to meet personally and had a detailed interview with a responsive and responsible officer of US Department of State at the American consulate in Barcelona.

**From:** Zen.Hazikaron@outlook.com
**Sent:** Tuesday, April 19, 2022 5:42 AM
**To:** barcelonaacs@state.gov; pdbarcelona@state.gov
**Cc:** madrid.office.box@trade.gov; matahart@gmail.com
**Subject:** Attention: alert, please review this information and forward as needed

**Importance:** High



## RISK: US NATIONAL SECURITY

- [1] All TikTok <u>US DATA</u> currently still is and will remain <u>UNPROTECTED</u> indefinitely due to TikTok's internal decision to cover-up and continue use of Chinese data management architecture
- [2] All TikTok US data flows <u>UNCONTROLLED</u> into Singaporean and Chinese servers, partially through virtual AWS clouds, but without any tested and verified data separation between US and non-US queues; no methodically documented data management architecture exists and all attempts to capture data flows and/or process maps were and are actively blocked by TikTok's Management
- [3] TikTok internal "*Project Texas*" to separate US data from non-US may potentially be an <u>INTERNAL FRAUD</u>; both US and China TikTok Senior Management repeatedly claim that there are multiple Oracle servers in Texas that are <u>ALREADY</u> ensuring US Data Security, but these suggestions were <u>NOT POSSIBLE TO VERIFY</u> or substantiate through standard risk management procedures (control testing, risk assessments, etc.)
- [4] Additional major gaps identified: (a) no VPN requirement for internal tools used by Third Parties; (b) US queues moderation is still occurring offshore; (c) Procurement and vendor management practices are not robust, potentially subject to international corruption

## DATA GATHERING, ANALYSIS, ESCALATION

- This information obtained and verified through the work of a TikTok Risk Manager – "Head of Control and Governance" in US Trust and Safety organization (reporting line: Mark Yeh → Eric Han → Vanessa Pappas)
- Investigation lasted 6 months: audio, emails, screenshots, presentations, and hardware gathered as evidence, and all are readily available upon request by US government
- All methods to escalate internally within TikTok were exhausted: Chief Internal Auditor, Chief Information Security Officer, Head of Trust and Safety, Head of Compliance, Hea of Ethics, CEO
- <u>IMPORTANT</u>: attempted escalations to FBI were sabotaged by federal agents and potentially may have already resulted in unauthorized surveillance of the whistleblowe
- This matter is urgent due to weak and lacking diligence practices executed by Booz Alle Hamilton while auditing TikTok's USA operations in preparation for its planned IPO; additional risks to consider are highly 'reputational' for US Government

## Evidence Captured by Type (diagram)






**40.** In May of 2022, while perfectly understanding the importance of his inconvenient knowledge to the future of US national security, Plaintiff proactively reached out to active officers in the Department of Homeland

Security, such as *Alethea Duhon, PhD.*, who at the time was the **Associate Director for Analysis at Department of Homeland Security (CISA/NRMS)** and who indirectly acknowledged the receipt of Plaintiff's warnings and requests for US government and DHS to help that he sent through the Microsoft's social network for professionals called '*LinkedIn*'. Plaintiff believes that while *Alethea Duhon* truly wanted to help, she however was restricted and obstructed in her work capacity to act accordingly to this risk matter and national security situation by her superiors, specifically the *Defendant Alejandro Mayorkas*.



**Alethea Duhon, Ph.D.**
Associate Director for Analysis at Department of Homeland Security (CISA/NRMC)

MAY 7



**Gene Goziker, M.S.** · 3:03 AM
Hello Alethea, I am a former Head of Control and Governance for TikTok in US, left the company several months ago after escalating my findings of high risks to Chief Internal Auditor, CISO, Compliance, CEO, and in the end reached out to Head of Ethics. I believe this is a matter of National Security and would like to speak with You.

Regards,
Gene.

**41.** One week after the attempted communication with *Alethea Duhon,* Plaintiff received an offer from a DHS recruiter *Cartwright, Gabriela (CTR)* gabriela.cartwright@associates.cisa.dhs.gov to review Plaintiff's resume, which was appreciated given that it was because of the DHS' own failure whose leader, *defendant Alejandro Mayorkas* fell in complicity with the ODNI and its leader, *defendant Avril Haines*, who refused to do the work that they were hired for by the federal government to protect American citizens, along with their inability to **admit** previous mistakes due to political reason and fear of losing their jobs, that altogether were the main reason that caused Plaintiff to lose his employment. **NOTE**: the importance of DHS' and ODNI' admitting their mistakes in *'60-days report'* is essential to the repairing the damages to US national security and will allow proper risk management, which was exemplified by Plaintiff in his day-to-day business-as-usual work.

**42.** Also in May of 2022, Plaintiff initiated a contact with John N. Tye, a well-known attorney from Washington DC who previously helped with the disclosures of infamous 'Facebook Files' to the US Congress and digested for intelligence community. Plaintiff shared his concerns, as well as all artifacts and evidence with the "Whistleblower Aid" and encouraged Mr. Tye to facilitate further.

**43.** In September of 2022 Plaintiff personally met with Forbes journalist, Emily Baker-White, who herself became a victim of illegal criminal surveillance that currently is still being investigated by the Department of Justice and the FBI (as reported by CNN on March 17, 2023, by Brian Fung*: "US government launches criminal investigation into TikTok parent, reports say"*).

**44.** In November of 2022, Plaintiff sent the letters with *'Toutiao Code'* and a short-form risk assessment urging to stop approval by CFIUS to the:

a. Director of FBI, Christopher Wray
b. Secretary of Treasury, Janet Yellen
c. Assistant Attorney General, Lisa Monaco
d. Director of OMB, Shalanda Young

**45.** In February of 2023, Plaintiff provided testimony to the FBI, DHS, and the Office of Tennessee Attorney General.

**46.** In March of 2023, Plaintiff testified to the US Congress and provided testimonies to the US House of Representatives Energy and Commerce Committee and offices of US Senators Warner, Hawley, Grassley and Durbin.

**47.** On March 28, 2023, Plaintiff again testified to the FBI and DHS in presence of attorney David Stein (*California Bar License #327946*). In early 2023, as a result of Plaintiff's *'post-termination'* risk management efforts, President Biden banned TikTok on all government-owned devices. On May 4, 2023, the CEO of TikTok, Mr. Shou Zi Chew, provided written responses to the US House of Representatives and admitted to the Honorable Jan Schakowsky's that the '*Toutiao Code'* which was previously discovered by Plaintiff on January 25, 2022, was in fact evidencing the ***currently existing*** interference between two systems of TikTok in USA and Toutiao in China that TikTok Inc. simply cannot control due to the fact that Toutiao is a mainframe, and Douyin translated into English and called now TikTok is a *derivative* that is planted and operates on the mainframe, and not separately in its own universe.

TikTok

May 4. 2023

Chair Cathy McMorris Rodgers
Ranking Member Frank Pallone, Jr.
U.S. House Committee on Energy and Commerce
Attn: Jessica Herron, Legislative Clerk
2125 Rayburn House Office Building
Washington, D.C. 20515

Dear Chair McMorris Rodgers, Ranking Member Pallone, and Members of the Committee:

Enclosed are responses from TikTok Inc. ("TikTok") to the Committee's Questions for the Record ("QFRs"). TikTok CEO Shou Chew appreciated the opportunity to appear before the Committee to answer questions, and TikTok likewise welcomes the chance to address the Committee's follow-up questions.

