**UNITED SECURITIES LEGAL GROUP APC**
**Jing 'Sean' Jiang** (Cal Bar License # 339158)
1968 South Coast Hwy #2854
Laguna Beach, CA 92651
Telephone: 917.985.7989
E-mail: Chairman@USLegal.Group

**Attorney for Plaintiff,**
**ZEN GOZIKER**

# UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | |
|---|---|
| ZEN GOZIKER,<br><br>                  Plaintiff, <br>v. <br>U.S. DEPARTMENT OF JUSTICE; MERRICK B. GARLAND, in his official capacity as Attorney General of the United States; SHOU ZI CHEW, an individual; BYTEDANCE LTD., a Cayman Islands company; TIKTOK LTD., a Cayman Islands company; BYTEDANCE INC., a Delaware corporation; TIKTOK INC., a California corporation; TIKTOK PTE. LTD., a Singapore company; WILLIAM E. FORD, an individual; PHILLIPPE LAFFONT, an individual; ARTHUR DANTCHIK, an individual; and DOES 1-20 inclusive,<br>               Defendant(s). | Case No. 1:24-cv-00619<br><br>**COMPLAINT (1st amended)**<br><br>Complaint Filed: March 5, 2024<br>FAC Filed:    August 14, 2024<br><br>**Honorable Judge:** Loren AliKhan<br><br>**DEMAND FOR JURY TRIAL** |

PAGE 1
_____
COMPLAINT (1st amended)

*"A sound nation is built of individuals sound in body and mind and spirit.*
*Government dares not ignore the individual citizen."*
*(Eisenhower, Dwight: Address at a Rally in the Public Square, Cleveland, 1956)*

*"The right of no nation depends upon the date of its birth or the size of its power.*
*As there can be no second-class citizens before the law of America, so — we believe*
*— there can be no second-class nations before the law of the world community."*
*(Eisenhower, Dwight: Address at the Philadelphia Convention Hall, 1956)*

*"The rule of law does more than ensure freedom from high-handed action by*
*rulers. It ensures justice between man and man however humble the one and*
*however powerful the other. A man with five dollars in the bank can call to*
*account the corporation with five billion dollars in assets-and the two will be*
*heard as equals before the law."*
*(Public Papers of the U.S. Presidents: Dwight D. Eisenhower, 1958, p.362)*

## <u>NATURE OF THE CASE</u>

Plaintiff, Zen Goziker, a Risk Manager with more than 15 years of subject matter
expertise and proven career, is acting upon formal denial from the U.S. Department
of Justice on his rightful FTCA claim (SF-95), for this Complaint now alleges:

1. Defendants knowingly violated President Biden's ***<u>Executive Order #14034</u>***.

2. Defendants coordinated fraudulent activities and lied to American public for
   years in purse of political and corporate benefits but, when Plaintiff exposed
   <u>Project Texas</u> in his job as *Risk Manager, Head of Control and Governance at*
   *ByteDance/TikTok*, Defendants conspired to deprive Plaintiff of employment
   and all income in an attempt to silence the true risks and threats to the USA.

3. Defendants maliciously invaded Plaintiff's private life and ruined his career.

PAGE 2

## **RELATED CASES**

**4.** Upon current information and belief, there are at least three active related cases:

| # | Venue | Case No.# | Title/Parties |
|---|-------|-----------|---------------|
| 1 | Superior Court of California, Los Angeles County, Santa Monica Courthouse | 24SMCV00423 | ZEN GOZIKER, an individual, <div align="right">Plaintiff,</div> v. <br>BYTEDANCE INC., a Delaware Corporation, TIKTOK Inc., a California corporation, TIAN ZHAO, an individual, SHOU ZI CHEW, an individual, RUBO LIANG, an individual, ZHANG YIMING, an individual, and DOES 1-20 inclusive, <div align="right">Defendants.</div> |
| 2 | US District Court Central District of California | 2:24-cv-06535 | UNITED STATES OF AMERICA, <div align="right">Plaintiff,</div> v. <br>BYTEDANCE LTD., a Cayman Islands company; BYTEDANCE INC., a Delaware corporation; TIKTOK LTD., a Cayman Islands company; TIKTOK INC., a California corporation; TIKTOK PTE. LTD., a Singapore company; and TIKTOK U.S. DATA SECURITY INC., a Delaware corporation, <div align="right">Defendants.</div> |
| 3 | US Court of Appeals for the District of Columbia Circuit | 24-1113 | TIKTOK INC., and BYTEDANCE LTD., <div align="right">Petitioners,</div> v. <br>MERRICK B. GARLAND, in his official capacity as Attorney General of the United States, <div align="right">Respondent.</div> |

COMPLAINT (1st amended)

## JURISDICTION AND VENUE

**5.** <u>Federal Question Jurisdiction</u>: This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1355. Venue is proper in this District under 28 U.S.C. §§ 1391(b)(2), (b)(3), (c)(1), (c)(2), (c)(3), and (d).

**6.** <u>Diversity Jurisdiction</u>: At the time of filing this lawsuit, the damages that Plaintiff is seeking to recover from the Defendant(s), account to $21,100,000 USD (*after-tax lump sum of twenty-one million one hundred thousand American dollars*), which is more than the threshold of $75,000 established by the *28 U.S.C. § 1332*. Hence, the Diversity Jurisdiction test is met.

## PLAINTIFF

**7.** The Plaintiff is American citizen residing in the State of California. Plaintiff brings this action for violations of 28 U.S.C.§ 1346(b), 1402(b), and 2671-2680 (Federal Tort Claims Act), severe violation of the President Biden's <u>Executive Order 14034</u>, violation of 18 U.S.C.§ 241, violation of 93 U.S.C.§ 579, violation of 5 U.S.C § 552.a(b), and gross violation of 50 U.S.C §1881(a)-1885 ("FISA Section 702"). Also, Plaintiff alleges that, pursuant to 18 U.S.C. § 2156 (Chapter 105, "Sabotage"), all Defendants willfully engaged in sabotage of U.S. national security at the time of national emergency declared by the <u>Executive Order 13873</u> and colluded to produce defective national-defense utilities. For these and other gross violations, pursuant to 28 U.S.C. § 2671, Plaintiff seeks a permanent injunction, civil penalties, and other relief, including the after-tax recovery for injury and damages in the lump sum amount of $21,100,000 USD, plus pursuant to 28 U.S.C. § 2678 the attorney fees and expenses in the amount permitted by law not to exceed 25% from the amount of final judgment entered post-litigation or 20% if any award or settlement reached before the trial.

COMPLAINT (1st amended)

**8.** In addition to the lump-sum after-tax recovery of $21,100,000 USD, Plaintiff demands from the collective corporate ByteDance and TikTok Defendants restitution for pro-rated lost wages and recovery for executive compensation on unrealized future earnings, recalculation of stock options, and immediate reinstatement to the position of Risk Manager at ByteDance with new employment contract at parent company, which as of May 6, 2022, is called DOUYIN with two corporate entities registered in Hong Kong and PRC as Douyin Group (HK) Limited and Beijing Douyin Information Service Limited.

## **DEFENDANTS**

**7.** The Defendants U.S. Department of Justice ("DOJ") and Merrick B. Garland, in his official capacity as Attorney General of the United States, have their headquarters and current employment in Washington, District of Columbia.

**8.** Defendant Shou Zi Chew is a Singaporean citizen frequenting this District in his official role as the CEO of TikTok.

**9.** Defendant ByteDance Ltd. is a Cayman Islands company. It has had offices in the United States and in other countries. ByteDance Ltd. transacts or has transacted business in this District and throughout the United States.

**10.** Defendant TikTok Ltd. is a Cayman Islands company with its principal place of business in Beijing, China. TikTok Ltd. transacts or has transacted business in this District and throughout the United States.

**11.** Defendant ByteDance Inc. is a Delaware corporation with its principal place of business at 250 Bryant Street, Mountain View, California, 94041. ByteDance Inc. transacts or has transacted business in this District and throughout the United States.

**12.** The Defendant TikTok Inc. is a California corporation with its principal place of business at 5800 Bristol Parkway, Suite 100, Culver City, California 90230.

PAGE 5

COMPLAINT (1st amended)

TikTok Inc. transacts or has transacted business in this District and throughout the United States.

13. Defendant TikTok Pte. Ltd. is a Singapore company with its principal place of business at 8 Marina View Level 43 Asia Square Tower 1, Singapore, 018960. TikTok Pte. Ltd. transacts or has transacted business in this District and throughout the United States.

14. Defendants William E. Ford, Phillippe Laffont, and Arthur Dantchik, upon information and belief, are all American executives who preside on the Board of Directors and all three are responsible for establishing controls and governance of all operational and strategic matters at Defendant's ByteDance Ltd. corporation and all of its subsidiaries, which in turn is a wholly-owned conglomerate led by Zhang Yiming who is a Chinese national currently hiding from the PRC authorities in Singapore.

    a. Defendant William E. Ford is the CEO of American company *General Atlantic* with his primary office at Park Avenue Plaza, 55 East 52nd Street, 33rd Floor, New York, NY 10055, USA.

    b. Defendant Phillippe Laffont is the founder of American company *Coatue Management* with his primary office at 9 West 57th Street, 25th Floor, New York, NY 10019, USA.

    c. Defendant Arthur Dantchik is a co-founder of American company *Susquehanna International Group* with his primary office at 401 City Avenue, Bala Cynwyd, PA19004, USA.

According to ByteDance's own corporate website, the Board of its Directors employs these three Defendants who are well-experienced executives-investors that are properly trained in standards of corporate governance in the USA and

globally through their day-jobs in the well-known <u>public</u> *American* companies that they lead or have founded:


(A)     Mr. Wiliam E. Ford (USA, CEO of General Atlantic)

(B)     Mr. Philippe Laffont (USA, CEO of Coatue Management)

(C)     Mr. Arthur Dantchik (USA, CEO of Susquehanna International Group)


<u>And the foreign Directors on ByteDance's Board of Directors are</u>:


(D)     Mr. Neil Shen (Hong Kong SAR PRC, CEO of U.S. venture fund Sequoia Capital in China)

(E)     Mr. Rubo Liang (PRC, CEO of global ByteDance corporation and Chairman of the BoD)

(F)     Mr. Zhang Yiming (PRC, ex-CEO of global ByteDance corporation and Controlling Voting Founder on the BoD)


Plaintiff only sues American executive directors of ByteDance because of the immediate impact to the US national security and the risks that their slacking work or intentional negligence caused to the entire nation and to all American citizens, even those who are not TikTok users, as it is alleged in this Complaint.

## **COMMON ENTERPRISE**

**15.** Defendants that are not representing the government of United States of America (i.e. all Defendants except the DOJ and its current leader), are a series of interconnected companies that operate the TikTok social media platform.

COMPLAINT (1st amended)

Defendant ByteDance Ltd. is the parent governed by the Board of Directors, where Defendants William E. Ford, Phillippe Laffont, and Arthur Dantchik serve as directors representing executive hierarchy for the United States and are responsible for Defendant's ByteDance Ltd. corporate governance and control.

16. Defendant ByteDance Ltd. is the owner of Defendants ByteDance, Inc. and TikTok Ltd, while TikTok Ltd. in turn owns Defendants TikTok LLC and TikTok Pte. Ltd, and TikTok LLC in turn owns Defendant TikTok Inc.

17. Upon information and belief, a group of ByteDance Ltd. and TikTok Inc. executives, including Zhang Yiming, Liang Rubo, Zhao Penyuan, and Zhu Wenjia, direct and control TikTok's core features and development. Since 2019, ByteDance Ltd. and TikTok Inc. have promoted TikTok in the United States, spending hundreds of millions of dollars on advertising, employing U.S.-based staff and executives, and developing and distributing TikTok to run on Apple and Android devices.

18. ByteDance Inc. and TikTok Inc. have responsibilities for developing, providing, and supporting TikTok in the United States.

19. TikTok Pte. Ltd. serves as the U.S. distributor of TikTok through the Apple App Store and Google Play Store. It also provides HR and other services to the American subsidiaries of TikTok Inc. and ByteDance Inc.

20. TikTok Ltd. identifies itself as the developer of TikTok in the Apple App Store, and TikTok Pte. Ltd. identifies itself as the developer of TikTok in the Google Play Store. The tiktok.com domain is registered to TikTok Ltd.

21. Corporate Defendants that are related to ByteDance and TikTok, share the same Board of Directors, executive officers and managers. For example, TikTok Inc.'s chief executive officers between 2020 and the present (Kevin

Mayer, Vanessa Pappas, and Shou Zi Chew), have simultaneously held senior positions at ByteDance Ltd., and ByteDance Ltd.'s chief executive officers (Zhang Yiming and Liang Rubo) have simultaneously served as directors of TikTok Ltd. TikTok Inc.'s Global Chief Security Officer, Roland Cloutier, with whom Plaintiff worked concurrently and who was aware of some risk-identification and cybersecurity control gaps uncovered by Plaintiff, also served as cyber risk and data security support for ByteDance Ltd. ByteDance Inc. and TikTok Pte. Ltd.'s officers and directors have also overlapped with each other, and with officers and directors of TikTok Inc. Defendants intertwine their finances; for example, ByteDance Ltd. provides compensation and benefits to TikTok Inc.'s CEO, and TikTok Inc. employees participate in ByteDance Ltd.'s stock options.

22. Corporate Defendants affiliated with ByteDance and TikTok have one centralized bank account for ByteDance Ltd.'s more than a dozen products, including TikTok. Defendants operate on a "shared services" model in which ByteDance Ltd. provides legal, safety, and privacy resources, including personnel. ByteDance's largest shareholder, Zhang Yiming, signed the 2019 consent order with the United States on behalf of Musical.ly, TikTok Ltd.'s predecessor company and Plaintiff had to review and acknowledge this court order as a condition of accepting his job offer as Risk Manager with ByteDance [see: *United States v. Musical.ly, et al., No. 2:19-cv-01439-ODW-RAO (C.D. Cal. Mar. 27, 2019) (Dkt. No. 10)*].

**NOTE**: On August 2, 2024, the U.S. Department of Justice filed a new related case against TikTok, Case No.: 2:24-cv-06535, to which Plaintiff has provided his testimony to *Chris A. Dunbar* of the Tennessee Attorney General office.

PAGE 9

COMPLAINT (1st amended)

23. Both corporate and individual Defendants associated with ByteDance and TikTok have historically operated as a common enterprise.

24. The true names and capacities of Defendants named herein as Does 1 through 20, whether individual, corporate, associate or otherwise, and the true involvement of Defendants sued herein as Does 1 through 20, are known to Plaintiff from the public records and, therefore Plaintiff sues the said Defendants by such names that Defendants themselves use publicly.

25. Plaintiff is informed and believes and thereon alleges that each of the Defendants designated as a "Doe" is responsible in some manner for the events and happenings referred to herein, and that Plaintiff's injuries and damages as hereinafter set forth were proximately caused by said Defendants. At all relevant times, and in connection with the matters alleged herein, each Defendant acted as an agent, service provider, partner, joint venturer and/or alter ego of each of the other Defendants and acted in the course and scope of such agency, partnership, and relationship and/or in furtherance of such joint venture. Each Defendant acted with the knowledge and consent of each of the other Defendants and/or directed, authorized, affirmed, consented to, ratified, encouraged, approved, adopted, and/or participated in the acts or transactions of the other individual and corporate Defendants.

26. At all relevant times, and in connection with the matters alleged herein, corporate Defendants were largely owned by the same person, founder Zhang Yiming, and constitute a single enterprise with a unity of interest. Recognition of the privilege of separate existence under such circumstances would promote injustice.