All of this is in keeping with TikTok's commitment to transparency and responsiveness in TikTok's relationship with the Committee. Prior to his testimony, Mr. Chew personally met with over half the Members of the Committee. TikTok used these meetings as an opportunity not only to provide information but also to listen carefully to Members' concerns and incorporate their feedback into our efforts to constantly improve platform safety and the experience of the more than 150 million Americans who use TikTok.

Additionally, in the months leading up to the hearing, TikTok provided the Committee with five briefings on issues including data access and security. TikTok's briefers stayed until all of the staff's questions were answered and addressed follow-up inquiries in writing. TikTok also provided a sixth briefing, this time on COVID-related content moderation, following the hearing and again responded in writing to follow-up questions. These briefings supplemented the documents that TikTok have produced in response to the Committee's requests.

In keeping with this pattern of engagement, TikTok has endeavored to address the more than 375 QFRs within the 21-day period provided by the Committee. TikTok welcomes the opportunity to continue to engage in a dialogue on these important issues.

Sincerely,

TikTok

***Question from Congresswoman Jan Schakowsky (IL-09)(p.35)***

https://docs.house.gov/meetings/IF/IF00/20230323/115519/HHRG-118-IF00-Wstate-ChewS-20230323.pdf

**4. A former TikTok risk manager turned whistleblower has reported that the Project Texas plan is deeply flawed. The former employee has shown the Washington Post a piece of code that shows TikTok could connect with systems linked to Toutiao, a Chinese news app owned by your parent company ByteDance. The whistleblower claims this could allow for interference in the flow of data from US users. Can the Toutiao app interfere with TikTok data flows once Project Texas is initiated? Is US data sent to or stored in Toutiao? When Project Texas is implemented as planned and Oracle staff review TikTok code, what is the process for remediating issues identified by the review? How does this process differ if issues in TikTok's code are identified by Oracle staff, USDS staff, TikTok employees, or ByteDance employees? What personnel will update and deploy code flagged with issues by Oracle? How will code fixes be verified to resolve the identified issue and how will deployment of those fixes be verified?**

Many of the allegations in this article are unfounded. The platform and the algorithm supporting U.S. users is contained in the Oracle environment and use of the term "Toutiao" does not in any way indicate a correlation between, integration of, or network connectivity between Toutiao and TikTok.

Toutiao is a news application that operates in China, and U.S. user data is not stored in the Toutiao news application. U.S. user data is not stored in the Toutiao news application. All new protected user data is stored in the TikTok U.S. platform operating in Oracle and USDS controlled infrastructure. The Toutiao news application cannot interfere with TikTok data flows once Project Texas is complete.

When Project Texas is implemented as planned, any issues will be handled through our Vulnerability Management process with defined service level agreements based on criticality. Fixes to server code will be deployed by USDS after going through software review. Fixes to the mobile app will be compiled and deployed to the app stores by Oracle. As part of Project Texas, all code and updates have to go through a software assurance process and be reviewed by both Oracle and another third-party source code inspector.

The Washington Post

Democracy Dies in Darkness

# A former TikTok employee is secretly fighting the company on Capitol Hill

His claims of data-security flaws, which the company disputes, underscore how seriously Congress has begun taking the wildly popular short-video app with more than 100 million users nationwide.



By Drew Harwell

March 10, 2023 at 6:30 a.m. EST

A former risk manager at TikTok has met with congressional investigators to share his concerns that the company's plan for protecting U.S. user data is deeply flawed, pointing to evidence that could inflame

**48.** All this new information exposes major gaps in US government's risk management and continuous monitoring for Section 2(d) of the President Biden's «EO 14034», where he explicitly required that:

> (d) The Secretary of Commerce shall evaluate on a continuing basis transactions involving connected software applications that may pose an undue risk of sabotage or subversion of the design, integrity, manufacturing, production, distribution, installation, operation, or maintenance of information and communications technology or services in the United States; pose an undue risk of catastrophic effects on the security or resiliency of the critical infrastructure or digital economy of the United States; or otherwise pose an unacceptable risk to the national security of the United States or the security and safety of United States persons. Based on the evaluation, the Secretary of Commerce shall take appropriate action in accordance with Executive Order 13873 and its implementing regulations.

**Every requirement ordered by President Biden in his «EO 14034» was knowingly failed** by the departments and agencies responsible for its implementation **after the premature and false "60-days report",** where the true risks were not identified and, therefore, when not called out - they also could not be mitigated by any controls because of the continuous '*state of denial*' **inspired and owned by ODNI**, and as a result even today American users' trust and safety are still endangered (*ref. 'Letter to America' incident in November 2023*) , professional risk management sabotaged, and Plaintiff forcefully unemployed.

**49.** On May 4, 2023, CEO of TikTok confirmed to the US Congress that:

a. Previous statements by same TikTok executives (CEO, COO, and others) were repeatedly misinforming US Government and American public about the state of controls at TikTok between 2021-2023.

///

///

b. Plaintiff was correct when he escalated his risk management and identified data flow exposure on January 25, 2022.

c. TikTok systems in USA are vulnerable to intervention from a different system operating out of China that is not controlled in USA.

d. TikTok Inc. has no control over data flows going to and coming from a foreign system.

e. This fact, in turn, presents an immediate and imminent risk to the U.S. national security because continuing to pretend that TikTok Inc. is a standalone corporation that has an independent voice to talk and promise something to the U.S. government and to the American users is no longer an option after the November 2023 risk-event with the Osama bin Laden's so-called "Letter to America" when TikTok Inc. proved that it cannot govern and control itself and its product.

f. It simply cannot.

**50.** Plaintiff repeatedly warned the FBI and DHS (including by emails and during in-person meetings) about the imminent risk event and danger to the public safety of Americans. Plaintiff's warnings were ignored because the true risk management is never convenient to those who are complacent, complaisant, or simply afraid for their job security which they also perfectly know that they are not doing well and also know that they won't be able to find a new workplace to slack as well, especially in federal government. In 2007, before starting at Citi, Plaintiff had a 2-months gig at the U.S. DoL and knows well.

**51.** When they realized that Plaintiff knows about their potentially honest mistake with the '*60-days report*', the DoJ and FBI, as well DHS and other 'law enforcement colleagues' working at TikTok still had a chance to start doing their job, yet they decided to not only sabotage Plaintiff's work, but also arranged for his losing the employment. Even if the initial mistake was a human error, which can happen to all of us and in fact shall be considered a good opportunity to learn and advance, then after Plaintiff's risk identification everything that the DHS, DoJ and FBI, ODNI, NSA and other federal agencies did was an intentional sabotage, cover-up, and simple treason.

**52.** In November of 2023, ByteDance violated public trust and safety of American users by promoting on TikTok and failing to control the viral spread of the infamous so-called "Letter to America" - a piece of extremist and xenophobic anti-American propaganda authored by Osama bin Laden, the leader of Al Qaeda international terrorist organization, in which he justifies the terrorist attacks and murdering of thousands of Americans on September 11, 2001, and threatens to intensify the war against the USA unless Americans succumb to his demands. In doing so, ByteDance injured the national memory for the victims and abused dignity of all '9/11' survivors by promoting this terrorist propaganda on TikTok in a completely uncontrollable manner which also showed the lack of any self-governance, if not evidenced the intent.