///

///

COMPLAINT (1st amended)

## COMMERCE

27. At all times relevant to this Complaint, *'non-US government'* Defendants have maintained a substantial course of trade in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

## THE EXECUTIVE ORDER 14034

28. On June 9, 2021, JOSEPH R. BIDEN JR., the President of the United States of America, issued an <u>Executive Order 14034</u> *"Protecting Americans' Sensitive Data From Foreign Adversaries"* that specifically addressed U.S. government's concerns about Chinese *private* corporation ByteDance (Douyin) and its TikTok product operating in the USA during the ongoing national emergency that was declared on May 15, 2019, by the <u>Executive Order 13873</u> *"Securing the Information and Communications Technology and Services Supply Chain".*

29. In his <u>Executive Order 14034</u>, President Biden established a typical risk management framework in which he assigned responsibility for initial risk identification and threat assessment to the Director of National Intelligence and the vulnerability assessments to the Secretary of Homeland Security, who then jointly reported their risk findings to the Secretary of Commerce to support her in development of the report to the Assistant to the President and National Security Advisor. In her preparation of the report, the Secretary of Commerce was to consult with the Attorney General and other leaders. Furthermore, the Secretary of Commerce was assigned a task for continuous monitoring of risk mitigation activities in consultation with the Secretary of State, the Secretary of Defense, the Attorney General, the Secretary of Health and Human Services, the Secretary of Homeland Security, the Director of National Intelligence, and the heads of other agencies as the Secretary of Commerce deemed appropriate.

**Executive Order 14034, Section 1(d)**: The Secretary of Commerce shall evaluate on a continuing basis transactions involving connected software applications that may pose an undue risk of _sabotage_ or subversion of the design, integrity, manufacturing, production, distribution, installation, operation, or maintenance of information and communications technology or services in the United States; pose an undue risk of catastrophic effects on the security or resiliency of the critical infrastructure or digital economy of the United States; or otherwise pose an unacceptable risk to the national security of the United States or the security and safety of United States persons. Based on the evaluation, the Secretary of Commerce shall take appropriate action in accordance with Executive Order 13873 and its implementing regulations.

30. The U.S. Department of Justice was put in charge of overseeing and supervising the implementation of Executive Order 14034 from the U.S. government's perspective [see: _United States v. Musical.ly, et al., No. 2:19-cv-01439-ODW-RAO (C.D. Cal. Mar. 27, 2019) (Dkt. No. 10) (the 2019 Permanent Injunction)_]. In turn, the Defendants that are associated with ByteDance and TikTok, initiated a so-called Project Texas to answer and satisfy the requirements set by President Biden in his executive order.

31. All Defendants acted together, and Project Texas could not be approved or initiated by collective ByteDance and TikTok defendants _without the pre-approval from the U.S. Department of Justice_ and its leadership who in masses delegated '_former_' DOJ employees as well as members of the Intelligence Community to join ByteDance corporation as its formal new payroll personnel[1] (_Scripps News: "TikTok Has Been Hiring Former CIA, FBI And NSA Officers"_). TikTok also hired Jamal Brown, a former press secretary of

---

[1] "TikTok Has Been Hiring Former CIA, FBI And NSA Officers", by Sasha Ingber, Scripps News, Nov 02, 2022. https://www.scrippsnews.com/science-and-tech/social-media/tiktok-has-been-hiring-former-cia-fbi-and-nsa-officers

PAGE 12

COMPLAINT (1st amended)

President Biden's political campaign, to ensure that all Defendants are in sync when they are addressing the <u>Executive Order 14034</u> through <u>Project Texas</u>.[2]

**32.** It is quite possible that not everyone knew that it was all set up for a failure from the beginning due to the political needs requiring access to the most popular media channel as well as the corporate schedule for IPO and cashing out on previous investments made by the companies that US-based Board of Directors oversaw, but the ByteDance own internal *Control and Governance* risk management team consisting of just four professionals – one former US Army Intelligence Officer, one specialist in ByteDance internal systems, one data scientist, and Plaintiff himself – knew better than anyone else about the *true* data flows and system mapping in ByteDance/TikTok and the *real* work done (or not) by third parties.

**33.** In additions, the two well-known American public companies with closest ties to the U.S. government, <u>Booz Allen Hamilton</u> and <u>Oracle</u>, were tagged as '*trusted technology partners*' with open invitation to collaborate on the implementation of requirements set in the <u>Executive Order 14034</u> and <u>Project Texas</u>

**NOTE**: Oracle previously bid on TikTok's acquisition just several months earlier, per President Trump's <u>Executive Order 13942</u>.

///

---

[2] "TikTok hires former Biden campaign press secretary…", by Danielle Wallace FOX Business, Nov 6, 2022. https://www.foxbusiness.com/politics/tiktok-hires-former-biden-campaign-press-secretary-pentagon-spokesman-top-gig-chinese-owned-video-app

PAGE 13

---

COMPLAINT (1st amended)

**PLAINTIFF'S ENGAGEMENT AND RISK MANAGEMENT**

**34.** On April 13, 2021, Plaintiff applied for employment with Defendant ByteDance Ltd in the role of Risk Manager. At the time of his employment application, Plaintiff was working for the National Bank of Pakistan (USA, New York) as the Senior Vice President and Head of Enterprise Risk Management for Americas, with the annual base salary of $209,000 USD.

**35.** On July 16, 2021, Plaintiff had a video interview with the ByteDance's Sr Director of Business Operations, which was held in the *Toutiao* cloud environment of Defendant's ByteDance internal platform called **Lark** (*for reference, see recent filing by the DOJ on July 26, 2024, in the related case #24-1113*).



PAGE 14

COMPLAINT (1st amended)

**36.** Mark Yeh offered Plaintiff to work on implementation of the <u>Executive Order 14034</u> and suggested that Plaintiff's role as Risk Manager for TikTok will commensurate with his career experience and aspirations as he will help TikTok to secure U.S. government's (CFIUS) approval for continuous operations and greenlight the company for its planned IPO, which in turn would materialize for Plaintiff into a lucrative stock options package and the promised promotion to the position of Chief Risk Officer at ByteDance.

**37.** At the time of this job interview, Plaintiff was well aware of the previous complications that TikTok had with the U.S. government when President Trump tried to ban the platform in the USA, but nevertheless Plaintiff was interested to take on this new career challenge because of the tools that <u>Executive Order 14034</u> provided and the confidence that he gained through the extensive experience by working with C-suite corporate executives globally and with U.S. regulators. Plaintiff was confident in his skills and knowledge because of his past multiple successful examples of collaboration with the U.S. government when Plaintiff worked as Risk Manager in major banking institutions, such as Citibank, JP Morgan Chase, Bank of Tokyo, and also his contracts with Microsoft, Experian and other heavily regulated big firms.

**38.** Plaintiff was made aware by Mark Yeh about the oversight and overall project managing role that the U. S. Department of Justice was maintaining in the implementation of <u>Executive Order 14034</u> at TikTok as a result of the consent order that was signed by the ultimate owner of Defendant ByteDance Ltd., Mr. Zhang Yiming, in 2019 [see: *United States v. Musical.ly, et al., No. 2:19-cv-01439-ODW-RAO (C.D. Cal. Mar. 27, 2019) (Dkt. No. 10) (the 2019 Permanent Injunction)*].

PAGE 15

COMPLAINT (1st amended)

**39.** On August 5, 2021, Plaintiff received and accepted the job offer to work at ByteDance and on August 30, 2021, Plaintiff started his new job as *Risk Manager, Head of Control and Governance (Trust and Safety)*, in charge of risk management and oversight for <u>Project Texas</u> that was marketed internally and externally by the Defendants as a solution to satisfy the requirements of <u>Executive Order 14034</u>.

**40.** On or before August 9, 2021, pursuant to Section 2(b) of the <u>Executive Order 14034</u>, the Director of National Intelligence, Avril Haines, had to provide her threat assessments and the Secretary of Homeland Security was to provide his vulnerability assessments of TikTok operations in the USA in a statement to the Secretary of Commerce (hereinafter '60-days report'), who in turn was instructed by President Biden to support the development of the subsequent reporting to the Assistant to the President and National Security Advisor, Jake Sullivan, with the preliminary recommendations due by October 7, 2021 (hereinafter '120-days report').

**NOTE**: Plaintiff started his work at TikTok /ByteDance several weeks *after* the threat and vulnerability assessments that the ODNI and DHS formally reported to the Secretary of Commerce and President's National Security Advisor.

**41.** Immediately on the very first week of Plaintiff's employment with ByteDance, he received two very alarming reports from his co-workers about the true state of implementation for <u>Executive Order 14034</u> and the so-called <u>Project Texas</u>.

**42.** Specifically, Plaintiff received a warning about company-sponsored ***digital*** <u>surveillance</u> that was authorized by Mark Yeh who told Plaintiff during their first meeting that since during the COVID pandemic everyone was working remote, ByteDance corporation would always want to know its employees

PAGE 16

physical location and Mark Yeh specifically emphasized that he will need to know where the Plaintiff was located physically, and this is why he demanded that Plaintiff had never to turn off his work laptop for the IT-support team to be able to track Plaintiff's IP address. Plaintiff had to apply for a special approval from ByteDance Legal Department for being able to work from Mexico, La Ventana, Baja Sur California, and eventually received a corporate approval from the ByteDance legal counsel to work remotely all over the world, and specifically in Mexico, at least for 1 year.

43. On the fourth day of his employment as *Risk Manager, Head of Control and Governance (Trust and Safety)* at ByteDance, Plaintiff received a *risk alert* from his subordinate, Hayden Hyun Yong Lee ("Hayden") a former U.S. Army Intelligence Officer.

44. During their very first meeting, Hayden identified severe material risk issues and control gaps in Project Texas that, according to Hayden, were omitted by ODNI and DHS in their initial threat and vulnerability assessments assigned by President Biden in the Executive Order 14034, Sec 2*: Implementation*.

> *Sec 2(b).* Not later than 120 days after the date of this order, the Secretary of Commerce, in consultation with the Secretary of State, the Secretary of Defense, the Attorney General, the Secretary of Health and Human Services, the Secretary of Homeland Security, the Director of National Intelligence, and the heads of other agencies as the Secretary of Commerce deems appropriate, shall provide a report to the Assistant to the President and National Security Advisor with recommendations to protect against harm from the unrestricted sale of, transfer of, or access to United States persons' sensitive data, including personally identifiable information, personal health information, and genetic information, and harm from access to large data repositories by persons owned or controlled by, or subject to the jurisdiction or direction of, a foreign adversary. **Not later than 60 days after the date of this order, the Director of National Intelligence shall**

COMPLAINT (1st amended)

**provide threat assessments, and the Secretary of Homeland Security shall provide vulnerability assessments, to the Secretary of Commerce to support development of the report required by this subsection.**

**45.** Hayden Lee explicitly alerted Plaintiff that <u>Project Texas</u> was fake and that the Defendants were setting Plaintiff "*up for a failure*". Plaintiff believed Hayden when he was stating that <u>Project Texas</u> was a hoax and that "*<u>everything was seen in China</u>*" and that Plaintiff could have been "set up for a failure" by the TikTok executives in USA because Hayden had a very respectful reputation from his only other previous employment with the US Army where he served honorably and was a distinguished intelligence officer for more than a dozen years.

**46.** During that same first week of Plaintiff's employment, Mark Yeh advised him that Plaintiff will not only be overseeing <u>Project Texas</u> for all Risk Management purposes, but that also at the end of the engagement **Plaintiff was explicitly required to sign-off on <u>Project Texas</u>**. Mark Yeh also instructed Plaintiff to work daily with external auditors from <u>Booz Allen Hamilton</u> who supposedly were performing an external audit to assess ByteDance's readiness for signing a contract with CFIUS in response to the US President's <u>Executive Order 14034</u> and in preparation for the planned IPO in 2022-2023.

**47.** The security report from Hayden alerted Plaintiff because it may have also meant a potential violation of the *<u>Public Law 116–222, "Holding Foreign Companies Accountable Act"</u>*, which is an amendment to the *<u>Section 104 of the Sarbanes-Oxley Act of 2002 (15 U.S.C. 7214)</u>* because even though ByteDance and TikTok are not yet publicly traded companies, however their stocks are already widely **listed with SEC** in portfolios of major American funds, trusts, and insurance annuity' holdings such as ***T. Rowe Price, Black Rock, Fidelity***.

PAGE 18

**48.** Plaintiff became concerned about the supposed 'set-up' even more when Hayden revealed that Plaintiff's predecessor in same position simply resolved to quitting his position altogether just like TikTok's previous CEO Kevin Mayer quit his job almost momentarily earlier because they were also warned of being '*set-up for a failure*'. Hence, while being completely shocked with such developments during his very 1st week at a job, Plaintiff decided to consult with his friend (Witness #1) through the in-person conversations in La Ventana, Baja Sur California, Mexico, where they met over the weekend of September 7-8, 2021.

**49.** Plaintiff shared with her that he had to pay serious attention to the warning from his subordinate and acknowledged that this intelligence merited to be examined for a potential material risk identification and assessment in-scope of the upcoming '120-days report' for President Biden's <u>Executive Order 14034</u>, and therefore Plaintiff was thinking of sharing this new important alert with the dedicated active FBI personnel by calling to their external phone number, rather than looking for and FBI liaison at TikTok/ByteDance internally in *Lark*.

**50.** Since this was Plaintiff's very 1st week at a new job, he did not have any *Option B* to make income elsewhere, especially after he just left a *$209K* job.

**51.** Plaintiff assessed hi options carefully and decided to stay and do the work.

**52.** Upon a personal advice and support that came from Witness #1s well as taking into consideration the historic wrongdoings of some of the Defendants, Plaintiff *naively* contacted the Department of Justice by calling the FBI on or around September 10-11, 2021, using his American personal cellphone number 949-350-6304, while being physically present in Mexico.

**53.** During this initial call, Plaintiff properly identified himself and shared short details of his new employment with ByteDance and how he can be reached.

PAGE 19

54. From that day, Plaintiff began methodically itemizing all his work at TikTok.

55. Several weeks later, Plaintiff received a phone call on his American cellphone number 949-350-6304 and had a conversation with someone who presented himself as a Federal Student Loan Officer who suggested that Plaintiff must immediately appear in their Los Angeles field office if he "*wanted to reduce his student loan payments*", to what Plaintiff politely refused because he felt more safe in La Ventana rather than in Los Angeles and instead invited the so-called Federal Student Loan Officer to rather visit him in Baja Sur California.

56. By the end of that same month and while working remotely from a little kite-surfing village called *La Ventana in Baja Sur California of Mexico* (remote work was enforced by TikTok Inc. as a response to COVID restrictions, but also in part to implement internal fraud with <u>Project Texas</u>), Plaintiff realized that he is under 24-hours digital and physical surveillance that was established by both TikTok, as acknowledged by Mark Yeh in a conversation with Plaintiff, and also by a dedicated group of seemingly ***active*** FBI officers in Mexico.

57. In the mid-October of 2021 Plaintiff received a strange phone call to his Mexican cellphone number +52.612.232.3635 from a person who introduced himself in English, but with an accent, as if he was a Mexican Immigration Police Officer who wanted to meet with Plaintiff later that same evening *behind the hotel in the deserted place* in order to introduce Plaintiff to some '*other Officer from special <u>investigations</u> police*', to what Plaintiff replied negatively.