**53.** While being employed at ByteDance, Plaintiff received confirmations from his former '*civilian*' colleagues that the former FBI, NSA, DHS, Secret Service, CIA and other US government law enforcement's officers that are currently employed by ByteDance for monitoring TikTok users in USA, also have shared information about Plaintiff and his risk management activities

with TikTok executives whom Plaintiff was suspecting of conspiring to defraud the American government.

**54.**Plaintiff alleges that former and active *'law enforcement colleagues'* colluded with TikTok executives and its legal department to conceal the gaps in *'Project Texas'* and misled the governmental *'60-120-180 days reporting'* and failed the continuous monitoring for the implementation of President Biden's «EO 14034», which falls under the definition provided in NSSM-1 as something that "*corrodes public trust, and fuels popular cynicism toward effective, accountable governance* (White House publication, Dec. 2021).

**55.** Plaintiff possesses information that during his employment and after his wrongful termination that was orchestrated by the *'law enforcement colleagues'*, the **US Department of Justice knowingly and maliciously violated Section 702 to obtain a FISA court order against Plaintiff.**

**56.** Plaintiff possesses information that during his employment and after his wrongful termination that was orchestrated by the *'law enforcement colleagues'*, as a result of **US Department of Justice violation of Section 702** submission to the FISA court and manipulating it into ordering surveillance against Plaintiff, other **US agencies also improperly received information about Plaintiff in violation of the Privacy Act, 5 U.S.C § 552.a(b),** in which The Privacy Act explicitly provides, that a federal agency shall not "disclose any record which is contained in a system of records by any means of communication to any person, or to another agency."

///

///

**57.**Plaintiff possesses information and alleges that during his employment and after his wrongful termination that was orchestrated by the *'law enforcement colleagues'*, as a result of **US Department of Justice cheating with FISA Section 702, the FBI foreign stations collaborated with CIA who in turn illegally shared private information about Plaintiff with the foreign governments abroad (**in particular with special services groups operating on behalf for national governments of the Federal Republic of Germany, Commonwealth of Australia, and Republic of Türkiye**)**, in violation of US constitution and laws that guarantee reciprocity in allegiance between the state and its law-abiding citizens.

**58.**Plaintiff alleges that the ODNI acted in orchestrated cover-up together with the Secretary of DHS who jointly were in charge for the initial risk identification and risk assessment (*60-days report'*) that missed the major risks in TikTok vulnerability assessment, and then attempted to forcefully conceal the risk identification performed by the Plaintiff who worked in his formal capacity as Risk Manager at ByteDance to oversee TikTok (i.e., this means that the company, ByteDance, through the work of Plaintiff and his escalation to FBI, has self-reported risks and problems with implementation of «EO 14034» to the American government, but the federal departments responsible for the implementation of «EO 14034» became afraid for their job security and, while influenced by the power of ODNI, now were trying to hide the true risk identification for political reasons).

**59.** Plaintiff alleges that the Secretary of Commerce who is now responsible for the post-mortem monitoring of the Executive Order 14034 and who was also responsible for leading the consultations with the Secretary of State, the

Secretary of Defense, the Attorney General, the Secretary of Health and Human Services, the Secretary of Homeland Security, the Director of National Intelligence, and the heads of other agencies as the Secretary of Commerce deemed appropriate fabricated the production of the *'120-days report'*.

**60.** Plaintiff alleges that the '*180-days report'* which the Assistant to the President and National Security Advisor provided to President Biden for deciding on further executive and legislative actions to protect American users of TikTok was lagging material risks identified by Plaintiff and therefore was insufficient and failed to alert the President about the true risk assessment.

**61.**Plaintiff alleges that all departments' heads and secretaries mentioned in the «EO 14034» acted in organized manner to conceal the risk assessment produced by Plaintiff and, therefore, are jointly responsible in some partial or full manner for the events and happenings referred to above, and that Plaintiff's injuries and damages as hereinafter set forth were directly foreseeably caused by said agencies and their appointed leaders.

**62.**At all relevant times, and in connection with the matters alleged herein, each participant acted on behalf of the Defendant(s) as an agent and/or alter ego of the Defendant(s) and acted in the course and scope of such federal agency responsible for the damages caused to Plaintiff. Each participant that worked for the Defendant(s) acted with the knowledge and consent of each of the other participating agent working for the Defendant(s) and/or directed, authorized, affirmed, consented to, ratified, encouraged, approved, adopted, and/or participated in the acts or transactions of the other individual and agents working for the Defendant(s).

## PROCEDURAL HISTORY

**63.** On December 22, 2022, Plaintiff filed a retaliation complaint with State of California, Department of Industrial Relations, Labor Commissioner's Office, Retaliation Complaint Investigation Unit: State Case No. RCI-CM-925837 (**Exhibit C**).

**64.**On February 06, 2023, Plaintiff filed a whistleblower retaliation complaint #ECN92490 with OSHA. As a result of investigation by the Federal Department of Labor, on March 3, 2023, OSHA provided the following response to Plaintiff:

> "*After review of the information that you provided to the OSHA Whistleblower Protection Program it appears your complaint does not meet criteria for investigation by OSHA. Specifically, your complaint is regarding issues that fall under the **FBI and/or SEC**, involving national data security concerns.*"

**65.** On July 20, 2023, even though the ultimate responsibility for implementation of «EO 14034» is assigned to the Department of Commerce, Plaintiff submitted an FTCA claim to the Department of Justice because of his cooperation with the FBI; the FTCA claim was received by the Department of Justice on July 27, 2023, and the Torts Branch registered it on August 2, 2023. On September 19, 2023, the FTCA claim was acknowledged by FBI in their formal response with wrongfully stated decimals for the amount claimed by Plaintiff, and finally denied (**Exhibit D**).

**66.**On January 30, 2024, Plaintiff filed a 130-pages-long civil unlimited lawsuit #24SMCV00423 for his wrongful termination in the Superior Court of

California, Santa Monica courthouse. Plaintiff requests this Court to cross-reference this lawsuit with the civil claim due to their causal relation.

## CLAIMS

## FIRST CAUSE OF ACTION

## Violation of 28 U.S.C. § 2671-2680

**67.** Plaintiff re-alleges and incorporates herein by reference each and every allegation of the preceding paragraphs as though fully set forth herein and alleges as follows.

**68.** At all times relevant to this Complaint, Defendants have been subject to the public law policy requirements of President Biden's Executive Order 14034, which departments working for the Defendant have violated.

**69.** On or around September 10, 2021, then in November of 2021, repeatedly during December of 2021, and finally on January 25, 2022, while executing a risk assessment for "Project Texas" Plaintiff identified and documented the mere fact about TikTok's association with Toutiao, which contradicted all of the federal government's *'60-120-180 days reporting'* for Executive Order 14034 that was provided by the ODNI, DHS, FBI, Defense Department, and other agencies to the Secretary of Commerce who then passed the amalgamated report to the Assistant to the President and National Security Advisor, Mr Jake Sullivan, and then, eventually, to the President.

**70.** The Plaintiff was fired by corrupt TikTok executives who colluded with the U.S. Department of Justice and its FBI.

///

**71.** On May 4, 2023, the CEO of TikTok clearly confirmed that Plaintiff's risk identification when he represented his employer in a formal role as Risk Manager and his subsequential escalation of the risk identification to the US government's officials was true and is still correct.