58. Meanwhile, while doing his job at TikTok to oversee <u>Project Texas</u> and implementation of the <u>Executive Order 14034</u> during the months of September and October in 2021, Plaintiff's multiple requests to <u>Booz Allen Hamilton</u>

auditing team for sharing their audit artifacts and control evidence were cross-referred by them to Mr. Mark Yeh for his approval, which he initially ignored, and then subsequentially also cross-referred Plaintiff to the Head of Trust and Safety in USA, Mr. Eric Han.

59. After Plaintiff's multiple attempts to receive access to documentation, it appeared that <u>Booz Allen Hamilton</u> auditors' statements about the state of controls may have been based solely on anecdotal basis and were not verified.

60. Mark Yeh continued ignoring Plaintiff's requests for access to review documented evidence and repeatedly referred Plaintiff for all 'data' questions to the same Head of Trust and Safety of TikTok in USA, Mr. Eric Han who at the time was reporting directly to TikTok's Chief Operating Officer, Vanessa Pappas.

**NOTE**: Plaintiff was a pre-approver for all the 'data-access' matters in the workflows for the COO Vanessa Pappas, so adding Eric Han in-between was illogical and appeared as an intentional gatekeeping obstacle.

61. It must be also noted that TikTok's COO, Vanessa Pappas, was based out of the USA, and reported directly to TikTok's CEO, Mr. Shou Zi Chew, who in turn was based out of Singapore, but has been frequently spending time in Washington DC for lobbying purposes. Mr. Shou Zi Chew was appointed as CEO of TikTok in 2021 through the DST Investment firm, owned by a Russian-Israeli billionaire Yury Milner, an early ByteDance investor with ties to Vladimir Putin and Russian 'FSB'.

62. By the 3rd week of October 2021, Plaintiff became keenly aware that he was being surveilled by some unknown, unfriendly and intrusive team of

individuals whom Plaintiff started recognizing in different places where he travelled throughout Mexico, and who were initiating inquisitive conversations but never identified as FBI or any other U.S. government agency, so Plaintiff decided to return back to Los Angeles immediately.

63. The first encounter when Plaintiff realized that Plaintiff was being followed physically occurred on October 21, 2021, when Plaintiff left La Ventana and stopped in Los Cabos "Tropical Oasis" hotel for several nights to meet with his friend, Mr. Arman Beirami, who is an attorney with a law firm '***O'Melveny & Myers LLP'*** that, coincidentally, has been and is now an active attorney of record for ByteDance and TikTok in several litigations.

64. The Los Cabos "Tropical Oasis" property is a small and secluded rental house with only 4 guest rooms. On a 2nd day of his stay, Plaintiff left the house with his dog, but then decided to return a couple minutes later because Plaintiff forgot his sunglasses and this was when Plaintiff noticed someone trying to get inside of the house; that person noticed Plaintiff too and started walking away, but Plaintiff caught a glance of a familiar face of the same person whom Plaintiff saw just several days ago in La Ventana supposedly working as a *new* bar manager at Plaintiff's favorite beach-bar in La Ventana. The likelihood of that gentleman who supposedly just recently started working in one of La Ventana's beach bars just a couple days ago but now suddenly appearing in a different location dozens of miles away in a same remote residential place and being caught attempting to enter the same house where Plaintiff was staying for several nights – the mere probability of such event was *de minimis*, and as a Risk Manager with more than 15 years of experience Plaintiff noticed that pattern and remembered it, but did not confront that gentleman when he noticed Plaintiff and retreated from the house where he was not even staying.

PAGE 22

COMPLAINT (1st amended)

**65.** Same day a nice-looking lady with an FBI-branded hat walked by the Plaintiff's house and at least half-a-dozen of identical SUV cars (*Suburban*) with North Dakota plates blocked the entire parking lot of a yoga-retreat studio right next to the Plaintiff's location. Also, a strange young couple, pretending to be of British origin, attempted to start an inquisitive conversation with Plaintiff at the swimming pool of the hotel. Plaintiff calmly took notice, waited for two more days, but decided to leave because none of these people attempted to properly identify themselves, yet caused a lot of pressure on Plaintiff. Plaintiff thought that if it was the true FBI whom he himself invited for a conversation to Mexico, they would have honestly identified themselves and would attempt to cooperate and collaborate with Plaintiff to help his risk management team to work on <u>Project Texas</u> in the implementation of the <u>Executive Order 14034</u>.

**66.** Plaintiff was naïve because he did not yet realize that ODNI and DHS already issued their premature approval report to the President, in which they missed such an obvious thing as the direct linkage between *TikTok*, *Lark* and *Toutiao*.

**67.** Also, during the third week of October in 2021, while Plaintiff was travelling slowly from Mexican California to the American side, Mark Yeh introduced Plaintiff to the 'Policy Management System (PMS)' team that consisted mostly of the managers located out of mainland-China and worked on implementation of compliance with <u>Project Texas</u>.

**68.** During the very first team meeting on October 20, 2021, and then again on October 26, 2021, the 'PMS team' presented a document which they requested from Plaintiff to sign-off as Risk Manager no later than November 10, 2021, even though that document did not provide any documentation of risk identification, no evidence of controls' substantiation or any test results. They

COMPLAINT (1st amended)

also demanded not to share this document with anyone because of the high confidentiality 'permissions isolation matrix plan' of the <u>Project Texas</u>.

69. From that moment, Mark Yeh began 'grooming' Plaintiff to ensure that Plaintiff would sign-off on this and other documents pertaining to <u>Project Texas</u> without proper validation.

70. The target date in November of 2021 that was suggested by the so-called PMS team was within the timeline established by the <u>Executive Order #14034</u> where in *Section 2: Implementation*, President Biden requested the following to occur no later than December 4, 2021:

**"(c) Not later than 180 days after the date of this order, the Secretary of Commerce, in consultation with the Secretary of State, the Secretary of Defense, the Attorney General, the Secretary of Homeland Security, the Director of the Office of Management and Budget, and the heads of other agencies as the Secretary of Commerce deems appropriate, shall provide a report to the Assistant to the President and National Security Advisor recommending additional executive and legislative actions to address the risk associated with connected software applications that are designed, developed, manufactured, or supplied by persons owned or controlled by, or subject to the jurisdiction or direction of, a foreign adversary. "**

71. Apparently, in September of 2021, Defendants already formally reported to U.S. Government through CFIUS that auditors from <u>Booz Allen Hamilton</u> have validated the systems' matrix and assured data flows for <u>Project Texas</u>. This, in turn, catalyzed the submission of the reports by the U.S. Departments and agencies involved in implementation of the <u>Executive Order #14034</u> to satisfy the requirements of Section 2(b):

PAGE 24

**"(b) <u>Not later than 120 days after the date of this order</u>, the Secretary of Commerce, in consultation with the Secretary of State, the Secretary of Defense, the Attorney General, the Secretary of Health and Human Services, the Secretary of Homeland Security, the Director of National Intelligence, and the heads of other agencies as the Secretary of Commerce deems appropriate, shall provide a report to the Assistant to the President and National Security Advisor with recommendations to protect against harm from the unrestricted sale of, transfer of, or access to United States persons' sensitive data, including personally identifiable information, personal health information, and genetic information, and harm from access to large data repositories by persons owned or controlled by, or subject to the jurisdiction or direction of, a foreign adversary. <u>Not later than 60 days after the date of this order</u>, the Director of National Intelligence shall provide threat assessments, and the Secretary of Homeland Security shall provide vulnerability assessments, to the Secretary of Commerce to support development of the report required by this subsection."**

72. The only thing missing for the completion of "<u>Project Texas</u>" on paper was an 'internal' approval from a TikTok own Risk Manager, i.e. the Plaintiff.

73. After October 26, 2021, the following meetings with Mark Yeh involved his consistent reminders to sign-off on <u>Project Texas</u> by January of 2022.

74. Meanwhile, ByteDance and TikTok executives did not provide any evidence to validate their often-contradicting testimonies which Plaintiff noted very carefully. Nor did Plaintiff find any evidence during the risk assessment about Oracle's supposed involvement in <u>Project Texas</u> to the degree as it was marketed by ByteDance and TikTok executives, both externally and internally.

75. In late October of 2021, when Plaintiff returned to Los Angeles for the in-person team meeting with Trust and Safety leadership team led by Eric Han (Head of Trust and Safety in USA) and Vanessa Pappas (COO of TikTok) who were both present, one of the team managers in Trust Safety group, someone

*Aigerim Dyussenova*, openly acknowledged that everyone working at TikTok was well aware about  Project Texas *not being capable to solve the problems of data security* to satisfy the Executive Order 14034; Plaintiff took a note of that statement because it matched an earlier risk warning from Hayden Lee.

76. All of these facts and observations, combined with the memorable warning from Hayden Lee, brought up a strong suspicion of the well-designed Internal Fraud in development where the 1st Line of Defense (Operations) was performing a theatric act for the 2nd Line of Defense (Risk Management) which was artificially subverted into a hierarchical loop to *improperly* organizationally report into the 1st LoD *instead of overseeing it*, and the 3rd Line of Defense (Internal Audit was led by Chris Lepitak, and the GSO was led by Roland Cloutier) all were pretending as if that was normal and their executives all played along.

77. The external auditors from Booz Allen Hamilton were only playing a role of *supposed independent* verifiers but in reality, were manually orchestrated, coerced and manipulated by their former longstanding Director from Booz Allen Hamilton who now worked for TikTok in a role of Head of the Global Cyber and Data Defense, *Mr. Will Farrell*.

78. In order to build up and grow Plaintiff's risk management team that was called *Controls and Governance or 'Team ConGo' as Mark Yeh labeled it*, someone named George Hunter was assigned as a dedicated resource to address Plaintiff's recruiting needs.

79. Initially, Mark Yeh suggested that Plaintiff should hire Mark's own nephew, to which suggestion Plaintiff replied with skepticism, so between October and November of 2021, Plaintiff reviewed almost 100 resumes submitted by George Hunter and all of them with only 1 exception have involved human

COMPLAINT (1st amended)

resources that required employment visa sponsorship from TikTok to work legally in the United States of America.

80. George Hunter and Mark Yeh explained such anomaly by stating that the company was striving to provide equal opportunities to all candidates and that foreign workers deserved to get a chance to work in the USA, while in their opinion, after the COVID pandemic it was not possible to find any local Risk Analysts on the jobs' market in California who were US citizens or holding the 'Green Card' with a work permit.

81. Being himself an immigrant with the 20+ years' experience of legally working in the USA, Plaintiff certainly agreed with the notion of giving a fair merit-based opportunity to everyone, but the mere ratio of the candidate pool requiring visa-sponsorship with absolutely no USC or Green Card holders was suggesting an intentional manipulation.

82. When Plaintiff was forced to interview a candidate with only an Associate's degree on his resume but refused to advance him, Mark Yeh and George Hunter immediately invited a senior officer from Human Resources to follow-up with Plaintiff trying to influence his decision, so even before that follow-up meeting happened, Plaintiff backed off and invited the candidate to the next round of interviews in order not to cause a premature confrontation with the suspects of the <u>Project Texas</u> hoax and fraud.

83. In the final months of the year 2021, Plaintiff became more and more convinced that <u>Project Texas</u> was indeed a fake theatric performance because of the findings that came out of more than three dozen personal interviews with various individuals, starting from junior and up to the department heads, who worked for TikTok in USA and/or for ByteDance in China and worldwide.

84. These discussions were meticulously notated and documented as Plaintiff was trying to find any evidence of the work that the designated Trusted Technology Provider, <u>Oracle</u>, was supposedly performing for the company according to the statements made **publicly by TikTok executives COO Vanessa Pappas, CEO Shou Zi Chew, and the Head of Public Policy Michael Beckerman** to satisfy with the pretentious and fraudulent <u>Project Texas</u> the US national security requirements requested by the <u>Executive Order #14034</u>, while the true goal of <u>Project Texas</u> and  the of TikTok executives was simply to speed-force through the CFIUS approval and to reach the IPO stage as quickly as possible, while omitting proper due diligence process and faking the necessary audits.

85. During the international travel in early November of 2021 to the UK, Greece and UAE, Plaintiff was shocked to realize that he was being closely followed by teams of some seemingly semi-professional individuals, so Plaintiff became concerned for his safety and decided to send two letters by post mail from Athens to one of the attorneys whom he personally knew in Los Angeles *(Mr. Tyler Clark, California Bar License #258309).*

86. In these handwritten letters, Plaintiff described concerns for his personal safety and suggested that this uninvited physical surveillance in foreign countries may be connected to the work that he was doing for TikTok.

87. In late November of 2021, upon return to the USA, Plaintiff again recognized physical surveillance after his persona but already near his home in USA and urgently called the FBI again to alert about <u>Project Texas</u> hoax and its risks to the U.S. national security, as well as to consult about his own security.

88. Around that same time, Plaintiff met in Los Angeles with his former manager from the Bank of Tokyo Mitsubishi-Union Bank, *Matt Ahart*, who was also holding an active attorney license in California. During that conversation, Mr.

PAGE 28

COMPLAINT (1st amended)

Ahart assured Plaintiff of their attorney-client privilege, so Plaintiff openly shared all his concerns with the person whom he trusted since 2011.

89. Almost immediately after the 2nd call to FBI, Plaintiff's co-worker at ByteDance (Witness #2) shared that senior TikTok people from the so-called 'old guard' somehow learned about Plaintiff's efforts to contact the U.S. Department of Justice, so they did not trust Plaintiff and considered him a *spy*.

90. Apparently, the '*former*' FBI, DHS, CIA, NSA and even Secret Service personnel who was now on payroll with ByteDance/TikTok were sharing comments and anecdotes about Plaintiff's work and his unfruitful attempts with reaching out to the FBI, as well as details from his personal life, in ByteDance's internal messenger called **_Lark_**[3], which is monitored 24/7 by the internal ByteDance security personnel in People's Republic of China.

**NOTE**: For reference, see recent filing by the Defendants U.S. Department of Justice and MERRICK B. GARLAND in his official capacity as Attorney General of the United States, on July 26, 2024, in the related case #24-1113. Below is one of the examples from the media reports in NPR, AP, NBC, etc.:

> **"TikTok employees used _Lark_ to send sensitive data about U.S. users, information that has wound up being stored on Chinese servers and accessible to ByteDance employees in China, federal officials said."**

91. Meanwhile, the physical surveillance after Plaintiff and his movements in Los Angeles metropolitan area have intensified and Plaintiff started suspecting that

---

[3] By HALELUYA HADERO Associated Press and ERIC TUCKER Associated Press July 27, 2024, 1:24 PM https://www.npr.org/2024/07/27/g-s1-13865/justice-dept-claims-tiktok-collected-views-on-issues-like-abortion-and-gun-control

COMPLAINT (1st amended)

the '*law enforcement colleagues'* were also quite intentionally sabotaging Plaintiff's risk management to downplay and conceal the inconvenient truthful risk identification and assessment that did not match their '*60-120-180 days reporting'* which they rushed to submit to the Assistant to the President and National Security Advisor who was responsible to update President Biden on next steps for <u>Executive Order 14034</u> no later than December 4, 2021.

92. During December 2021 and in January of 2022, Plaintiff gathered numerous artifacts evidencing Defendants' wrongdoings and tried to escalate internally his concerns about the <u>Project Texas</u> fraud. In December of 2021, Plaintiff decided again to share his concerns about the <u>Project Texas</u> fraud with the ByteDance internal Legal department and initiated a contact with *Stephanie Mendoza*, one of the in-house attorneys based out of Los Angeles, whom Plaintiff has met personally earlier in TikTok's Los Angeles Headquarters.