**72.** It is a common knowledge in China and everywhere in the Asia that Douyin and TikTok are the same, with the latter just being a translated into English language version of the Chinese product; moreover, all Chinese media and even ByteDance itself in China continuously maintain that TikTok is a globalized version of Douyin translated into English and not a separate platform; everyone in China knows that TikTok product uses Douyin infrastructure, which is built on and is interconnected with a news generating AI platform called Toutiao; everyone in China is aware that TikTok does not have any proprietary IT or any registered patents for algorithms or even its own unique interface, nor has it any standalone governance in USA or anywhere globally because the architecture is one and only of a Douyin, TikTok is not a replica or a standalone offshoot build-up. Chinese engineers working in ByteDance never made it a secret that TikTok is Douyin, and this Douyin in USA is using the same mainframe built on AI news-generating platform called Toutiao. Everything else is marketing and branding.

And, to reiterate, Chinese authorities have similar issues with Douyin being in a way an addictive product that may impact youth's development, so they find the ways to encourage product owners, i.e., ByteDance to improve its controls. Why this cannot be done in the USA by the supposedly American company TikTok Inc. is not clear to anyone in China.

///

**US government officials learned about risks from Plaintiff but decided to conceal truth from the President to obtain dividends and preferential treatment from TikTok executives and to use its product in politics.**

**73.** TikTok is a product, a product called Douyin that is translated from Chinese language for English-speaking world. Douyin is built on the mainframe of AI news-generating platform called Toutiao. TikTok does not have its own IT infrastructure and no dedicated architecture exists that could allow TikTok a capacity to control itself because it is a product, not a platform, and TikTok is a subject to the governance from unique proprietary algorithms possessed by Douyin only.

**74.** In order for TikTok to justly claim and be able to evidence that it has control and governance over itself, it must have its own IT infrastructure and dedicated standalone architecture 'from A to Z', such as for example currently exists in the productive corporate arrangement between YouTube and Google. That would also require that TikTok similarly would need to have its own proprietary algorithms, which it does not possess or control now. What *TikTok* has been trying to sell to CFIUS *with the help of Oracle, Booz Allen Hamilton, and ODNI with DHS* all this time are 'plug-ins' and API patches (Application Programming Interface) that may or may not at some point enable exchange of data or blockade it, and such solutions are always prone to major operational risks such as system errors and will never fully mitigate risk of human interference.

**Negligence and wrongful acts with omission of the risk-reporting required by the Executive Order 14034 on the part of federal employees,**

**precisely the <u>defendants Merrick Garland, Alejandro Mayorkas, and Avril Haines who are heading their respective agencies, bureaus, directorates and departments, while acting within the scope defined by their federal employment and being held responsible for truthful reporting on implementation of the «EO 14034»</u>, caused major damages to Plaintiff.**

**75.**As a direct, foreseeable, and proximate result of Defendant's unlawful actions, Plaintiff has suffered and continues to suffer substantial losses in earnings and other employment benefits and has incurred major economic losses, along with attorney's fees and litigation costs.

**76.** As a direct, foreseeable, and proximate result of Defendant's unlawful actions, Plaintiff has suffered emotional distress, humiliation, shame, anxiety, and embarrassment, all to Plaintiff's damage in an amount to be proven at the time of trial.

**77.**Defendants committed the acts herein despicably, maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff, from an improper and evil motive amounting to malice, and in conscious disregard of the rights and safety of Plaintiff and others. Plaintiff is thus entitled to recover punitive damages from Defendant in an amount according to proof.

**SECOND CAUSE OF ACTION**

**Violation of 18 U.S.C. § 241**

**78.**Plaintiff alleges that the department heads and secretaries responsible for reporting on implementation of «EO 14034» were well aware from Plaintiff's

communications about incorrectness of their reporting and major damages to the security of American users of TikTok that their inaction and sabotage is causing.

**79.** Plaintiff alleges that the department heads and secretaries responsible for reporting on implementation of «EO 14034» conspired with the corrupt TikTok executives to conceal true risks identified by Plaintiff because they were striving to receive approval for the planned IPO of TikTok in USA in exchange for political favors to the current administration.

**80.** Plaintiff alleges that once the department heads and secretaries learned from Plaintiff about the true state of risk management at TikTok, they became afraid for their job securities and political implications, so to conceal the truth they conspired with the TikTok executives to fire Plaintiff and to deprive him of income after he refused to be coerced into corrupt and criminal behavior.

**81.** As a direct, foreseeable, and proximate result of Defendant's unlawful actions, Plaintiff has suffered and continues to suffer substantial losses in earnings and other employment benefits and has incurred major economic losses, along with attorney's fees and litigation costs.

**82.** As a direct, foreseeable, and proximate result of Defendant's unlawful actions, Plaintiff has suffered emotional distress, humiliation, shame, anxiety, and embarrassment, all to Plaintiff's damage in an amount to be proven at the time of trial.

///

///

**83.**Defendant committed the acts herein despicably, maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff, from an improper and evil motive amounting to malice, and in conscious disregard of the rights and safety of Plaintiff and others. Plaintiff is thus entitled to recover punitive damages from Defendant in an amount according to proof.

## THIRD and FOURTH CAUSE OF ACTION

## Violation of 5 U.S.C § 552.a(b) and Violation of 50 U.S.C §1881a-1885 (FISA Section 702)

**84.**While being employed at ByteDance, Plaintiff received confirmations from his former 'civilian' colleagues that the former FBI, NSA, DHS, Secret Service, CIA and other US government law enforcement's officers that are currently employed by ByteDance for monitoring TikTok users in USA, also have shared information about Plaintiff and his risk management activities with TikTok executives who conspired to defraud American government.

**85.** Plaintiff alleges that the Defendant **knowingly and maliciously violated Section 702 to obtain a FISA court order on Plaintiff** and abused it in USA.

**86.** Plaintiff alleges that during his employment and after his wrongful termination that was orchestrated by the 'law enforcement colleagues', **as a result of US Department of Justice cheating on Section 702 submission to the FISA court and manipulating it into ordering surveillance against Plaintiff, other US agencies also improperly received information about Plaintiff in violation of the Privacy Act, 5 U.S.C § 552.a(b),** in which The Privacy Act explicitly provides, that a federal agency shall not "disclose any

record which is contained in a system of records by any means of communication to any person, or to another agency."

**87.**Plaintiff possesses information and has evidence that during his employment and after his wrongful termination that was orchestrated by the '*law enforcement colleagues'*, and after the Defendants violated **FISA Section 702 to obtain a court order against the Plaintiff, the FBI foreign stations then conspired with the CIA clandestine operations abroad who in turn illegally shared private information about Plaintiff with the foreign governments and their agencies (**in particular with special services groups operating on behalf for national governments of the Federal Republic of Germany, Commonwealth of Australia, and Republic of Türkiye**),**

**88.**Department of Justice and FBI violated the 50 U.S.C § 1885 that guarantees protection to the individuals providing help to the government, and instead organized a hunting campaign, forced Plaintiff's family to go through intimidation and harassment, tried to frame Plaintiff into false association with Latin American drug cartel, chased Plaintiff all over the world trying to fabricate imaginable connections with foreign services only because of his Ukrainian and Jewish background – and all of that had so far cost them dozens of millions of American taxpayers' dollars.