93. During the last weeks of December in 2021 and in the first week of January of 2022, Plaintiff encountered several obvious instances when someone was following him when Plaintiff was walking a dog near the Koreatown Versailles apartment complex in Los Angeles where he lived at the time, and also in early January of 2022 during the walk with another boxer-dog owner when they were closely followed in the mini-park on the intersection of Willshire Boulevard and S. Oxford Avenue in Koreatown by at least 3 different '*closely observing'* individuals.

94. It is essential to also note that starting September 2021 and all the way to the escalation in February of 2022, Plaintiff was in continuous communication with the 3rd Line of Defense and its *Head of Non-China Internal Audit, Mr. Chris Lepitak*, that was reporting through to the China-based executive Song Ye, who in turn reports directly to ByteDance CEO Rubo Liang.

PAGE 30

COMPLAINT (1st amended)

**95.** On January 14, 2022, Mr. Lepitak initiated and organized an in-person meeting with Plaintiff in a restaurant 'Sol' in Playa Vista neighborhood located at 12775 Millennium Dr, Unit 160, Los Angeles, CA 90094.

**96.** During this 'dinner' meeting, Plaintiff shared his '*risk management findings*' and concerns over company's integrity with the Head of Internal Audit. Mr. Lepitak seemed to be in agreement with Plaintiff's position that the company must honestly identify the issues and design corrective action plans with specific target dates and identify owners for risks and their solutions. Mr. Lepitak even suggested that Plaintiff should initiate 'Ethics' complaint, according to the ByteDance internal Code of Conduct, and Plaintiff assured him that he was always ready to do just that.

**97.** Plaintiff's understanding during this in-person meeting was that Mr. Chris Lepitak, the Head of Internal Audit in ByteDance (3rd Line of Defense), came there to discuss risk management on behalf of ByteDance's Board of Directors and TikTok's executive management, so Plaintiff told him that once TikTok executives were ready to honestly identify the risks which him and the Plaintiff were both already well aware of, and once **Vanessa Pappas, Shou Zi Chew, Michael Beckerman** would agree to start truly working on their mitigation, only then we would be able to negotiate in good faith with the CFIUS and eventually get a 'green light' for the IPO.

**98.** Plaintiff told Mr. Lepitak that at that point his 'initial' alignment into Mark Yeh's organization in the 1st Line of Defense must finish momentarily because it was a clear Conflict of Interest between the 1st Line of Defense (Operations) and the 2nd Line of Defense (Risk Management) and that Plaintiff suspected Mark Yeh and Eric Han of Internal Fraud. Hence, Plaintiff needed to convert as soon as possible to take over the responsibilities as the Chief Risk Officer as

COMPLAINT (1st amended)

it was discussed during the employment interviews when Plaintiff agreed to work for TikTok/ByteDance.

99. In response, the Head of Internal Audit (3rd Line of Defense), told Plaintiff that it was the *Chief of Staff for TikTok's COO, Nicole Lacopetti*, who was pressuring him and other senior managers into complicity for an aggressive push towards the IPO without proper risk management framework in place and fabricated statements of control and governance. In the end of the 'dinner' meeting, Chris Lepitak asked Plaintiff to wait till August of 2022 when the contract with CFIUS was planned for signing and the approval between TikTok and US government would give a green light to the IPO and Plaintiff's transition into a role of Chief Risk Officer as 'quid pro quo' could become possible.

100. Plaintiff could not promise to pretend that he did not know about the risk issues in exchange for getting the CRO title in August of 2022, especially that Mark Yeh was already pressuring him to sign off on the "Project Texas".

101. Right before speaking with the Head of Internal Audit, in early January of 2022, Plaintiff finally received a referral from the TikTok legal counsel whom he approached earlier in December of 2021, the above-mentioned attorney Stephanie Mendoza, who referred in turn referred Plaintiff to speak with another attorney, *Sima Ajdari*, the Director of Legal Affairs reporting to Erich Andersen, the Head of Corporate Affairs and General Counsel of ByteDance.

102. But, prior to having this important conversation with the Legal Department, Plaintiff had to take a 1-week time off from work at the request from Mark Yeh who suggested that Plaintiff could not carry over the PTO hours that were accumulated in 2021, so he took a 4-days' vacation in Turks and Caicos, where

COMPLAINT (1st amended)

Plaintiff was repeatedly greeted by attractive women who had extremely keen interests in everything about TikTok and its impact to the US national security.

**103.** Upon Plaintiff's return to USA, he found that his apartment in Los Angeles was illegally accessed by someone during m his absence, so Plaintiff decided that this must be reported to his employer because of the highly confidential materials that were present in the apartment.

**104.** Plaintiff suspected this breaking-in was directly related to his employment with ByteDance and the work that he was doing to expose the Internal Fraud surrounding "Project Texas", so Plaintiff decided to report this incident in ByteDance and TikTok.

**105.** On January 19, 2022, Plaintiff was approached by his co-worker *Jeanie Cheng*, a team lead working for *Ran Li* (Eric Han's trusted lieutenant), who often worked from the same house with Mark Yeh (potentially Jeanie and Mark were somehow related), and she asked Plaintiff to approve that all American users' accounts in TikTok shall from now on be moderated by one particular third party (BPO) located out of Philippines. That was the opposite of what Project Texas and TikTok executives were declaring in violation of the laws of USA and was a definition of 'crossing the line' because it was in direct violation of the Executive Order 14034. Plaintiff refused to break the laws and decided to confront the suspects.

**106.** On January 20, 2022, Plaintiff had a detailed video-conversation with Mark Yeh, which Plaintiff asked him to record for the history, and during this 1-hour long meeting Plaintiff confronted him with some of the facts and findings from the risk assessment. Plaintiff explicitly told Mark Yeh that he was refusing to sign off on any unverified work pertaining to Project Texas.

**107.**  Same day, Mark Yeh attempted to write Plaintiff off for the supposedly inappropriate communications with ByteDance Legal Department, specifically with *Stephanie Mendoza*.

**108.**  In response, Plaintiff told Mark Yeh that he was planning to meet with the corporate legal counsel, Sima Ajdari.

**109.**  During the conversation with Sima Ajdari, Plaintiff advised her that he suspected illegal surveillance starting at least from October 2021 and after the break-in to his Los Angeles apartment Plaintiff was concerned for his life and security of his family in California.

**110.**  After that, Sima Ajdari arranged urgent follow-up meetings with TikTok's Head of Physical Security and the Head of Counterintelligence, both being former US Government Officers. In doing so, Plaintiff filed a formal report with TikTok/ByteDance internal Legal, HR, Audit, Counterintelligence, Physical Security and Operations departments.

**111.**  During the conversation with the Head of ByteDance Counterintelligence (Witness #3), Plaintiff suggested that people responsible for the physical surveillance and intrusion into his privacy could be working either for ByteDance itself or for the U.S. Department of Justice, or it could be the scenario when both groups were performing illegal and wrongful acts simultaneously and in parallel, but they could have acted either independently from each other or potentially in a coordinated manner (given the sharing of knowledge about Plaintiff's efforts to communicate with the DOJ directly), but both with the malicious intention to harm Plaintiff and to deter him from doing his work on Project Texas honestly.

**112.**  The Head of TikTok's Counterintelligence and the delegate from Physical Security team both advised that they believed it could be the FBI itself who

was surveilling the Plaintiff, so they suggested that Plaintiff needs to contact the FBI. *The circle closed again.*

**113.** Essentially, the US government was always and is quite well aware about Plaintiff work at ByteDance and TikTok's theatric mingling with <u>Booz Allen Hamilton</u> auditors, the hoax of <u>Project Texas</u> and the deviating public misinformation about <u>Oracle</u>'s supposed role in TikTok cybersecurity.

**114.** Plaintiff in his official role as TikTok/ByteDance Risk Manager and the Head of Control and Governance team at Trust and Safety had formally reported to the US Department of Justice that there is an unaccounted risk which the federal agencies missed in their reporting to the President Biden and his <u>Executive Order 14034</u>.

**115.** Neither DOJ and its leader, defendant *Merrick B Garland*, nor TikTok leaders Pappas, Shou, Beckerman wanted to know. They were rushing to a new elections cycle and IPO. Plaintiff's work was on their way. China was labeled guilty no matter was the truth is, by default, just because it is always very convenient for political and economic reasons. Power hunger and fear for own job security after the '60-days' rushed report that omitted material risks, not to mention political repercussions for the messed up party-appointed unelected Washington DC bureaucrats, have absolutely blinded the DOJ and its leaders so they eagerly compromised US national security to cover their own backs, while the corporate TikTok leaders honestly and without any hesitation were doing what any normal corporation in America must do – they were following the money and rushed to an IPO because they made a deal with the DOJ in 2019 who promised to facilitate TikTok's ascendence to be the US public market's next 'Facebook' once the IPO happens, provided that TikTok closely follows instructions from the DOJ. *The circle closed again.*

PAGE 35

116. But, in mid-January of 2022 and immediately after Plaintiff's return from the short vacation, he was approached by two separate individuals from the 1st Line of Defense, i.e. TikTok Operations, who reported that some of ByteDance's preferred vendors and third parties, such is *Vaco* in USA and others located globally like *Accenture*, etc., did not go through any risk assessments during the procurement process and obtained their contracts with TikTok simply because they personally knew the Sr. Director of Operations at TikTok, Mark Yeh, to whom Plaintiff was still temporarily reporting.

117. In scope of his work as Risk Manager, Plaintiff was also overseeing the third party risk management practices and managing contractual relations and compliance with SLAs for all vendors and business process outsourcing (BPO) that provided services to ByteDance and specifically for TikTok globally, so when Plaintiff received internal warnings that several third-party vendors in USA and in Philippines used public unprotected networks to login and work in ByteDance systems without any cybersecurity in place and did not establish proper cybersecurity protocols (such as VPN, etc.) to protect private information of our clients in USA, Plaintiff raised an immediate alarm to ByteDance GSO and warned Eric Han and Mark Yeh of the high impact risks.

118. The tests that Plaintiff performed together with the Global Security Organization (GSO) between January 28th and 30th in 2022 were video-recorded and can be presented to the Court as material evidence because they conclusively proved and evidenced a complete and total intentional negligence and lack of any cybersecurity controls whatsoever with a San-Francisco-based vendor *Vaco*, while another suspected and reported violator 'co-incidentally' was also located out of Philippines and did not have password-protection for their WLAN and simply used public open internet.

**119.** On January 25, 2022, through collaborative and willful joint effort with
ByteDance engineers from mainland China, Plaintiff obtained a verified
artifact with an extract of the software code showing the existing connectivity
capability between the TikTok product in USA and the *Toutiao* artificial
intelligence (AI) news generator platform in China (hereinafter '*Toutiao
Code*'), which in turn evidenced the need to reassess entire 'Project Texas' and
effectively disqualified results of '*60-120-180 days reports*'.

```
*  subject: CN=*.tiktok-us.org
*  start date: Oct 11 00:00:00 2021 GMT
*  expire date: Nov 11 23:59:59 2022 GMT
*  subjectAltName: host "sdplatform-ttp.tiktok-us.org" matched cert's "*.tiktok-us.org"
*  issuer: C=US; O=DigiCert Inc; CN=GeoTrust TLS DV RSA Mixed SHA256 2020 CA-1
*  SSL certificate verify ok.
> GET /v1/lookup?name?vdc=useast5&name=inf.sd.proxy&addr-family=dual-stack HTTP/1.1
> Host: sdplatform-ttp.tiktok-us.org
> User-Agent: curl/7.52.1
> Accept: */*
>
< HTTP/1.1 403 Forbidden
< Server: nginx
< Date: Tue, 25 Jan 2022 10:34:46 GMT
< Content-Type: text/plain; charset=utf-8
< Content-Length: 55
< Connection: keep-alive
< X-TT-System-Error: 3
< x-tt-trace-host: 01be0325c7d575015b36ae6ecc015a3701e95b1e622e043382bd2c0a59fa909798f03d3
< x-tt-trace-tag: id=00;cdn-cache=miss
<
* Curl_http_done: called premature == 0
* Connection #0 to host sdplatform-ttp.tiktok-us.org left intact
psm: toutiao.bytefaas.gateway not registered in ByteTime
→ boe
```

COMPLAINT (1st amended)

**120.** These new risk findings meant that possibly not only the *'60 days report'* and *'120 days report'* may have been inaccurate, but also that the final *'180-days report'* from the Secretary of Commerce to the Assistant to the President and National Security Advisor, which was to be provided on or around December 4, 2021, also may have missed material risks to US national security.

**121.** Plaintiff also discussed with the ByteDance GSO team the need to inquire about the state of cybersecurity controls directly with <u>Oracle</u> and to learn from them about the work that they were doing for TikTok and ByteDance because even the mainland-China manager for "<u>Project Texas</u>", *Danwei Zheng*, confirmed that she never even spoke to anyone from <u>Oracle</u> and that her knowledge about the work that this Trusted Technology Provider (TTP) was purely anecdotal, too.

**122.** The '*180-days report*' from National Security Advisor could have mislead the President and misguided him to lag on further executive and legislative actions pertaining to TikTok operations in the USA and, in doing so, could have endangered safety of millions of Americans as it was eventually very clearly evidenced in November of 2023 when the so-called 'Letter to America' from Osama bin Laden was propagated on TikTok uncontrollably.

**123.** TikTok Inc. is an artificial structure on the top of ByteDance corporation that cannot make any decisions, neither corporate nor infrastructural due to the nature of ByteDance information technology' architecture and is simply a 'translator' into English that collects billions of dollars in revenue from the U.S. market without any accountability or even capacity to control the product that they market as 'unique' and 'standalone'. This artificial corporate structure, TikTok Inc., has only created more issues and problems in communication between ByteDance corporation and U.S. government because

of irresponsible and false statements that TikTok Inc. executives made in their testimonies to the American Congress and American users.

**124.** Plaintiff held direct discussions with Mark Yeh, Will Farell, Roland Cloutier, Vanessa Pappas, Rubo Liang and others to alert them that Plaintiff was refusing to sign off on Project Texas due to its fundamental flaws and control gaps; Plaintiff also reached out to one of the third parties to clarify the details about the service that it supposedly provided to ByteDance, as such outreach was in immediate scope of Plaintiff's business-as-usual and risk management work because it pertained to Project Texas directly.

**125.** On January 30, 2022, Plaintiff initiated an introductory contact with Oracle It must be revealed that Plaintiff's cousin Eddie Goziker, who at the time happened to be working as *Oracle's Vice President of Physical and Corporate Networking (Oracle Cloud Infrastructure)* and, in theory and in reality, was probably supposed to know better than others about Project Texas from Oracle's point of view. Hence, Plaintiff also blind-copied Eddie Goziker on the introductory email that was sent from Plaintiff's official ByteDance email account to *Oracle's SVP, Deborah Hellinger* on January 30, 2021.



PAGE 39

COMPLAINT (1st amended)



**126.** Plaintiff was also coordinating his steps with the *former* FBI Officer who was now working on ByteDance payroll (Witness #4).



COMPLAINT (1st amended)

**127.** On January 30, 2022, Plaintiff spoke with the TikTok COO, Vanessa Pappas, and received her request for urgent actions to mitigate risks. Plaintiff now believes it was their cheating act to trick Plaintiff and then to rid of him.

**128.** On that same day and then on January 31, 2022, Plaintiff continued his escalations of risk management internally to the global CEO of ByteDance Mr. Rubo Liang (China), COO of TikTok Ms. Vanessa Pappas (USA), TikTok Compliance Officer Ms. Melissa Martin (USA), ByteDance Head of Internal Audit Chris Lepitak, TikTok Head of Ethics Mr. Marc Arvanitis (USA), ByteDance Head of Global Security Organization Mr. Roland Cloutier (USA), and had several very detailed discussions with the former FBI Task Force Officer Travis Dalton who now worked in TikTok's security group and was reporting to Roland Cloutier.