**89.**Plaintiff alleges that all departments' heads and secretaries mentioned in the «EO 14034» acted in organized manner to conceal the risk assessment produced by Plaintiff and, therefore, are jointly responsible in some partial or full manner for the events and happenings referred to above, and that

Plaintiff's injuries and damages as hereinafter set forth were proximately caused by said agencies and their appointed leaders.

**90.** As a direct, foreseeable, and proximate result of Defendant's unlawful actions, Plaintiff has suffered and continues to suffer substantial losses in earnings and other employment benefits and has incurred major economic losses, along with attorney's fees and litigation costs.

**91.** As a direct, foreseeable, and proximate result of Defendant's unlawful actions, Plaintiff has suffered emotional distress, humiliation, shame, anxiety, and embarrassment, all to Plaintiff's damage in an amount to be proven at the time of trial.

**92.**Defendant committed the acts herein despicably, maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff, from an improper and evil motive amounting to malice, and in conscious disregard of the rights and safety of Plaintiff and others. Plaintiff is thus entitled to recover punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against the Defendant as follows:

(1) For actual damages according to proof.

(2) For special damages according to proof.

(3) For consequential damages according to proof.

(4) For restitution and/or disgorgement of ill-gotten gains.

(5) For judicial declaration that:

(a) US government fabricated reporting for «EO 14034»

(b) ODNI and DHS leadership have committed crimes against US national security by knowingly withholding information from the President of the United States

(c) ODNI and DHS have been politically corrupted by TikTok

(6) For interest at the maximum legally permissible rate from the date of the initial misconduct.

(7) For compensatory sanctions in the amount equal to economic and non-economic damages caused to Plaintiff.

(8) For punitive sanctions for the damages caused to Plaintiff and his family.

(9) For fees and costs incurred herein, and

(10) For such other and further relief as the Court deems just and proper.

**Dated: March 3, 2024** **By:** ______________________

**JIANG JING**

Attorney for Plaintiff
Zen Goziker

# EXHIBITS

# Exhibit A

31423

Federal Register
Vol. 86, No. 111
Friday, June 11, 2021

## Presidential Documents

Title 3—

The President

Executive Order 14034 of June 9, 2021

### Protecting Americans' Sensitive Data From Foreign Adversaries

By the authority vested in me as President by the Constitution and the laws of the United States of America, including the International Emergency Economic Powers Act (50 U.S.C. 1701 *et seq.*) (IEEPA), the National Emergencies Act (50 U.S.C. 1601 *et seq.*), and section 301 of title 3, United States Code,

I, JOSEPH R. BIDEN JR., President of the United States of America, find that it is appropriate to elaborate upon measures to address the national emergency with respect to the information and communications technology and services supply chain that was declared in Executive Order 13873 of May 15, 2019 (Securing the Information and Communications Technology and Services Supply Chain). Specifically, the increased use in the United States of certain connected software applications designed, developed, manufactured, or supplied by persons owned or controlled by, or subject to the jurisdiction or direction of, a foreign adversary, which the Secretary of Commerce acting pursuant to Executive Order 13873 has defined to include the People's Republic of China, among others, continues to threaten the national security, foreign policy, and economy of the United States. The Federal Government should evaluate these threats through rigorous, evidence-based analysis and should address any unacceptable or undue risks consistent with overall national security, foreign policy, and economic objectives, including the preservation and demonstration of America's core values and fundamental freedoms.

By operating on United States information and communications technology devices, including personal electronic devices such as smartphones, tablets, and computers, connected software applications can access and capture vast swaths of information from users, including United States persons' personal information and proprietary business information. This data collection threatens to provide foreign adversaries with access to that information. Foreign adversary access to large repositories of United States persons' data also presents a significant risk.

In evaluating the risks of a connected software application, several factors should be considered. Consistent with the criteria established in Executive Order 13873, and in addition to the criteria set forth in implementing regulations, potential indicators of risk relating to connected software applications include: ownership, control, or management by persons that support a foreign adversary's military, intelligence, or proliferation activities; use of the connected software application to conduct surveillance that enables espionage, including through a foreign adversary's access to sensitive or confidential government or business information, or sensitive personal data; ownership, control, or management of connected software applications by persons subject to coercion or cooption by a foreign adversary; ownership, control, or management of connected software applications by persons involved in malicious cyber activities; a lack of thorough and reliable third-party auditing of connected software applications; the scope and sensitivity of the data collected; the number and sensitivity of the users of the connected software application; and the extent to which identified risks have been or can be addressed by independently verifiable measures.

The ongoing emergency declared in Executive Order 13873 arises from a variety of factors, including the continuing effort of foreign adversaries to steal or otherwise obtain United States persons' data. That continuing effort by foreign adversaries constitutes an unusual and extraordinary threat to the national security, foreign policy, and economy of the United States. To address this threat, the United States must act to protect against the risks associated with connected software applications that are designed, developed, manufactured, or supplied by persons owned or controlled by, or subject to the jurisdiction or direction of, a foreign adversary.

Additionally, the United States seeks to promote accountability for persons who engage in serious human rights abuse. If persons who own, control, or manage connected software applications engage in serious human rights abuse or otherwise facilitate such abuse, the United States may impose consequences on those persons in action separate from this order.

Accordingly, it is hereby ordered that:

**Section 1.** *Revocation of Presidential Actions.* The following orders are revoked: Executive Order 13942 of August 6, 2020 (Addressing the Threat Posed by TikTok, and Taking Additional Steps To Address the National Emergency With Respect to the Information and Communications Technology and Services Supply Chain); Executive Order 13943 of August 6, 2020 (Addressing the Threat Posed by WeChat, and Taking Additional Steps To Address the National Emergency With Respect to the Information and Communications Technology and Services Supply Chain); and Executive Order 13971 of January 5, 2021 (Addressing the Threat Posed by Applications and Other Software Developed or Controlled by Chinese Companies).

**Sec. 2.** *Implementation.* (a) The Director of the Office of Management and Budget and the heads of executive departments and agencies (agencies) shall promptly take steps to rescind any orders, rules, regulations, guidelines, or policies, or portions thereof, implementing or enforcing Executive Orders 13942, 13943, or 13971, as appropriate and consistent with applicable law, including the Administrative Procedure Act, 5 U.S.C. 551 *et seq.* In addition, any personnel positions, committees, task forces, or other entities established pursuant to Executive Orders 13942, 13943, or 13971 shall be abolished, as appropriate and consistent with applicable law.

(b) Not later than 120 days after the date of this order, the Secretary of Commerce, in consultation with the Secretary of State, the Secretary of Defense, the Attorney General, the Secretary of Health and Human Services, the Secretary of Homeland Security, the Director of National Intelligence, and the heads of other agencies as the Secretary of Commerce deems appropriate, shall provide a report to the Assistant to the President and National Security Advisor with recommendations to protect against harm from the unrestricted sale of, transfer of, or access to United States persons' sensitive data, including personally identifiable information, personal health information, and genetic information, and harm from access to large data repositories by persons owned or controlled by, or subject to the jurisdiction or direction of, a foreign adversary. Not later than 60 days after the date of this order, the Director of National Intelligence shall provide threat assessments, and the Secretary of Homeland Security shall provide vulnerability assessments, to the Secretary of Commerce to support development of the report required by this subsection.