**129.** Taking into consideration the materiality of the identified cybersecurity risks and the management crisis that was looming, as well as perfectly understanding the potential negative impact of my findings to the success of selling Project Texas to the CFIUS, Plaintiff had to escalate directly to the global ByteDance CEO, Mr. Rubo Liang.

**130.** Plaintiff spoke to the ByteDance CEO, Mr. Rubo Liang, and explained the risk issues. The CEO of ByteDance, Rubo Liang then referred Plaintiff to the high-level support engineering team and referred Plaintiff back to TikTok's COO Vanessa Pappas, while completely excluding TikTok's public media face, CEO Shou Zi Chew from this specific communication and escalation procedure in general.

**NOTE**: The initial response from the Rubo Liang's team of engineers was something similar to - "*So what? Microsoft also has the same problems…*"

COMPLAINT (1st amended)

**131.** On February 1, 2022, TikTok's Head of Trust and Safety Mr. Eric Han (USA) and his protégé in a role of Sr. Director of Operations Mr. Mark Yeh (USA) – both being the immediate suspects of instigating the internal fraud on behalf of TikTok's executives - asked Plaintiff to stop his risk management escalations for <u>Project Texas</u> in USA and China.

**132.** Plaintiff refused to succumb to these corrupt and forceful suggestions because the suspects were asking Plaintiff to essentially stop doing his job and in doing so to violate the public policy of <u>Executive Order 14034</u> and to violate the laws of the United States of America by hiding the risks to US national security.

**133.** As a result, on February 2, 2022, Mr. Mark Yeh announced that he has put Plaintiff on a 'paid leave of absence in good standing with the company' while he was investigating Plaintiff's risk management activities and contacts with Oracle and ByteDance executives. After the confrontation with Mark Yeh and Eric Han, Plaintiff reached to the Compliance Officer, Melissa Martin, and shared with her that Plaintiff gathered enough evidence of the Internal Fraud and she suggested to initiate an immediate audit of the GSO; Plaintiff advised her that he was going to start a formal whistleblowing escalation through 'Ethics' procedure and for that Plaintiff needed to speak with the Head of Ethics, Mr. Marc Arvanitis.

**134.** Same day, around 10am on February 1, 2022, Plaintiff reached out to Mr. Marc Arvanitis, the Head of Ethics in North America.

**135.** During the short communication by ***Lark***, Plaintiff escalated the need for a formal Ethics procedure due to suspicion of Internal Fraud and agreed to formally meet later on that day for a scheduled 1-hour long meeting during which Marc Arvanitis would formally initiate an 'Ethics Escalation process'.

---

COMPLAINT (1st amended)

**136.** Thirty minutes later, around 11am on February 1, 2022, Plaintiff 's work laptop was shut down and in 1 hour and a half later he received an email to a personal address from Mark Yeh where he informed Plaintiff that he was being put on an Involuntary <u>Paid</u> Leave of Absence while the company was going to investigate Plaintiff's risk management actions. Mark Yeh also demanded that Plaintiff returns his work laptop with all the evidence gathered during risk assessment to Mark's own possession.

**137.** Essentially, as a result of Plainitiff's escalation to CEO of ByteDance LTD and following his email to Oracle's SVP Deborah Hellinger, Mark Yeh and Eric Han – the two people whom Plaintiff suspected of being the main bad actors and enablers of <u>Project Texas</u> fraud, have jointly prevented Plaintiff from initiating the official Ethics procedure with the Head of Ethics, Marc Arvanitis, and together have orchestrated Plaintiff's removal from access to work, first temporarily by putting him on a paid leave of absence, and then on a more lasting basis by attempting to terminate his employment through the Singapore-based company because they did not dare to go through the HR in the United States.

**138.** On February 2, 2022, someone named Brian O'Connor emailed to Plaintiff's personal email address and attempted to message Plaintiff through WhatsApp by claiming to be an HR representative who was tasked to speak with the Plaintiff, while in his day-to-day work at ByteDance, Plaintiff already knew of a dedicated HR person assigned to work with him, someone Alicia Wagoner, and Plaintiff was also well aware of other HR officers in USA, namely:

     (A) *Shuyi 'Selene' Gao* – Head of HR-US ByteDance, who signed Plaintiff's offer letter;

<div align="center">PAGE 43</div>

---

<div align="center">COMPLAINT (1st amended)</div>

(B) *Kate Barney* – Global HR leader in ByteDance located out of New York, and

(C) *Shawn Wu* – Global HR leader at TikTok located out of Los Angeles.

**139.** The plaintiff absolutely did not know who Mr. Brian O'Connor was and taking into consideration the situation with the escalation of Internal Fraud, Plaintiff did not trust him.

**140.** Brian O'Connor seemed to be aware of the developing situation directly from Mark Yeh and his only interest was to collect Plaintiff's work laptop that contains evidence of the wrongdoings by TikTok and ByteDance executives, so when Plaintiff advised him of the Internal Fraud findings in a very detailed email, Brian O'Connor simply ignored it and continued insisting only on the collection of Plaintiff's work laptop.

**141.** On February 2, 2022, after receiving an email from Mark Yeh suggesting that Plaintiff was on a <u>Paid</u> Leave and remained in good standing with the company, and that Plaintiff did not need to login to his work laptop (*Plaintiff actually couldn't login even if he wanted to because of the network blockade initiated by Mark Yeh*), Plaintiff  decided to finally travel to Australia to meet with a girlfriend with whom he was communicating during the COVID lockdown. Yet, in the middle of that journey, while passing Turkiye where he was also approached by a hotel security guard who had an unusual interest in TikTok and its relations with the US government, Plaintiff decided to also visit Ukraine because of all the suspension that was building up in the country of his birth.

**142.** On February 8, 2022, while still remaining in good standing with his employer ByteDance, and being on a <u>Paid</u> Leave of absence but not being able to login into his work laptop which he always had handy upon the specific request from Mark Yeh and his instructions on the working Day 1 at ByteDance, Plaintiff tried again to contact the Head of Ethics, Mr. Marc Arvanitis, from his personal email at 4:56pm, and shared with him in more details what was happening before and after they spoke last time on February 1, 2022.

**143.** Almost immediately, at 5:44pm, Brian O'Connor emailed Plaintiff again and now attempted to terminate his employment.

**144.** Then at 6:39pm, Plaintiff received a DocuSign email from IP address: 172.112.162.83, registered at ANSON ROAD 10-08 INTERNATIONAL PLAZA ***Singapore*** 079903, allegedly belonging to someone with the name 'Mayra Virgen' who in the email suggesting being working for HR Operations in *Byte Precision Sdn. Bhd*. and demanded Plaintiff to sign off his termination paperwork, which he never signed because Plaintiff does not know who Brian O'Connor was, who Mayra Virgen is, and why Plaintiff is receiving emails from Singapore and not from the HR in USA, and most of all why the supposed self-appointed HR representative Brian O'Connor and Head of Ethic Marc Arvanitis were not following the ByteDance's own self-declared and publicized Code of Conduct and Ethics escalation and hotline procedure.

**145. Plaintiff could have remained staying on a <u>Paid Leave</u> and travel the world without even the need to logging into work, but since Plaintiff escalated again, the fraudsters decided to attempt to terminate Plaintiff's employment.**

146. Essentially, on February 8, 2022, after Plaintiff's repeated efforts to initiate 'ethics procedure' internally with Mr. Marc Arvanitis, led to someone named Brian O'Connor trying to terminate Plaintiff's employment by purposefully omitting a standard US-based human resources and sending the termination paperwork from Singapore instead of Los Angeles.

147. Up to this date Plaintiff receives daily emails from Singapore with the ask to sign off on his termination agreement; since the termination paperwork has never been finalized or counter-signed by Plaintiff, it is Plaintiff's legal position that he has never been legally terminated from ByteDance/TikTok and has the legal right to return to work once this and other egal challenges are resolved.

148. Plaintiff's risk management findings contradicted earlier risk assessments of the system and data flows presented by Booz Allen Hamilton to the **ODNI**, **DHS** and other US federal agencies that were already officially submitted and documented in the '60-120-180 days reporting', so the 'law enforcement colleagues' decided to rid of Plaintiff and colluded with TikTok executives to fire him.

149. Plaintiff's risk management findings diminished the mantra about Oracle's exaggerated involvement in Project Texas and contradicted TikTok's public announcements and statements made under oath in the US Congress about the independence of its systems and controlled data flows.

150. **To put it in plain English: Plaintiff and his ByteDance/TikTok internal risk management team identified the risks that DOJ and its leadership together with ByteDance executive leadership wanted to hide because the ODNI, DHS, DOJ and other US federal government entities already reported to the President Biden that there were no major risks identified**

PAGE 46

**at TikTok so that the CFIUS could bless new operational approval for TikTok that would also greenlight the path to its IPO and legitimize the powerful TikTok media channel just in time for the new upcoming elections cycle.**

151. Between August 2021 and February 2022, Plaintiff responsibly executed his job responsibilities as Risk Manager at ByteDance and worked hand-in-hand with *former* officers from FBI, DHS, NSA, Secret Service that were now on-payroll with ByteDance and whose only mission in theory was _**also**_ to oversee TikTok's executive management to implement the Executive Order 14034, but in reality they both were indiscriminately day-by-day pressuring and grooming Plaintiff to sign-off on Project Texas as-is, without verification, with the first demand setting the target date for November 10, 2021, which would be right before the deadline for '*180-days report*' for the Executive Order 14034.

152. Plaintiff refused to violate the laws of the United States of America and continued his escalations with the FBI both internally at ByteDance and externally through calling the FBI-hotline, and also informed several attorneys at law such as his former manager at Union Bank, Mr. Matt Ahart, and also in writing to a private attorney in Los Angeles, Mr. Tyler Clark (*California Bar License #258309*), to both of whom Plaintiff described the conflicting situation where Plaintiff was being coerced into criminal corruption by his employer while his risk management was also sabotaged, and he personally was pressured by the '*law enforcement colleagues*' and surveilled all over the world and domestically in USA.

153. Between August of 2021 and February of 2022, Plaintiff identified numerous evidence that matched the warnings from Hayden Lee and stimulated Plaintiff to consider that potentially some of the ByteDance executives, who were responsible for promoting TikTok in USA, may have

PAGE 47

---

COMPLAINT (1st amended)

been misrepresenting the true state of controls at the company and through colluding with the external corporate third parties such as <u>Booz Allen Hamilton</u> *and* <u>Oracle</u> they were only trying to get a greenlight for IPO without truly establishing proper controls for the material risks that had exposure to US national security. It also seemed strange that executives of <u>Oracle</u> never stated publicly that they are approving and supporting the so-called <u>Project Texas</u>.

154.  But, at all times starting from Day 1 of his work as Risk Manager at ByteDance to oversee TikTok operations and *especially* after the illegal attempt by TikTok executives for his wrongful termination that was wickedly instigated by the same federal agencies' negligence or wicked plan who are also responsible for implementation and continuous reporting on the status of <u>Executive Order 14034</u>, Plaintiff always thoroughly cooperated in good faith, guided and provided true information with candor to all branches of the US Government, including the non-elected bureaucrats such as Department of Justice, Department of Homeland Security, Department of State, and also collaborated closely and provided guidance and his subject matter expertise to the bipartisan groups in the US House of Representatives, as well as offices of US Senators Warner, Hawley, Grassley and Durbin, and other elected delegates in power to act on behalf of the United States of America, its citizens and legal residents.

155.  In early April of 2022, almost immediately after Plaintiff crossed the border from Ukraine, he noticed a renewed attempts of physical surveillance and on April 5, 2022, while commuting to Bratislava airport, so upon his arrival to London Gatwick airport on April 6, 2022, with Ryanair flight #FR 2315, Plaintiff made a formal report with the British police officers in which he detailed the facts of all previous surveillance incidents, break-in to his Los

COMPLAINT (1st amended)

Angeles apartment, and other facts of illegal intrusion into Plaintiff's privacy which he connected directly to his employment at TikTok/ByteDance and Project Texas and the implementation of Executive Order 14034.

**156.** The incidents of the illegal surveillance continued throughout Plaintiff's travels in EU, so on April 20, 2022, he arranged for a personal meeting with the Security Officer of American Consulate in Barcelona. During more than a 1-hour long conversation, Plaintiff briefed him on all the details pertaining to his employment with ByteDance and the concerns of risks to US national Security that derived out of TikTok's Project Texas. In early May of 2022, Plaintiff left a printed version of his report with the American embassy in Belgium.



| From: | Zen.Hazikaron@outlook.com |
| --- | --- |
| Sent: | Tuesday, April 19, 2022 5:42 AM |
| To: | barcelonaacs@state.gov; pdbarcelona@state.gov |
| Cc: | madrid.office.box@trade.gov; matahart@gmail.com |
| Subject: | Attention: alert, please review this information and forward as needed |
| Importance: | High |

**THREAT ALERT**

**ATTENTION: USDOS, BUREAU OF CYBERSPACE AND DIGITAL POLICY**

Risk Source: TikTok



Bachus, Jennifer
Senior Bureau Official
Bureau of Cyberspace and Digital Policy



Anderson, Stephen C.
Acting Deputy Assistant Secretary for International Communications and Information Policy
Bureau of Cyberspace and Digital Policy



Markoff, Michele G.
Acting Deputy Assistant Secretary for International Cyber Security
Bureau of Cyberspace and Digital Policy

PAGE 49

COMPLAINT (1ˢᵗ amended)

## RISK: US NATIONAL SECURITY

- [1] All TikTok US DATA currently still is and will remain UNPROTECTED indefinitely due to TikTok's internal decision to cover-up and continue use of Chinese data management architecture

- [2] All TikTok US data flows UNCONTROLLED into Singaporean and Chinese servers, partially through virtual AWS clouds, but without any tested and verified data separation between US and non-US queues; no methodically documented data management architecture exists and all attempts to capture data flows and/or process maps were and are actively blocked by TikTok's Management

- [3] TikTok internal "*Project Texas*" to separate US data from non-US may potentially be an INTERNAL FRAUD; both US and China TikTok Senior Management repeatedly claim that there are multiple Oracle servers in Texas that are ALREADY ensuring US Data Security, but these suggestions were NOT POSSIBLE TO VERIFY or substantiate through standard risk management procedures (control testing, risk assessments, etc.)

- [4] Additional major gaps identified: (a) no VPN requirement for internal tools used by Third Parties; (b) US queues moderation is still occurring offshore; (c) Procurement and vendor management practices are not robust, potentially subject to international corruption

FREE AND CARING

## DATA GATHERING, ANALYSIS, ESCALATION

- This information obtained and verified through the work of a TikTok Risk Manager — "Head of Control and Governance" in US Trust and Safety organization (reporting line: Mark Yeh → Eric Han → Vanessa Pappas)

- Investigation lasted 6 months: audio, emails, screenshots, presentations, and hardware gathered as evidence, and all are readily available upon request by US government

- All methods to escalate internally within TikTok were exhausted: Chief Internal Auditor, Chief Information Security Officer, Head of Trust and Safety, Head of Compliance, Head of Ethics, CEO

- IMPORTANT: attempted escalations to FBI were sabotaged by federal agents and potentially may have already resulted in unauthorized surveillance of the whistleblower

- This matter is urgent due to weak and lacking diligence practices executed by Booz Allen Hamilton while auditing TikTok's USA operations in preparation for its planned IPO; additional risks to consider are highly 'reputational' for US Government

FREE AND CARING

## Evidence Captured by Type (diagram)



Video Recording; 1 · Audio Files; 88 · Screenshots; 200 · Emails; 4 · Powerpoint; 1 · Laptop; 1

■ Audio Files   ■ Video Recording   ■ Screenshots   ■ Emails   ■ Powerpoint   ■ Laptop

FREE AND CARING

PAGE 50

COMPLAINT (1st amended)



PAGE 51

COMPLAINT (1st amended)

**157.** In May of 2022, while perfectly understanding the importance of his inconvenient knowledge to the future of US national security, Plaintiff proactively reached out to active officers in the Department of Homeland Security, such as *Alethea Duhon, PhD*., who at the time was the **Associate Director for Analysis at Department of Homeland Security (CISA/NRMS)** and who indirectly acknowledged the receipt of Plaintiff's warnings and requests for US government and DHS to help that he sent through the Microsoft's social network for professionals called '*LinkedIn*'. Plaintiff believes that while *Alethea Duhon* truly wanted to help, she however was restricted and obstructed in her work capacity to act accordingly to this risk matter and national security situation by her superiors.