(c) Not later than 180 days after the date of this order, the Secretary of Commerce, in consultation with the Secretary of State, the Secretary of Defense, the Attorney General, the Secretary of Homeland Security, the Director of the Office of Management and Budget, and the heads of other agencies as the Secretary of Commerce deems appropriate, shall provide a report to the Assistant to the President and National Security Advisor recommending additional executive and legislative actions to address the risk associated with connected software applications that are designed, developed, manufactured, or supplied by persons owned or controlled by, or subject to the jurisdiction or direction of, a foreign adversary.

Federal Register / Vol. 86, No. 111 / Friday, June 11, 2021 / Presidential Documents 31425

(d) The Secretary of Commerce shall evaluate on a continuing basis transactions involving connected software applications that may pose an undue risk of sabotage or subversion of the design, integrity, manufacturing, production, distribution, installation, operation, or maintenance of information and communications technology or services in the United States; pose an undue risk of catastrophic effects on the security or resiliency of the critical infrastructure or digital economy of the United States; or otherwise pose an unacceptable risk to the national security of the United States or the security and safety of United States persons. Based on the evaluation, the Secretary of Commerce shall take appropriate action in accordance with Executive Order 13873 and its implementing regulations.

**Sec. 3.** *Definitions.* For purposes of this order:

(a) the term "connected software application" means software, a software program, or a group of software programs, that is designed to be used on an end-point computing device and includes as an integral functionality, the ability to collect, process, or transmit data via the internet;

(b) the term "foreign adversary" means any foreign government or foreign non-government person engaged in a long-term pattern or serious instances of conduct significantly adverse to the national security of the United States or security and safety of United States persons;

(c) the term "information and communications technology or services" means any hardware, software, or other product or service primarily intended to fulfill or enable the function of information or data processing, storage, retrieval, or communication by electronic means, including transmission, storage, and display;

(d) the term "person" means an individual or entity; and

(e) the term "United States person" means any United States citizen, lawful permanent resident, entity organized under the laws of the United States or any jurisdiction within the United States (including foreign branches), or any person in the United States.

**Sec. 4.** *General Provisions.* (a) Nothing in this order shall be construed to impair or otherwise affect:

(i) the authority granted by law to an executive department or agency, or the head thereof; or

(ii) the functions of the Director of the Office of Management and Budget relating to budgetary, administrative, or legislative proposals.

(b) This order shall be implemented consistent with applicable law and subject to the availability of appropriations.

31426 **Federal Register** / Vol. 86, No. 111 / Friday, June 11, 2021 / Presidential Documents

(c) This order is not intended to, and does not, create any right or benefit, substantive or procedural, enforceable at law or in equity by any party against the United States, its departments, agencies, or entities, its officers, employees, or agents, or any other person.

THE WHITE HOUSE,
*June 9, 2021.*

[FR Doc. 2021–12506
Filed 6–10–21; 11:15 am]
Billing code 3295–F1–P

# Exhibit B




**Transaction Detail**

Hayden Lee

Department
Tiktok-USA-Safety

Business Line
TikTok 100%

Direct manager
Mark Yeh → Gene Geziker

Job level
Operations-User Product Operations-2-2

Work location
Los Angeles

Social security city
Los Angeles

Company
TikTok Inc.

Working calendar
US_Public Holiday & Weekend

Working hours
Standard Working Hours System

...

# Exhibit C

**STATE OF CALIFORNIA** Gavin Newsom, *Governor*

DEPARTMENT OF INDUSTRIAL RELATIONS
Labor Commissioner's Office
*Retaliation Complaint Investigation Unit*
3737 Main St Suite 850
Riverside, CA 92501
Phone: Email: retaliation@dir.ca.gov

January 31, 2023

GENE GOZIKER
2971 S. FAIRVIEW
SANTA ANA, CA 92704

Re: GENE GOZIKER v. TikTok Inc.
State Case No. RCI-CM-925837

Dear GENE GOZIKER:

This office has received your retaliation complaint, filed with this office on December 22, 2022, alleging that you suffered unlawful retaliation in violation of California law.

**Parties are encouraged to engage in settlement discussions amongst themselves. Alternatively, if you are interested in participating in an informal meeting to resolve your complaint, please send an email to retaliation@dir.ca.gov with "SETTLEMENT" in the subject line. Your participation is voluntary. Only if both parties agree, your case will be temporarily assigned to a Deputy Labor Commissioner who is experienced in working with parties to reach satisfactory settlements.**

**Please keep in mind that RCI investigations can be lengthy and may not result in your desired outcome. Settlement allows the parties to come to a compromise and provide relief, resolution, and peace of mind.**

As soon as the case is assigned to an investigator, you and the employer will be contacted and given an opportunity to present documents, position statements, or witness names to support your respective positions. Hold on to these documents until the assigned investigator requests them from you.

We suggest that you obtain the first and last names, addresses, and telephone numbers for witnesses who may be able to tell us more about your claim. Also, please save any documentation that you may have, such as wage statements, emails, letters, text messages, or notices. It is helpful if you keep notes of any conversations you have had, noting the date and with whom the conversation took place. Also, if you have a recollection of what happened, it is helpful if you write it down while your memory is fresh. A chronology of events can be very useful.

# Exhibit D

U.S. Department of Justice

Federal Bureau of Investigation

*Office of the General Counsel* Washington, D.C. 20535-0001

September 19, 2023

***Via Certified Mail - Return Receipt Requested***

Mr. Gene Goziker
2971 S. Fairview #A
Santa Ana, CA 92704

**Re: Administrative Tort Claim of Gene Goziker**

Dear Mr. Goziker:

The above referenced tort claims were presented to the Federal Bureau of Investigation (the "FBI") pursuant to the Federal Tort Claims Act.

The FBI received your claim dated July 20, 2023, where you allege, "major personal injury and health damage from unlawful surveillance by FBI, CIA, NSA and various Foreign Governments' spy agencies" and seek two billion one hundred ten million ($2,110,000,000.00) in damages. I have included a copy of your claim for your reference.

In order to recover damages under the Federal Tort Claims Act ("FTCA"), Title 28 of the United States Code ("USC"), Sections 2671-2680, a claimant must demonstrate negligence or a wrongful act or omission on the part of a federal employee(s) acting within the scope of his or her employment. Upon careful review of the applicable law and the merits of your claim, this office has determined that the claim should be, and hereby is, denied pursuant to Title 28 of the United States Code of Federal Regulations ("CFR"), Section 14.9.

We are required to inform you, pursuant to 28 CFR § 14.9(a), that if you are dissatisfied with our determination, you may file a suit against the United States in an appropriate United States District Court no later than six (6) months after the date of mailing of this notification of final denial. 28 U.S.C. § 2401(b).

Please direct any further communication regarding this request to Assistant General

**Re: Administrative Tort Claim of Gene Goziker**

Counsel Nadin Rabelo Linthorst. She may be reached by telephone at (202) 875-0979 or by email at NRLINTHORST@fbi.gov.