**Alethea Duhon, Ph.D.**
Associate Director for Analysis at Department of
Homeland Security (CISA/NRMC)

MAY 7



**Gene Goziker, M.S.** · 3:03 AM
Hello Alethea, I am a former Head of
Control and Governance for TikTok in US,
left the company several months ago after
escalating my findings of high risks to
Chief Internal Auditor, CISO, Compliance,
CEO, and in the end reached out to Head
of Ethics. I believe this is a matter of
National Security and would like to speak
with You.

Regards,
Gene.

COMPLAINT (1st amended)

**158.** One week after the attempted communication with *Alethea Duhon,* Plaintiff received an offer from a DHS recruiter *Cartwright, Gabriela (CTR)* gabriela.cartwright@associates.cisa.dhs.gov to review Plaintiff's resume, which was appreciated given that it was because of the DHS' own failure and errors on ODNI's side, who refused to do the corrective action work after Plaintiff identified gaps in the 60-days report for the <u>Executive Order 14034</u>.

**159.** Also in May of 2022, Plaintiff initiated a contact with John N. Tye, a well-known attorney from Washington DC who previously helped with the disclosures of infamous '*Facebook Files'* to the US Congress and digested for intelligence community. The plaintiff shared his concerns, as well as all artifacts and evidence, with the "*Whistleblower Aid*" and encouraged Mr. Tye to facilitate further.

**160.** Finally, on May 16, 2022, Plaintiff reached out to journalist *Emily Baker-White*, whose *BuzzFeed* article about <u>Project Texas</u> was mentioned by *Ezra Klein* in his *New York Times* blog.

**161.** On or around May 20, 2022, Plaintiff shared all of his knowledge about TikTok's <u>Project Texas</u> and the failed implementation of <u>Executive Order 14034</u> with the journalist *Emily Baker-White*, who then published a series of articles at *Forbes* magazine.

**162.** In September of 2022, Plaintiff personally met with *Emily Baker-White* and warned her about his experience with illegal surveillance that she might as well become a victim too.

**163.** Several weeks later it became apparent that indeed ByteDance/TikTok had engaged in this illegal activity in their attempts to track down Emily's source of information.

**164.** *Emily-Baker White* herself became a victim of illegal criminal surveillance that currently is still being investigated by the U.S. Department of Justice and

the FBI (*as reported by CNN on March 17, 2023, by Brian Fung "US government launches criminal investigation into TikTok parent, reports say"*).

**165.** Also in September of 2022, after the fiasco in the US Senate when Vanessa Pappas made up stories while testifying under oath, Plaintiff wrote an open letter to the CEO of TikTok, Mr. Shou Zi Chew, and offered help.

---

September 22, 2022
Mr. Shou Zi Chew, CEO, TikTok
5800 Bristol Parkway Culver City, Suite 100, Los Angeles, CA 90230
E-mail: shou@bytedance.com

Dear Sir,

Last week's hearings in the U.S. Senate when our colleague and mutual friend was attempting to defend reputation of the TikTok brand, have illuminated especially well the highest level of public interest in services that we as a company and as individuals offer to this country. As a professional with more than 15 years in Risk Management and as an everlasting student of ethics with formal education from the University of London (LSE), where I gained unbreakable beliefs in *Trust and Safety*, I cannot stand aside and watch silently how the great idea behind TikTok name becomes something that soon may turn into a synonym of corporate disaster.

Before I made an abrupt decision to take a leave of absence in early February this year to go with the support mission into Ukraine (my birthplace), I've held several meetings with our senior leaders to discuss gaps in the control environment and ideas for mitigating them. During one of these meetings with *Mr. Chris Lepitak, Head of Internal Audit and Risk Control* group in USA, we identified areas of consideration to promptly enhance risk management framework and ensure overall control effectiveness of our operations in the United States of America. We both agreed that together we can implement holistic measures that could prepare the framework for eventual IPO and decided to act firmly in accordance with the methodological playbook that will satisfy the most scrupulous inspection by any government, investor and end-user. Similarly, I talked with *Mr. Ronald Cloutier* and his team, when I made them aware of some major proposals for improving the oversight over information security at TikTok and its multiple vendors.

Also, I had a dedicated conversation with our COO, Vanessa Pappas, when we discussed company's needs for data security and management practices; as a result, she made a formal request for a one-pager report with my proposals to address gaps. Finally, I had a direct chat with *Mr. Rubo Liang* and received his explicit support for my risk management, control and governance remediation initiatives.

As I mentioned earlier, the European mission to organize help in Ukraine lasted more than 6 months, but right now I am back stateside and can entirely concentrate on helping You with mitigating all the risks that create exposures to TikTok and its future in USA and globally. My robust corrective action plans are detailed and well positioned for the immediate execution to deliver much needed results within defined timelines.

To expand on the effects from earlier discussions with various senior leaders, I encourage you to initiate and lead the *Enterprise Risk Management* committee where we can jointly and honestly identify gaps, brainstorm and prioritize mitigation plans, and finally reach consensus for the next steps that are absolutely needed in order to repair the reputational damages that TikTok brand has suffered. Now is time to execute.

I am looking forward to return to work at TikTok in the nearest future and make the necessary changes fast.

Yours Truly,
Mr. Gene Goziker
Head of Control and Governance, Trust and Safety, TikTok
Work E-mail: gene.geziker@bytedance.com (*inactive*) / Personal E-mail: ggoziker@outlook.com
Ph. #: +1.213.378.3998

cc:
Mr. Eric Han, Head of Trust and Safety, TikTok
Mr. Chris Lepitak, Head of Internal Audit and Risk Control, TikTok

---

PAGE 54

COMPLAINT (1st amended)

**166.** In November of 2022, Plaintiff sent the letters with *'Toutiao Code'* and a short-form risk assessment urging to stop approval by CFIUS to the:

    a. Director of FBI, Christopher Wray
    b. Secretary of Treasury, Janet Yellen
    c. Assistant Attorney General, Lisa Monaco
    d. Director of OMB, Shalanda Young

**167.** Also in November of 2022, someone broke into Plaintiff's car and pulled out the wiring under the steering wheel, which can be only interpreted as an attempt of intimidation to silence Plaintiff's efforts.



PAGE 55

COMPLAINT (1st amended)

**168.** On December 2, 2022, Plaintiff wrote a 2nd letter to Mr. Shou Zi Chew and copied Mr. Rubo Liang where he explicitly informed them of the Internal Fraud at ByteDance/TikTok.

December 2, 2022

Mr. Shou Zi Chew, CEO, TikTok
5800 Bristol Parkway Culver City, Suite 100
Los Angeles, CA 90230
E-mail: shou@bytedance.com

Dear Sir,

In your most recent comments to *Bloomberg* and *Wall Street Journal*[i], you used the term "solvable problem" to describe TikTok's challenges with US Data Protection and informed American public about "very rigorous data-access protocols" that supposedly mitigate these risks.

I believe that you are wrong and being lied to by your *Head of Trust and Safety*, Eric Han.

This is my second (2nd) attempt to gain your attention through a written communication and please consider this demand letter as formal request for action.

As you know from my previous correspondence dated September 22, 2022, my position at TikTok between August 2021 and February 2022 was called *Head of Control and Governance*, and *Project Texas* was in the immediate and direct scope for my day-to-day responsibilities.

Now, in this letter, I am sharing with you that Mr. Han, Mr. Yeh and other senior managers at TikTok in USA are responsible for the internal fraud pertaining to implementation of *Project Texas*.

Earlier this year, various TikTok executives were unduly pressuring me to sign off on *Project Texas* as if it was something accomplished long time ago, manipulating dozens of internal and external parties, including officials in the U.S. government, into believing that US Data Protection was already properly ensured by Oracle, verified by Booz Allen Hamilton, and that TikTok was ready for successful IPO.

They were intentionally lying to me and today, I believe, Mr. Han and other *"trusted partners"* are potentially convincing you, the CEO of TikTok, that it is safe to state publicly that *Project Texas* can fix TikTok's problems and mitigate risks for American users in the future.

When the fraud was uncovered, I shared my concerns with Mr. Chris Lepitak, *Non-China Internal Auditor*, but instead Mr. Eric Han with his accomplice Mr. Mark Yeh tried to terminate my employment with TikTok.

To conclude, this letter mostly serves its goal to inform you of unethical and potentially criminal behavior by some of TikTok senior executives, but at the same time it is also a demand for rapid internal investigation to ensure true risk management and my reinstatement.

Regards,
Gene Goziker.
1.213.378.3998
geoziker@outlook.com

_____

[i] TikTok CEO Says US Data Protection Is 'Solvable Problem'
https://www.bloomberg.com/news/articles/2022-11-30/tiktok-ceo-says-us-data-protection-is-solvable-problem

[ii] TikTok Chief Touts Customer Data-Privacy Initiatives
https://www.wsj.com/articles/tiktok-chief-touts-customer-data-privacy-initiatives-11669851038?page=1

**169.** On December 14, 2022, Plaintiff wrote a letter to the Board of Directors of ByteDance where he shared same letter that was already sent to Shou Zi Chew on December 2, 2024, and advised them of their personal responsibility as the Directors of ByteDance corporation and suggested corrective actions that they should urgently perform to satisfy their fiduciary responsibilities, i.e. to:

**(A) Establish proper governance and control framework with the adequate org structure.**
**(B) Honestly identify enterprise risks and effectively communicate corrective action plan to USG (FBI, US Treasury, etc.)**

**170.** On December 27, 2022, the Head of Global Legal Compliance at TikTok/ByteDance, Catherine Razzano, acknowledged the receipt of Plaintiff's letter to BoD.

**171.** In mid-December of 2022, the severance of illegal surveillance and criminal invasion of Plaintiff's privacy intensified, so on December 22, 2022, he wrote a letter to Senator Durbin with whose office Plaintiff interned back in 2004.

**172.** On that same day Plaintiff also made a formal report with the Santa Ana Police Department (SAPD).

**173.** Ironically, on that same day in late December of 2022, ByteDance's CEO Rubo Liang and the Head of Corporate Affairs at ByteDance, Mr. Erich Andersen, both admitted that ByteDance was spying on Forbes and Financial Times journalists attempting to "hunt down" their sources. The Head of Internal Audit in ByteDance's 3rd Line of Defense, Mr. Chris Lepitak with whom Plaintiff met on January 14, 2022, and who offered him a position of CRO in exchange for silence before the contract with CFIUS is signed, was fired in USA; and, his immediate manager in mainland-China who was

reporting directly to CEO Rubo Liang was also let go as a result of ByteDance admitting their illegal surveillance against American citizens.

174. In February of 2023 Plaintiff received a call from the Santa Ana Police Department and then a follow up email from Mr. Farshid Hashempour where they invited him to visit their offices for a meeting with the FBI and DHS.

175. Later in February of 2023, Plaintiff provided testimonies through video-audio conversations with offices of US Senators Grassley, Warner, Hawley and communicated by email with the office of Senator Richard Durbin.

176. Also in February of 2023, Plaintiff provided testimony to the FBI, DHS, and the Office of Tennessee Attorney General pertaining to TikTok's violations of the 2019 consent order [see: *United States v. Musical.ly, et al., No. 2:19-cv-01439-ODW-RAO (C.D. Cal. Mar. 27, 2019) (Dkt. No. 10) (the 2019 Permanent Injunction)*].

**NOTE**: On August 2, 2024, the U.S. Department of Justice filed a new related case against TikTok, Case No.: 2:24-cv-06535, to which Plaintiff has provided his information in an interview with *Chris A. Dunbar* of the Tennessee Attorney General's office.

177. In March of 2023, Plaintiff testified to the US Congress and provided testimonies to the US House of Representatives Energy and Commerce Committee and offices of US Senators Warner, Hawley, Grassley and Durbin.

178. Around that same time when Plaintiff was holding online video sessions with the staffers from bipartisan groups in the US House of Representatives to prep them for the March 23, 2023, hearing on TikTok and the expected

COMPLAINT (1st amended)

testimony by CEO Shou ZI Chew, Plaintiff's laptop was hacked and a TikTok application was installed on his landing page.

**179.**  In parallel, TikTok application mysteriously uploaded itself into the smart-TV set that is present in the house owned by Plaintiff's Mother and the issue is not just that the application installed itself without users' permissions, but rather that the TV itself was manufactured back in 2018 by American brand *Visio*, meaning that the TV was produced before TikTok was even present on the market.

**180.**  In mid-March Washinton Post published an article based on Plaintiff's testimony.

### The Washington Post
*Democracy Dies in Darkness*

# A former TikTok employee is secretly fighting the company on Capitol Hill

His claims of data-security flaws, which the company disputes, underscore how seriously Congress has begun taking the wildly popular short-video app with more than 100 million users nationwide.

 By <u>Drew Harwell</u>

March 10, 2023 at 6:30 a.m. EST

A former risk manager at TikTok has met with congressional investigators to share his concerns that the company's plan for protecting U.S. user data is deeply flawed, pointing to evidence that could inflame lawmakers' suspicion of the app at a moment when many are considering a nationwide ban.

**181.**  On March 23, 2023, TikTok CEO Shou Zi Chew testified to US Congress and on March 28, 2023, Plaintiff again testified to the FBI and DHS.

COMPLAINT (1ˢᵗ amended)

**182.** In early 2023, as a result of Plaintiff's *'post-termination'* risk management efforts, President Biden banned TikTok on all government-owned devices. On May 4, 2023, the CEO of TikTok, Mr. Shou Zi Chew, provided written responses to the US House of Representatives and admitted to the Honorable Jan Schakowsky's that the '*Toutiao Code'* which was previously discovered by Plaintiff on January 25, 2022, was in fact evidencing the ***currently existing*** interference between two systems of TikTok in USA and Toutiao in China.

https://docs.house.gov/meetings/IF/IF00/20230323/115519/HHRG-118-IF00-Wstate-ChewS-20230323.pdf

---

***Question from Congresswoman Jan Schakowsky (IL-09)(p.35)***

    4. **A former TikTok risk manager turned whistleblower has reported that the Project Texas plan is deeply flawed. The former employee has shown the Washington Post a piece of code that shows TikTok could connect with systems linked to Toutiao, a Chinese news app owned by your parent company ByteDance. The whistleblower claims this could allow for interference in the flow of data from US users. Can the Toutiao app interfere with TikTok data flows once Project Texas is initiated? Is US data sent to or stored in Toutiao? When Project Texas is implemented as planned and Oracle staff review TikTok code, what is the process for remediating issues identified by the review? How does this process differ if issues in TikTok's code are identified by Oracle staff, USDS staff, TikTok employees, or ByteDance employees? What personnel will update and deploy code flagged with issues by Oracle? How will code fixes be verified to resolve the identified issue and how will deployment of those fixes be verified?**

Many of the allegations in this article are unfounded. The platform and the algorithm supporting U.S. users is contained in the Oracle environment and use of the term "Toutiao" does not in any way indicate a correlation between, integration of, or network connectivity between Toutiao and TikTok.