Sincerely,

Paul R. Wellons
Unit Chief—Civil Litigation Unit II
Office of the General Counsel

| CLAIM FOR DAMAGE, INJURY, OR DEATH | **INSTRUCTIONS:** Please read carefully the instructions on the reverse side and supply information requested on both sides of this form. Use additional sheet(s) if necessary. See reverse side for additional instructions. | FORM APPROVED OMB NO. 1105-0008 |
|---|---|---|

| 1. Submit to Appropriate Federal Agency: | 2. Name, address of claimant, and claimant's personal representative if any. (See instructions on reverse). Number, Street, City, State and Zip code. |
|---|---|
| Department of Justice, Federal Bureau of Investigations | Gene Goziker, 2971 S. Fairview #A, Santa Ana, CA 92704<br><br>Labor Code Claims Representative: Stan A. Grombchevsky 2070 Business Center Dr. #285, Irvine, CA 92612, USA |

| 3. TYPE OF EMPLOYMENT | 4. DATE OF BIRTH | 5. MARITAL STATUS | 6. DATE AND DAY OF ACCIDENT | | 7. TIME (A.M. OR P.M.) |
|---|---|---|---|---|---|
| ☐ MILITARY ☒ CIVILIAN | 06/21/1978 | Divorced | 02/08/2022 | Tuesday | 5:44 P.M. |

8. BASIS OF CLAIM (State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof. Use additional pages if necessary).

I am an American citizen. In August of 2021 I worked as a Risk Manager, Head of Control and Governance at TikTok Inc. In line of performing my job duties, I found risk issues pertaining to US National Security of which I promptly notified the FBI. Instead of assisting my team to manage the risks, FBI unlawfully sabotaged [18 USC §105] our risk management in violation of President's EO #14034 and engaged in illegal surveillance campaign against me. TikTok's spying software and hardware penetration of US users has not been mitigated. Because of the FBI's failure, I was wrongfully terminated, have no income and no career future.

9. PROPERTY DAMAGE

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT (Number, Street, City, State, and Zip Code).

Name: Yelena Zhuravel (claimant's Mother) Address: 2971 S. Fairview St. #A, Santa Ana, CA 92704, United States of America

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF THE DAMAGE AND THE LOCATION OF WHERE THE PROPERTY MAY BE INSPECTED. (See instructions on reverse side).

Personal hardware property (at the address above) damaged as a result of TikTok attempt to spy on claimant's communications with offices of US Senators (Warner, Hawley, Grassley, Durbin) and with bi-partisan staffers from the House' E&C committee.

10. PERSONAL INJURY/WRONGFUL DEATH

STATE THE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE THE NAME OF THE INJURED PERSON OR DECEDENT.

Major personal injury and health damage from unlawful surveillance by FBI, CIA, NSA and various Foreign Governments' spy agencies from September 2021 and up-to-date [18 USC §241]. Severe stress caused by FBI's illegal sharing with Chinese state (adversary) and private corporation Bytedance of the fact that claimant contacted the FBI. Inability to find new meaningful employment due to FBI's illegal interference into claimant's professional and personal life. Loss of consortium with my children.

11. WITNESSES

| NAME | ADDRESS (Number, Street, City, State, and Zip Code) |
|---|---|
| Christopher Wray | 935 Pennsylvania Ave, NW, Washington D.C. 20535-0001, USA |
| Lisa Monaco | 950 Pennsylvania Ave, NW, Washington D.C. 20530-0001, USA |
| Janet Yellen | 1500 Pennsylvania Avenue, NW, Washington, D.C. 20220, USA |

12. (See instructions on reverse). AMOUNT OF CLAIM (in dollars)

| 12a. PROPERTY DAMAGE | 12b. PERSONAL INJURY | 12c. WRONGFUL DEATH | 12d. TOTAL (Failure to specify may cause forfeiture of your rights). |
|---|---|---|---|
| 110000000 | 2000000000 | knock on wood | 2110000000 |

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE INCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM.

| 13a. SIGNATURE OF CLAIMANT (See instructions on reverse side). | 13b. PHONE NUMBER OF PERSON SIGNING FORM | 14. DATE OF SIGNATURE |
|---|---|---|
| Женя | 202-440-8746 | 07/20/2023 |

| CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM | CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS |
|---|---|
| The claimant is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages sustained by the Government. (See 31 U.S.C. 3729). | Fine, imprisonment, or both. (See 18 U.S.C. 287, 1001.) |

Authorized for Local Reproduction
Previous Edition is not Usable
95-109

NSN 7540-00-634-4046

STANDARD FORM 95 (REV. 2/2007)
PRESCRIBED BY DEPT. OF JUSTICE
28 CFR 14.2

**INSURANCE COVERAGE**

In order that subrogation claims may be adjudicated, it is essential that the claimant provide the following information regarding the insurance coverage of the vehicle or property.

15. Do you carry accident insurance? [X] Yes If yes, give name and address of insurance company (Number, Street, City, State, and Zip Code) and policy number. [ ] No

Mass Mutual Life Policy #400025103
Barnum Capital Management, 800 Boston Post Road, Building 2, Suite 203, Guilford, CT 06437 (T: 203-689-9017, Attn: Dylan)

16. Have you filed a claim with your insurance carrier in this instance, and if so, is it full coverage or deductible? [ ] Yes [X] No

17. If deductible, state amount.

18. If a claim has been filed with your carrier, what action has your insurer taken or proposed to take with reference to your claim? (It is necessary that you ascertain these facts).

None

19. Do you carry public liability and property damage insurance? [ ] Yes If yes, give name and address of insurance carrier (Number, Street, City, State, and Zip Code). [X] No

None

**INSTRUCTIONS**

**Claims presented under the Federal Tort Claims Act should be submitted directly to the "appropriate Federal agency" whose employee(s) was involved in the incident. If the incident involves more than one claimant, each claimant should submit a separate claim form.**

**Complete all items - Insert the word NONE where applicable.**

A CLAIM SHALL BE DEEMED TO HAVE BEEN PRESENTED WHEN A FEDERAL AGENCY RECEIVES FROM A CLAIMANT, HIS DULY AUTHORIZED AGENT, OR LEGAL REPRESENTATIVE, AN EXECUTED STANDARD FORM 95 OR OTHER WRITTEN NOTIFICATION OF AN INCIDENT, ACCOMPANIED BY A CLAIM FOR MONEY DAMAGES IN A **SUM CERTAIN** FOR INJURY TO OR LOSS OF PROPERTY, PERSONAL INJURY, OR DEATH ALLEGED TO HAVE OCCURRED BY REASON OF THE INCIDENT. THE CLAIM MUST BE PRESENTED TO THE APPROPRIATE FEDERAL AGENCY WITHIN **TWO YEARS** AFTER THE CLAIM ACCRUES.

**Failure to completely execute this form or to supply the requested material within two years from the date the claim accrued may render your claim invalid. A claim is deemed presented when it is received by the appropriate agency, not when it is mailed.**

If instruction is needed in completing this form, the agency listed in item #1 on the reverse side may be contacted. Complete regulations pertaining to claims asserted under the Federal Tort Claims Act can be found in Title 28, Code of Federal Regulations, Part 14. Many agencies have published supplementing regulations. If more than one agency is involved, please state each agency.

The claim may be filed by a duly authorized agent or other legal representative, provided evidence satisfactory to the Government is submitted with the claim establishing express authority to act for the claimant. A claim presented by an agent or legal representative must be presented in the name of the claimant. If the claim is signed by the agent or legal representative, it must show the title or legal capacity of the person signing and be accompanied by evidence of his/her authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian or other representative.

If claimant intends to file for both personal injury and property damage, the amount for each must be shown in item number 12 of this form.

The amount claimed should be substantiated by competent evidence as follows:

*(a)* In support of the claim for personal injury or death, the claimant should submit a written report by the attending physician, showing the nature and extent of the injury, the nature and extent of treatment, the degree of permanent disability, if any, the prognosis, and the period of hospitalization, or incapacitation, attaching itemized bills for medical, hospital, or burial expenses actually incurred.