Toutiao is a news application that operates in China, and U.S. user data is not stored in the Toutiao news application. U.S. user data is not stored in the Toutiao news application. All new protected user data is stored in the TikTok U.S. platform operating in Oracle and USDS controlled infrastructure. The Toutiao news application cannot interfere with TikTok data flows once Project Texas is complete.

When Project Texas is implemented as planned, any issues will be handled through our Vulnerability Management process with defined service level agreements based on criticality. Fixes to server code will be deployed by USDS after going through software review. Fixes to the mobile app will be compiled and deployed to the app stores by Oracle. As part of Project Texas, all code and updates have to go through a software assurance process and be reviewed by both Oracle and another third-party source code inspector.

---

**183.** All this new information exposes major gaps in US government's risk management and continuous monitoring for *Section 2(d)* of the President Biden's <u>Executive Order 14034</u> where he explicitly required that:

> (d) The Secretary of Commerce shall evaluate on a continuing basis transactions involving connected software applications that may pose an undue risk of sabotage or subversion of the design, integrity, manufacturing, production, distribution, installation, operation, or maintenance of information and communications technology or services in the United States; pose an undue risk of catastrophic effects on the security or resiliency of the critical infrastructure or digital economy of the United States; or otherwise pose an unacceptable risk to the national security of the United States or the security and safety of United States persons. Based on the evaluation, the Secretary of Commerce shall take appropriate action in accordance with Executive Order 13873 and its implementing regulations.

**Every requirement ordered by President Biden in his <u>Executive Order 14034</u> was knowingly failed** by the departments and agencies responsible for its implementation **after the premature and false "60-days report",** where the true risks were not identified and, therefore, when not called out - they also could not be mitigated by any controls because of the continuous '*state of denial*' **inspired and owned by ODNI**, and as a result even today American users' trust and safety are still endangered (*ref. 'Letter to America' incident in November 2023*) , professional risk management sabotaged, and Plaintiff forcefully unemployed.

**184.** <u>**On May 4, 2023, CEO of TikTok confirmed to the US Congress that:**</u>

   a. Previous statements by same TikTok executives (CEO, COO, and others) were repeatedly misinforming US Government and American public about the state of controls at TikTok between 2021-2023.

   b. Plaintiff was correct when he escalated his risk management and identified data flow exposure on January 25, 2022.

   c. TikTok systems in USA are vulnerable to intervention from a different system operating out of China that is not controlled in USA.

d.  TikTok Inc. has no control over data flows going to and coming from a foreign system.

e.  This fact, in turn, presents an immediate and imminent risk to the U.S. national security because continuing to pretend that TikTok Inc. is a standalone corporation that has an independent voice to talk and promise something to the U.S. government and to the American users is no longer an option after the November 2023 risk-event with the Osama bin Laden's so-called "Letter to America" when TikTok Inc. proved that it cannot govern and control itself and its product.

**185.**  Plaintiff repeatedly warned the FBI and DHS (including by emails and during in-person meetings) about the imminent risk event and danger to the public safety of Americans. Plaintiff's warnings were ignored because the true risk management is never convenient to those who are complacent, complaisant, or simply afraid for their job security which they also perfectly know that they are not doing well and also know that they won't be able to find a new workplace to slack as well, especially in federal government. In 2007, before starting at Citi, Plaintiff had a 2-months gig at the U.S. DoL and, thus, knows well.

**186.**  In late May of 2023, Plaintiff was actively interviewing legal professionals for a planned lawsuit against TikTok for their attempt of wrongful termination against the Plaintiff, so when an attorney Samuel Goldsmith with Bryan Schwartz Law came to a personal meeting with the Plaintiff in Oakland's public park and *gesticulated to indicate that he was wire-tapped*, Plaintiff was shocked to comprehend that same people whom he was trying to help and

COMPLAINT (1st amended)

mitigate the risks to US national security were simply trying to frame him into some sort of a criminal situation that would completely ruin Plaintiff's reputation and make any possible legal claims against Defendants improbable.

**187.** In early summer of 2023 Plaintiff's apartment in Newport Beach was broken into and Plaintiff filed a police report with the Newport Beach PD.

**188.** Later same month, when Plaintiff was preparing for a kitesurfing session in Long Beach, someone tried to interfere with his kite equipment by crossing and tangling his kite-lines right after the safety check that Plaintiff already performed and was ready to lunch. This action could be deadly, and Plaintiff reported this incident to the Santa Ana police liaison with FBI, Farshid Hashempour, the fact about the two individuals who seemingly appeared from nowhere, wearing formal suits on the beach, and then disappeared after the incident.

**189.** Later in July of 2023 Plaintiff was practicing kitesurfing at Seal Beach location and after an unsuccessful session when he had to return to the beach, he seemed not to be able to locate his bag with the car keys and asked a lifeguard for assistance to drive around the beach in search of the bag. To Plainitiff's surprise, one of the lifeguards who approached him during the search, was the same *'police officer'* from Newport Beach who took Plaintiff's report about unauthorized access to Plaintiff's apartment just one month earlier in June of 2023.

**190.** At this point it became apparent that while Plaintiff was physically present in the United States, making any reports about security – whether it was his own personal or of the entire country, is was just a waste of time because those players who do not want to see, hear, know, and what is most important to comprehend – they will not, no matter what. Their consciousness is silent.

PAGE 63

COMPLAINT (1st amended)

**191.** There were multiple additional facts of the illegal surveillance campaign with unprecedented invasion of privacy that multiple times risked Plaintiff's life and endangered security of his entire Family when they were also included under surveillance by association with Plaintiff. For example, Plaintiff's elderly Mother, in whose property he used to stay in California, was invaded repeatedly by intruders surveilling Plaintiff's actions, while she was actually in the house (Plaintiff's Mother made a formal complaint filed in 2023 with the Santa Ana Police Department's Mr. Farshid Hashempour, Ph #949-395-7515, fhashempour@santa-ana.org , who facilitated several follow-up meetings and multiple communications in 2023 between the Plaintiff and Mr. Christopher Gicking from DHS Christopher.Gicking@oig.dhs.gov and Mr. Luis Altamirano from FBI laaltamirano@fbi.gov ).

## DEFENDANTS' UNLAWFUL CONDUCT

**192.** Defendant engaged in the unlawful acts and practices, whether jointly in conspiracy or in parallel to each other's wrong deeds, but definitely in some form of a collusion with the United States Department of Justice and its leader who was in charge of overseeing the implementation of the President Biden's **Executive Order 14034**, and which Defendant Merrick B. Garland and his DOJ knowingly, consciously and deliberately failed by sabotaging and ultimately terminating the risk management work that Plaintiff and his *Control and Governance* team were in charge of doing within the ByteDance/TikTok conglomerate.

**193.** On or before August 9, 2021, pursuant to Section 2(b) of the Executive Order 14034 the Director of National Intelligence, Ms. Avril Haines, had to provide her threat assessments and the Secretary of Homeland Security was to

provide his vulnerability assessments of TikTok operations in the USA in a statement to the Secretary of Commerce (hereinafter *'60-days report'*), who in turn was instructed by President Biden to support the development of the subsequent reporting to the Assistant to the President and National Security Advisor, Mr. Jake Sullivan, with the preliminary recommendations due by October 7, 2021 (hereinafter *'120-days report'*).

> (b) Not later than 120 days after the date of this order, the Secretary of Commerce, in consultation with the Secretary of State, the Secretary of Defense, the Attorney General, the Secretary of Health and Human Services, the Secretary of Homeland Security, the Director of National Intelligence, and the heads of other agencies as the Secretary of Commerce deems appropriate, shall provide a report to the Assistant to the President and National Security Advisor with recommendations to protect against harm from the unrestricted sale of, transfer of, or access to United States persons' sensitive data, including personally identifiable information, personal health information, and genetic information, and harm from access to large data repositories by persons owned or controlled by, or subject to the jurisdiction or direction of, a foreign adversary. Not later than 60 days after the date of this order, the Director of National Intelligence shall provide threat assessments, and the Secretary of Homeland Security shall provide vulnerability assessments, to the Secretary of Commerce to support development of the report required by this subsection.

### That '60-days threats assessment report' missed major material risks.

**194.** On January 25, 2022, through collaborative and willful joint effort with ByteDance engineers from mainland China, Plaintiff obtained a verified artifact with an extract of the software code showing the existing connectivity capability between the TikTok product in USA and the Toutiao artificial intelligence (AI) news generator platform in China (hereinafter '*Toutiao Code'*), which in turn evidenced the need to reassess '*Project Texas'* and effectively disqualified results of '*60-120-180 days reports'* for the <u>Executive Order 14034</u>.

```
* subject: CN=*.tiktok-us.org
* start date: Oct 11 00:00:00 2021 GMT
* expire date: Nov 11 23:59:59 2022 GMT
* subjectAltName: host "sdplatform-ttp.tiktok-us.org" matched cert's "*.tiktok-us.org"
* issuer: C=US; O=DigiCert Inc; CN=GeoTrust TLS DV RSA Mixed SHA256 2020 CA-1
* SSL certificate verify ok.
> GET /v1/lookup?name?vdc=useast5&name=inf.sd.proxy&addr-family=dual-stack HTTP/1.1
> Host: sdplatform-ttp.tiktok-us.org
> User-Agent: curl/7.52.1
> Accept: */*
>
< HTTP/1.1 403 Forbidden
< Server: nginx
< Date: Tue, 25 Jan 2022 10:34:46 GMT
< Content-Type: text/plain; charset=utf-8
< Content-Length: 55
< Connection: keep-alive
< X-TT-System-Error: 3
< x-tt-trace-host: 01be0325c7d575015b36ae6ecc015a3701e95b1e622e043382bd2c0a59fa909798f03d3
< x-tt-trace-tag: id=00;cdn-cache=miss
<
* Curl_http_done: called premature == 0
* Connection #0 to host sdplatform-ttp.tiktok-us.org left intact
psm: toutiao.bytefaas.gateway not registered in ByteTiny
↵ boe
```

These new risk findings meant that possibly not only the *'60 days report'* and *'120 days report'* may have been inaccurate, but also that the final *'180-days report'* from the Secretary of Commerce to the Assistant to the President and National Security Advisor, which was to be provided on or around December 4, 2021, also may have missed material risks to US national security.

**195.** The *'180-days report'* from National Security Advisor could have mislead the President and misguided him to lag on further executive and legislative actions pertaining to TikTok operations in the USA and, in doing so, could have endangered safety of millions of Americans as it was eventually very

PAGE 66

COMPLAINT (1st amended)

clearly evidenced in November of 2023 when the so-called 'Letter to America' from Osama bin Laden was propagated on TikTok uncontrollably.

**196.  TikTok Inc. is an artificial structure on the top of ByteDance corporation that cannot make any decisions, neither corporate nor infrastructural due to the nature of ByteDance information technology' architecture and is simply a 'translator' into English that collects billions of dollars in revenue from the U.S. market without any accountability or even capacity to control the product that they market as 'unique' and 'standalone'. This artificial corporate structure, TikTok Inc., has only created more issues and problems in communication between ByteDance corporation and U.S. government because of irresponsible and false statements that TikTok Inc. executives made in their testimonies to the American Congress and American users.**

**197.  <u>Defendants organized a manhunt against Plaintiff to force his silence. When Plaintiff persisted, they attempted to rid him of his rightful employment, income, and invaded his privacy in a criminal manner</u>.**

**198.  Plaintiff refused to succumb to these corrupt and forceful suggestions because the suspects were asking Plaintiff to essentially stop doing his job and in doing so to violate the public policy of <u>Executive Order 14034</u> and to violate the laws of the United States of America by hiding risks to national security.**

**199.  On February 8, 2022, after Plaintiff's repeated efforts to initiate 'ethics procedure' internally with Mr. Marc Arvanitis, Defendants tried to terminate Plaintiff's employment.**

**200.  Plaintiff's risk management findings contradicted earlier risk assessments of the system and data flows presented by <u>Booz Allen Hamilton</u> to the ODNI,**

DHS and other US federal agencies that were already officially submitted and documented in the *'60-120-180 days reporting'*, so the '*law enforcement colleagues'* decided to rid of Plaintiff and colluded with TikTok executives to fire him (**Violation of 18 U.S.C. § 241**).

201.   Plaintiff's risk management findings diminished the mantra about Oracle's exaggerated involvement in '*Project Texas'* and contradicted TikTok's public announcements and statements made under oath in the US Congress about the independence of its systems and controlled data flows.

202.   When Defendants realized that Plaintiff knows about their potentially honest mistake with the *'60-days report'*, the DoJ and FBI, as well DHS and other 'law enforcement colleagues' working at TikTok still had a chance to start doing their job, yet they decided to not only sabotage Plaintiff's work, but also arranged for his losing the employment. Even if the initial mistake was a human error, which can happen to all of us and in fact shall be considered a good opportunity to learn and advance, then after Plaintiff's risk identification everything that the DHS, DoJ and FBI, ODNI, NSA and other federal agencies did was an intentional sabotage, cover-up, and simple treason.

203.   Even though in May of 2023 Eric Han, the Head of Trust and Safety in USA, was fired, and in June of 2023, Vanessa Pappas, the COO of TikTok, was also let go, through the publications in major news outlets throughout the world Plaintiff learned that it was personally Mr. Shou Zi Chew who ordered Mr. Chris Lepitak to investigate and surveil after Plaintiff and that the illegal surveillance was ordered not only after him, but also after Forbes' journalists in USA and against a journalist from the Financial Times in United Kingdom.

204.   In November of 2023, ByteDance violated public trust and safety of American users by promoting on TikTok and failing to control the viral spread of the infamous so-called "Letter to America" - a piece of extremist and

xenophobic anti-American propaganda authored by Osama bin Laden, the leader of Al Qaeda international terrorist organization, in which he justifies the terrorist attacks and murdering of thousands of Americans on September 11, 2001, and threatens to intensify the war against the USA unless Americans succumb to his demands. In doing so, ByteDance injured the national memory for the victims and abused dignity of all '9/11' survivors by promoting this terrorist propaganda on TikTok in a completely uncontrollable manner which also showed the lack of any self-governance, if not evidenced the intent.

205.   While being employed at ByteDance, Plaintiff received confirmations from his former '*civilian*' colleagues that the former FBI, NSA, DHS, Secret Service, CIA and other US government law enforcement's officers that are currently employed by ByteDance for monitoring TikTok users in USA, also have shared information about Plaintiff and his risk management activities with TikTok executives whom Plaintiff was suspecting of conspiring to defraud the American government.

206.   Plaintiff alleges that former and active '*law enforcement colleagues*' colluded with TikTok executives and its legal department to conceal the gaps in '*Project Texas*' and misled the governmental '*60-120-180 days reporting*' and failed the continuous monitoring for the implementation of President Biden's Executive Order 14034, which falls under the definition provided in National Security Study Memorandum (NSSM-1): *Establishing the Fight Against Corruption as a Core United States National Security Interest* as something that "**corrodes public trust, and fuels popular cynicism toward effective, accountable governance** (President Biden, June 3, 2021)."