*(b)* In support of claims for damage to property, which has been or can be economically repaired, the claimant should submit at least two itemized signed statements or estimates by reliable, disinterested concerns, or, if payment has been made, the itemized signed receipts evidencing payment.

*(c)* In support of claims for damage to property which is not economically repairable, or if the property is lost or destroyed, the claimant should submit statements as to the original cost of the property, the date of purchase, and the value of the property, both before and after the accident. Such statements should be by disinterested competent persons, preferably reputable dealers or officials familiar with the type of property damaged, or by two or more competitive bidders, and should be certified as being just and correct.

*(d)* **Failure to specify a sum certain will render your claim invalid and may result in forfeiture of your rights.**

**PRIVACY ACT NOTICE**

This Notice is provided in accordance with the Privacy Act, 5 U.S.C. 552a(e)(3), and concerns the information requested in the letter to which this Notice is attached.

A. *Authority:* The requested information is solicited pursuant to one or more of the following: 5 U.S.C. 301, 28 U.S.C. 501 et seq., 28 U.S.C. 2671 et seq., 28 C.F.R. Part 14.
B. *Principal Purpose:* The information requested is to be used in evaluating claims.
C. *Routine Use:* See the Notices of Systems of Records for the agency to whom you are submitting this form for this information.
D. *Effect of Failure to Respond:* Disclosure is voluntary. However, failure to supply the requested information or to execute the form may render your claim "invalid."

**PAPERWORK REDUCTION ACT NOTICE**

This notice is solely for the purpose of the Paperwork Reduction Act, 44 U.S.C. 3501. Public reporting burden for this collection of information is estimated to average 6 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the Director, Torts Branch, Attention: Paperwork Reduction Staff, Civil Division, U.S. Department of Justice, Washington, DC 20530 or to the Office of Management and Budget. Do not mail completed form(s) to these addresses.

STANDARD FORM 95 REV. (2/2007) BACK

December 2, 2022

Mr. Shou Zi Chew, CEO, TikTok
5800 Bristol Parkway Culver City, Suite 100
Los Angeles, CA 90230
E-mail: shou@bytedance.com

Dear Sir,

In your most recent comments to *Bloomberg*[I] and *Wall Street Journal*[II], you used the term "solvable problem" to describe TikTok's challenges with US Data Protection and informed American public about "very rigorous data-access protocols" that supposedly mitigate these risks.

I believe that you are wrong and being lied to by your *Head of Trust and Safety*, Eric Han.

This is my second (2nd) attempt to gain your attention through a written communication and please consider this demand letter as formal request for action.

As you know from my previous correspondence dated September 22, 2022, my position at TikTok between August 2021 and February 2022 was called *Head of Control and Governance*, and *Project Texas* was in the immediate and direct scope for my day-to-day responsibilities.

Now, in this letter, I am sharing with you that Mr. Han, Mr. Yeh and other senior managers at TikTok in USA are responsible for the internal fraud pertaining to implementation of *Project Texas*.

Earlier this year, various TikTok executives were unduly pressuring me to sign off on *Project Texas* as if it was something accomplished long time ago, manipulating dozens of internal and external parties, including officials in the U.S. government, into believing that US Data Protection was already properly ensured by Oracle, verified by Booz Allen Hamilton, and that TikTok was ready for successful IPO.

They were intentionally lying to me and today, I believe, Mr. Han and other *"trusted partners"* are potentially convincing you, the CEO of TikTok, that it is safe to state publicly that *Project Texas* can fix TikTok's problems and mitigate risks for American users in the future.

When the fraud was uncovered, I shared my concerns with Mr. Chris Lepitak, *Non-China Internal Auditor*, but instead Mr. Eric Han with his accomplice Mr. Mark Yeh tried to terminate my employment with TikTok.

To conclude, this letter mostly serves its goal to inform you of unethical and potentially criminal behavior by some of TikTok senior executives, but at the same time it is also a demand for rapid internal investigation to ensure true risk management and my reinstatement.

Regards,
Gene Goziker.
1.213.378.3998
ggoziker@outlook.com

---

[I] TikTok CEO Says US Data Protection Is 'Solvable Problem'
https://www.bloomberg.com/news/articles/2022-11-30/tiktok-ceo-says-us-data-protection-is-solvable-problem

[II] TikTok Chief Touts Customer Data-Privacy Initiatives
https://www.wsj.com/articles/tiktok-chief-touts-customer-data-privacy-initiatives-11669851038?page=1

FORBES INNOVATION

EDITORS' PICK

# Senate Intelligence Committee Calls On FTC To Investigate TikTok For 'Deception'

**Emily Baker-White** Forbes Staff

Follow

0

Jul 5, 2022, 05:47pm EDT

**China-based employees at TikTok's parent company, ByteDance, repeatedly accessed sensitive U.S. user data "in contravention of several public representations," the committee said.**

https://www.forbes.com/sites/emilybaker-white/2022/07/05/senate-intelligence-committee-calls-on-ftc-to-investigate-tiktok-for-deception/?sh=1da...

### WHITE HOUSE TO DECIDE

U.S officials involved in the talks have indicated that many of the voluntary measures TikTok is implementing to bolster its security may be part of any agreement to allow ByteDance to retain its ownership, one of the sources said. However, it is unclear whether Biden's administration will eventually sign off on a security deal with TikTok.

The U.S. Treasury Department and the Department of Justice, which have been leading the negotiations with TikTok, have been open to a deal to avoid the kind of legal challenge from the company that bogged down Trump's bid to force a divestment, the sources said.

The outcome will ultimately be determined by the White House, the sources added, because Biden will be called upon to adjudicate the arguments of the various government departments and agencies that are either supportive or dismissive of a deal.

https://www.reuters.com/technology/tiktok-steps-up-efforts-clinch-us-security-deal-2022-12-22/

The Verge

Reviews / Science / Entertainment

TIKTOK

## TikTok's transparency theater

What I observed during a recent visit to TikTok's first transparency center.

By ALEX HEATH / @alexeheath

Feb 2, 2023, 4:23 PM PST | 32 Comments / 32 New

**From:** Harwell, Drew <Drew.Harwell@washpost.com>
**Sent:** Friday, February 17, 2023 4:32 AM
**To:** Gene Gēziker
**Subject:** RE:

Will do. Yes, I just want to make sure your insight is maximally useful and presented and protected in the right way.

St. Warner as in Sen. Warner? Interesting; let me know how that goes.

Drew Harwell
Washington Post
202.355.3475

**From:** Gene Gēziker <ggoziker@outlook.com>
**Sent:** Thursday, February 16, 2023 3:19 PM
**To:** Harwell, Drew <Drew.Harwell@washpost.com>
**Subject:** Re:

Hey Drew, thanks for sharing, will read out later today.

Yes, Ms. Wong Hui Min is the one I fully trust and I will stick with her legal representation. She'd probably not approve me talking to you now, but you've been part of this story since the very beginning, so let's keep it between us.

And yes, talking to St. Warner's office tomorrow. Trying my best to prevent the ban, I have a solution how-to and it's *not* what Shou is trying to sell.

Cheerz.
Zen

Gene 'Zen' Goziker

**From:** Harwell, Drew <Drew.Harwell@washpost.com>
**Sent:** Thursday, February 16, 2023 11:52:29 AM