207.   Plaintiff possesses information that during his employment and after his wrongful termination that was orchestrated by the '*law enforcement*

*colleagues'*, the **US Department of Justice knowingly and maliciously violated Section 702 to obtain a FISA court order against Plaintiff.**

**208.**   Plaintiff possesses information that during his employment and after his wrongful termination that was orchestrated by the *'law enforcement colleagues'*, as a result of **US Department of Justice violation of Section 702** submission to the FISA court and manipulating it into ordering surveillance against Plaintiff, other **US agencies also improperly received information about Plaintiff in violation of the Privacy Act, 5 U.S.C § 552.a(b),** in which The Privacy Act explicitly provides, that a federal agency shall not "disclose any record which is contained in a system of records by any means of communication to any person, or to another agency."

**209.**   Plaintiff possesses information and alleges that during his employment and after his wrongful termination that was orchestrated by the *'law enforcement colleagues'*, as a result of **US Department of Justice cheating with FISA Section 702, the FBI foreign stations collaborated with CIA who in turn illegally shared private information about Plaintiff with the foreign governments abroad (**in particular with special services groups operating on behalf for national governments of the Federal Republic of Germany, Commonwealth of Australia, and Republic of Türkiye**)**, in violation of US constitution and laws that guarantee reciprocity in allegiance between the state and its law-abiding citizens.

**210.**   Plaintiff alleges that the ODNI acted in orchestrated cover-up together with the Secretary of DHS who jointly were in charge for the initial risk identification and risk assessment (*60-days report'*) that missed the major risks in TikTok vulnerability assessment, and then attempted to forcefully conceal the risk identification performed by the Plaintiff who worked in his formal capacity as Risk Manager at ByteDance to oversee TikTok (i.e., this means

that the company, ByteDance, through the work of Plaintiff and his escalation to FBI, has self-reported risks and problems with implementation of <u>Executive Order 14034</u> to the American government, but the federal departments responsible for the implementation of <u>Executive Order 14034</u> became afraid for their job security and, while influenced by the power of ODNI, now were trying to hide the true risk identification for political reasons).

211. Plaintiff alleges that the Secretary of Commerce who is now responsible for the post-mortem monitoring of the <u>Executive Order 14034</u> and who was also responsible for leading the consultations with the Secretary of State, the Secretary of Defense, the Attorney General, the Secretary of Health and Human Services, the Secretary of Homeland Security, the Director of National Intelligence, and the heads of other agencies as the Secretary of Commerce deemed appropriate fabricated the production of the *'120-days report'*, failed.

212. Plaintiff alleges that the '*180-days report'* which the Assistant to the President and National Security Advisor provided to President Biden for deciding on further executive and legislative actions to protect American users of TikTok was lagging material risks identified by Plaintiff and therefore was insufficient and failed to alert the President about the true risk assessment.

213. Plaintiff alleges that all departments' heads and secretaries mentioned in the <u>Executive Order 14034</u> acted in organized manner to conceal the risk assessment produced by Plaintiff and, therefore, are jointly responsible in some partial or full manner for the events and happenings referred to above, and that Plaintiff's injuries and damages as hereinafter set forth were directly foreseeably caused by said agencies and their appointed leaders.

214. At all relevant times, and in connection with the matters alleged herein, each participant acted on behalf of the Defendant(s) as an agent and/or alter ego of the Defendant(s) and acted in the course and scope of such federal agency

responsible for the damages caused to Plaintiff. Each participant that worked for the Defendant(s) acted with the knowledge and consent of each of the other participating agent working for the Defendant(s) and/or directed, authorized, affirmed, consented to, ratified, encouraged, approved, adopted, and/or participated in the acts or transactions of the other individual and agents working for the Defendant(s).

## **PROCEDURAL HISTORY**

**215.** On December 22, 2022, Plaintiff filed a retaliation complaint with State of California, Department of Industrial Relations, Labor Commissioner's Office, Retaliation Complaint Investigation Unit: State Case No. RCI-CM-925837

**216.** On February 06, 2023, Plaintiff filed a whistleblower retaliation complaint #ECN92490 with OSHA. As a result of investigation by the Federal Department of Labor, on March 3, 2023, OSHA provided the following response to Plaintiff:

> "*After review of the information that you provided to the OSHA Whistleblower Protection Program it appears your complaint does not meet criteria for investigation by OSHA. Specifically, your complaint is regarding issues that fall under the **FBI and/or SEC**, involving national data security concerns.*"

**217.** On July 20, 2023, even though the ultimate responsibility for implementation of the Executive Order 14034 is assigned to the Department of Commerce, Plaintiff submitted an FTCA claim to the Department of Justice because of his cooperation with the FBI; the FTCA claim was received by the Department of Justice on July 27, 2023, and the Torts Branch registered it on August 2, 2023. On September 19, 2023, the FTCA claim was acknowledged

by FBI in their formal response with wrongfully stated decimals for the amount claimed by Plaintiff, and finally denied.

**218.** On January 30, 2024, Plaintiff filed a 130-pages-long civil unlimited lawsuit #24SMCV00423 for his wrongful termination in the Superior Court of California, Santa Monica courthouse. Plaintiff requests this Court to cross-reference this lawsuit with the civil claim due to their causal relation.

## CLAIMS
### FIRST CAUSE OF ACTION
### Violation of 28 U.S.C. § 2671-2680

**219.** Plaintiff re-alleges and incorporates herein by reference each and every allegation of the preceding paragraphs as though fully set forth herein and alleges as follows.

**220.** At all times relevant to this Complaint, Defendants have been subject to the public law policy requirements of President Biden's Executive Order 14034, which departments working for the Defendant have violated.

**221.** On or around September 10, 2021, then in November of 2021, repeatedly during December of 2021, and finally on January 25, 2022, while executing a risk assessment for  Project Texas Plaintiff identified and documented the mere fact about TikTok's association with Toutiao, which contradicted all of the federal government's *'60-120-180 days reporting'* for Executive Order 14034 that was provided by the ODNI, DHS, FBI, Defense Department, and other agencies to the Secretary of Commerce who then passed the amalgamated report to the Assistant to the President and National Security Advisor, Mr. Jake Sullivan, and then, eventually, to the President.

**222.** The Plaintiff was fired by corrupt TikTok executives who colluded with the U.S. Department of Justice and its FBI.

COMPLAINT (1st amended)

**223.** On May 4, 2023, the CEO were TikTok clearly confirmed that Plaintiff's risk identification when he represented his employer in a formal role as Risk Manager and his subsequential escalation of the risk identification to the US government's officials was true and is still correct.

**224.** It is a common knowledge in China and everywhere in the Asia that Douyin and TikTok are the same, with the latter just being a translated into English language version of the Chinese product; moreover, all Chinese media and even ByteDance itself in China continuously maintain that TikTok is a globalized version of Douyin translated into English and not a separate platform; everyone in China knows that TikTok product uses Douyin infrastructure, which is built on and is interconnected with a news generating AI platform called Toutiao; everyone in China is aware that TikTok does not have any proprietary IT or any registered patents for algorithms or even its own unique interface, nor has it any standalone governance in USA or anywhere globally because the architecture is one and only of a Douyin, TikTok is not a replica or a standalone offshoot build-up. Chinese engineers working in ByteDance never made it a secret that TikTok is Douyin, and this Douyin in USA is using the same mainframe built on AI news-generating platform called Toutiao. Everything else is marketing and branding.

**225.** And, to reiterate, Chinese authorities have similar issues with Douyin being in a way an addictive product that may impact youth's development, so they find the ways to encourage product owners, i.e., ByteDance to improve its controls. Why this cannot be done in the USA by the supposedly American company TikTok Inc. is not clear to anyone in China.

**US government officials learned about risks from Plaintiff but decided to conceal truth from the President to obtain dividends and preferential treatment from TikTok executives and to use its product in politics.**

PAGE 74

**226.** TikTok is a product, a product called Douyin that is translated from Chinese language for English-speaking world. Douyin is built on the mainframe of AI news-generating platform called Toutiao. TikTok does not have its own IT infrastructure, and no dedicated architecture exists that could allow TikTok a capacity to control itself because it is a product, not a platform, and TikTok is a subject to the governance from unique proprietary algorithms possessed by Douyin only.

**227.** In order for TikTok to justly claim and be able to evidence that it has control and governance over itself, it must have its own IT infrastructure and dedicated standalone architecture 'from A to Z', such as for example currently exists in the productive corporate arrangement between YouTube and Google. That would also require that TikTok similarly would need to have its own proprietary algorithms, which it does not possess or control now. What _TikTok has been trying to sell to CFIUS with the help of Oracle, Booz Allen Hamilton, and ODNI with DHS_ all this time are 'plug-ins' and API patches (Application Programming Interface) that may or may not at some point enable exchange of data or blockade it, and such solutions are always prone to major operational risks such as system errors and will never fully mitigate risk of human interference.

**Negligence and wrongful acts with omission of the risk-reporting required by the <u>Executive Order 14034</u> on the part of federal employees, precisely <u>Defendant Merrick Garland and the department that he leads, while acting within the scope defined by their federal employment and being held responsible for truthful reporting on implementation of the Executive Order 14034</u>, caused major damages to Plaintiff.**

**228.** As a direct, foreseeable, and proximate result of Defendant's unlawful actions, Plaintiff has suffered and continues to suffer substantial losses in earnings and other employment benefits and has incurred major economic losses, along with attorney's fees and litigation costs.

**229.** As a direct, foreseeable, and proximate result of Defendant's unlawful actions, Plaintiff has suffered emotional distress, humiliation, shame, anxiety, and embarrassment, all to Plaintiff's damage in an amount to be proven at the time of trial.

**230.** Defendants committed the acts herein despicably, maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff, from an improper and evil motive amounting to malice, and in conscious disregard of the rights and safety of Plaintiff and others. Plaintiff is thus entitled to recover punitive damages from Defendants in an amount according to proof.

## SECOND CAUSE OF ACTION
### Violation of 18 U.S.C. § 241

**231.** Plaintiff alleges that the department heads and secretaries responsible for reporting on implementation of <u>Executive Order 14034</u> were well aware from Plaintiff's communications about incorrectness of their reporting and major damages to the security of American users of TikTok that their inaction and sabotage is causing.

**232.** Plaintiff alleges that the department heads and secretaries responsible for reporting on implementation of <u>Executive Order 14034</u> conspired with the corrupt TikTok executives to conceal true risks identified by Plaintiff because they were striving to receive approval for the planned IPO of TikTok in USA in exchange for political favors to the current administration.

COMPLAINT (1st amended)

233.   Plaintiff alleges that once the department heads and secretaries learned from Plaintiff about the true state of risk management at TikTok, they became afraid for their job securities and political implications, so to conceal the truth they conspired with the TikTok executives to fire Plaintiff and to deprive him of income after he refused to be coerced into corrupt and criminal behavior.

234.   As a direct, foreseeable, and proximate result of Defendant's unlawful actions, Plaintiff has suffered and continues to suffer substantial losses in earnings and other employment benefits and has incurred major economic losses, along with attorney's fees and litigation costs.

235.   As a direct, foreseeable, and proximate result of Defendant's unlawful actions, Plaintiff has suffered emotional distress, humiliation, shame, anxiety, and embarrassment, all to Plaintiff's damage in an amount to be proven at the time of trial.

236.   Defendants committed the acts herein despicably, maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff, from an improper and evil motive amounting to malice, and in conscious disregard of the rights and safety of Plaintiff and others. Plaintiff is thus entitled to recover punitive damages from Defendants in an amount according to proof.

## THIRD AND FOURTH CAUSES OF ACTION
### Violation of 5 U.S.C § 552.a(b) and Violation of 50 U.S.C §1881a-1885
### (FISA Section 702)

237.   While being employed at ByteDance, Plaintiff received confirmations from his former 'civilian' colleagues that the former FBI, NSA, DHS, Secret Service, CIA and other US government law enforcement's officers that are currently employed by ByteDance for monitoring TikTok users in USA, also

have shared information about Plaintiff and his risk management activities with TikTok executives who conspired to defraud American government.

**238.**   Plaintiff alleges that the Defendant **knowingly and maliciously violated Section 702 to obtain a FISA court order on Plaintiff** and abused it in USA.

**239.**   Plaintiff alleges that during his employment and after his wrongful termination that was orchestrated by the 'law enforcement colleagues', **as a result of US Department of Justice cheating on Section 702 submission to the FISA court and manipulating it into ordering surveillance against Plaintiff, other US agencies also improperly received information about Plaintiff in violation of the Privacy Act, 5 U.S.C § 552.a(b),** in which The Privacy Act explicitly provides, that a federal agency shall not "disclose any record which is contained in a system of records by any means of communication to any person, or to another agency."

**240.**  Plaintiff possesses information and has evidence that during his employment and after his wrongful termination that was orchestrated by the '*law enforcement colleagues*', and after the Defendants violated **FISA Section 702 to obtain a court order against the Plaintiff, the FBI foreign stations then conspired with the CIA clandestine operations abroad who in turn illegally shared private information about Plaintiff with the foreign governments and their agencies (**in particular with special services groups operating on behalf for national governments of the <u>Federal Republic of Germany, Fiji, French Republic in Tahiti, Commonwealth of Australia, and Republic of Türkiye</u>**),**

**241.**  Department of Justice and FBI violated the 50 U.S.C § 1885 that guarantees protection to the individuals providing help to the government, and instead organized a hunting campaign, forced Plaintiff's family to go through intimidation and harassment, tried to frame Plaintiff into false association with

Latin American drug cartel, chased Plaintiff all over the world trying to
fabricate imaginable connections with foreign services only because of his
Ukrainian and Jewish background – and all of that had so far cost them dozens
of millions of American taxpayers' dollars.

242.  Plaintiff alleges that all departments' heads and secretaries mentioned in the
Executive Order 14034 acted in organized manner to conceal the risk
assessment produced by Plaintiff and, therefore, are jointly responsible in some
partial or full manner for the events and happenings referred to above, and that
Plaintiff's injuries and damages as hereinafter set forth were proximately
caused by said agencies and their appointed leaders.

243.  As a direct, foreseeable, and proximate result of Defendant's unlawful
actions, Plaintiff has suffered and continues to suffer substantial losses in
earnings and other employment benefits and has incurred major economic
losses, along with attorney's fees and litigation costs.

244.  As a direct, foreseeable, and proximate result of Defendant's unlawful
actions, Plaintiff has suffered emotional distress, humiliation, shame, anxiety,
and embarrassment, all to Plaintiff's damage in an amount to be proven at the
time of trial.

245.  Defendants committed the acts herein despicably, maliciously, fraudulently,
and oppressively, with the wrongful intention of injuring Plaintiff, from an
improper and evil motive amounting to malice, and in conscious disregard of
the rights and safety of Plaintiff and others. Plaintiff is thus entitled to recover
punitive damages.

///

///

///

COMPLAINT (1st amended)

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against the Defendants as follows:

(1) For recovery of damages in lump-sum after-tax amount of $21,100,000 USD

(2) For special damages according to proof

(3) For consequential damages according to proof

(4) For restitution and/or disgorgement of ill-gotten gains

(5) For reinstatement to a position of Risk Manager at ByteDance parent company

(6) For interest at the maximum legally permissible rate from the date of the initial misconduct.

(7) For fees and costs incurred herein, and attorney fees and expenses in the amount permitted by law not to exceed 25% from the amount of final judgment

(8) For such other and further relief as the Court deems just and proper.

**Dated:** _____8/14/2024_____        **By:** _____

签署人：
*Jiang Jing*
6546BEFA9D974A3...

**JING 'SEAN' JIANG**
Attorney for Plaintiff
Zen Goziker

PAGE 80

_____
COMPLAINT (1st amended)